# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:13-cv-23285-WJZ

AUTOMOTORES GALINDO, S.A.,

      Plaintiff,

v.

FORD MOTOR COMPANY,

      Defendant.
_____/

## DECLARATION OF OLEG RIVKIN IN FURTHER SUPPORT OF DEFENDANT'S OBJECTIONS TO RECOGNITION AND ENFORCEABILITY OF AN OUT-OF-COUNTRY FOREIGN JUDGMENT

      I, OLEG RIVKIN, declare under penalties of perjury as follows:

1.     I am an attorney with the law firm of Carlton Fields, P.A., counsel for Defendant, Ford Motor Company in this action.  I have been admitted to appear before this Court in this matter *pro hac vice*.

2.     The purpose of this Declaration is to submit to the Court certified translations of the exhibits which were filed as part of Defendant's Objections to the recognition and enforceability of Plaintiff, AUTOMOTORES GALINDO, S.A.'s Bolivian money judgment [DE 5] and Memorandum of Law in Support of the Objections [DE 6] on September 13, 2013 ("Objection Exhibits").

3.  To that end:

    a)  Attached hereto as Exhibit Tr.A is a certified translation of Objection Exhibit A, along with a Certificate of Accuracy;

    b)  Attached hereto as Exhibit Tr.D is a certified translation of Objection Exhibit D, along with a Certificate of Accuracy;

    c)  Attached hereto as Exhibit Tr.E is a certified translation of Objection Exhibit E, along with a Certificate of Accuracy;

    d)  Attached hereto as Exhibit Tr.F is a certified translation of Objection Exhibit F, along with a Certificate of Accuracy;

e)   Attached hereto as Exhibit Tr.G is a certified translation of Objection Exhibit G, along with a Certificate of Accuracy;

f)   Attached hereto as Exhibit Tr.H is a certified translation of Objection Exhibit H, along with a Certificate of Accuracy;

g)   Attached hereto as Exhibit Tr.I is a certified translation of Objection Exhibit I, along with a Certificate of Accuracy;

h)   Attached hereto as Exhibit Tr.J is a certified translation of Objection Exhibit J, along with a Certificate of Accuracy.

I declare under penalties of perjury that the above is true and correct to the best of my knowledge and information.

Executed this 6th day of November, 2013, in New York, New York.

OLEG RIVKIN

EXHIBIT Tr.A

*[Tax letterhead, series of tax stamps and wet stamps: D.S. 21124 of 15-11-85; R.M. No. 1039 of 13-11-2001 Bs 1.50; illegible round stamp; tax stamp 10.- Bs; illegible rectangular stamp behind others; No. 2526088-91, Series "-2002"; triangular stamp: Bar Association, Cochabamba, Bolivia] [hand written: upper right corner: 131-133; beside triangular stamp: 7th; above stamps, sometimes illegible: one hundred two-three] [Page has an illegible watermark and illegible writing at the bottom.]*
*[Pages numbered 1 through 29 on both sides; margin (alternating left or right) text from previous or next page consisting only of partial words.]*

TO THE ASSIGNED DISTRICT JUDGE FOR CIVIL MATTERS:

Proceeding leading to Declaratory Judgment

ENRIQUE GALINDO HUERTA, Identification Card CI-972871 Cbba, domiciled at Libertador Bolívar street, No. 1416, in his capacity as legal representative of GALINDO SA, according to power of attorney 0044/2002, of legal age, legally competent, come before you to respectfully state and request:

I.- BACKGROUND.-

1.1- REGIONAL DEALERSHIP

SINCE 1943, GALINDO Y CIA. Limited Partnership with Shares had a sales agreement with FORD MOTOR COMPANY to market vehicles, spare parts and, in addition, provide technical assistance to the brand's customers acquiring the vehicles.

During the course of activities in the past, the relationship remained constant and encountered no major difficulties, because of the performance by Ford. In 1992, after ongoing negotiations between the parties, the sales agreement became a dealership agreement and  on January 5, 1993, a new document was signed in which GALINDO SA  (the limited partnership with shares became a corporation) and Ford Motor Company agreed that the former should be a dealer in Bolivia, in the Department of Cochabamba.

For an indefinite period of time. *[sic]*

In 1994, as the result of a study that FORD MOTOR COMPANY carried out, GALINDO SA was additionally assigned the departments of La Paz, Oruro, Potosi, Chuquisaca and Tarija, and another dealer was given the Departments of Santa Cruz, Beni and Pando.  GALINDO SA was instructed to equip all of its facilities, that it should have spare parts and others, which without a doubt required making  investments not covered in the regional contract, much less in the new agreements executed by mail; however, the work in the additional departments was not carried out since there was no contract, much less, exclusivity; this placed at risk the financial economic equation of the investment that could be made by GALINDO SA

1.2. NATIONAL DEALERSHIP

[illegible stamp]
[Page has an illegible watermark.]
[Pages numbered 1 through 29 on both sides; margin (alternating left or right) text from previous or next page consisting only of partial words.]

In 1995, following an unwritten agreement, GALINDO SA was named the exclusive dealer for BOLIVIA, in practice putting to one side the agreement of 1993, which only covered the Department of Cochabamba. In 1995, in the month of October and with GALINDO already established as the exclusive dealer, FORD MOTOR COMPANY wrote a letter of intent in which it asked GALINDO SA  to make investments in facilities, equipment, personnel training, have a capital of USD 4,300,000 and carry out certain activities on peak dates. In exchange it offered to ensure the Ford franchise and sign a contract that it was in the process of drafting.

This letter of intent was signed by the legal representative and sent to FORD MOTOR COMPANY. From that moment forward, we complied in full with the contents of the letter of intent and FORD made several demands for the service centers in the city of Cochabamba and La Paz, such as paving areas, installing signage, building a new warehouses  with [certain] minimum dimensions, building the training center, and others, which meant a considerable outlay and investment by GALINDO SA

Heavy investments were made initially in the city of Santa Cruz, in the rental of a site and later construction its own building; FORD MOTOR COMPANY determined the specifications, characteristics and even drawings for this site.

In addition, spare parts and equipment were acquired for stock and personnel was trained in the different areas.

As an exclusive dealer and with an unwritten linkage, FORD MOTOR COMPANY made other demands, specifically that GALINDO SA should submit to FORD 2000 and Process Management programs in order to achieve certifications. There were 5 levels to these programs and were intended to improve dealer sales and service, however, they involved adjustments that required GALINDO SA. to make new investments. Our company met the demands up to Level III, even being congratulated and receiving awards for its full compliance, however, when Level IV was to be implemented, the programs were interrupted by unilateral default on the part of the American company, all of the effort and investments



*[Tax letterhead, series of tax stamps and wet stamps: D.S. 21124 of 15-11-85; R.M. No. 1039 of 13-11-2001 Bs 1.50; illegible round stamp; tax stamp 10.- Bs; illegible rectangular stamp behind others; No. 2526088-91, Series "-2002"; triangular stamp: Bar Association, Cochabamba, Bolivia] [hand written: upper right corner: 131-133; beside triangular stamp: 7th; above stamps, sometimes illegible: one hundred two-three) [Page has an illegible watermark and illegible writing at the bottom.]*
*[Pages numbered 1 through 29 on both sides; margin (alternating left or right) text from previous or next page consisting only of partial words.]*

made by GALINDO SA. being rendered useless.

All of these investments demanded, instructed and approved by FORD seriously impacted GALINDO SA's operating capital, in the utmost, such that, during the validity of the contract, GALINDO was unable to meet its obligations to a European financial backer linked to FORD.

1.3 CONTRACTUAL DEALERSHIP

On April 15, 1999, GALINDO SA and FORD MOTOR COMPANY signed the dealership contract for BOLIVIA, setting the conditions under which the dealership would proceed;  however, no mention was made nor definition adopted with regard to the investments made by GALINDO SA during the period leading up to execution of the agreement (four years). FORD gradually breached the contract by not sending answers in a timely manner, not delivering the vehicles ordered and even going so far as to instruct other dealerships in Latin America to not sell products to GALINDO SA due to the noncompliance with regard to the European financial backer; and finally, three years after the agreement went into effect they terminated it on February 1, 2002. In practical terms, this condemned GALINDO SA as it was unable to recover all of the investments that it had made during the period from 95 to 99, prior to signing the agreement, making  these investments unnecessary; this would not have been the case if not for demands of FORD MOTOR COMPANY.

II. - LEGAL GROUNDS.

2.1.- APPLICABLE LAW

Article 787 of the Commerce Code establishes that, in commercial matters, the will can be stated verbally or in writing; this willingness and the link forged between GALINDO SA and FORD MOTOR COMPANY during the period from 1995 to April of 1999, are evidence of the fact that a legal relationship existed prior to the dealership agreement of 1999, under which GALINDO SA was the only one authorized to acquire FORD brand vehicles and spare parts for resale throughout the entire territory of BOLIVIA and, at the same time, to provide mechanical assistance services and offer the manufacturer's warranty. This legal relationship, which according to Articles 816 and 807 must be governed by Bolivian

[illegible stamp]
[Page has an illegible watermark.]
[Pages numbered 1 through 29 on both sides; margin (alternating left or right) text from previous or next page consisting only of partial words.]

law and differs from the relationship established in 1999, since it was prior, is not subject to being "categorized" under a typical business agreement that fits our laws.

## 2.2.- ANALOGY AND SUPPLEMENTAL APPLICABILITY

In law, analogy is nothing more than "regulating one case, not addressed in the law, according a similar case that is addressed."   This principle of analogy prevails in our commercial laws and is specifically enshrined in Article 1 of the Commerce Code where it stipulates, imperatively, "In cases that are not specifically regulated, the rules of this code shall apply through analogy". Therefore, and given that there was a legal relationship prior to the unwritten business agreement of 1999, the rules for an agreement similar to the one that was in place should apply; in this case, we find the supply contract to be a typical business contract, in which there is both the purchase and sale of products and the rendition of periodic services.

Therefore, the legal relationship between GALINDO SA and FORD MOTOR COMPANY during the period from 1995 to 1999 should, by analogy, be governed by the regulatory provisions contained in our commercial laws regarding supply contracts.

That same Article 1 of the Commerce Code establishes that the civil law principle of supplemental applicability also governs; i.e., if one turns to analogy and finds nothing to match, then one much turn to civil regulations.  Supplemental applicability involved "that which remedies a failure". In the case in dispute, a legal relationship existed prior to a dealership agreement under private law and the supply contract applies by analogy; but given that it is a prior relationship, one should turn to the laws on preliminary contracts contained in Article 463 of the Civil Code. The above shows that while the contract that existed between GALINDO SA and FORD MOTOR COMPANY cannot be categorized, by applying analogy and supplemental applicability, one concludes that the legal relationship occurring during the period from 1995 to 1999 must be governed by the regulations of the preliminary contract through



*[Tax letterhead, series of tax stamps and wet stamps: D.S. 21124 of 15-11-85; R.M. No. 1039 of 13-11-2001 Bs 1.50; illegible round stamp; tax stamp 10.- Bs; illegible rectangular stamp behind others; No. 2526088-91, Series "-2002"; triangular stamp: Bar Association, Cochabamba, Bolivia] [hand written: upper right corner: 131-133; beside triangular stamp: 7th; above stamps, sometimes illegible: one hundred two-three) [Page has an illegible watermark and illegible writing at the bottom.]*
*[Pages numbered 1 through 29 on both sides; margin (alternating left or right) text from previous or next page consisting only of partial words.]*

supplementary application, and by the regulations on supply contracts through analogy.

2.3.- BREACH OF CONTRACT

Within this legal framework, by simply comparing the dates of the appointment as exclusive dealer for Bolivia in September of 1995 and the execution of the dealer contract, it can be irrefutably established that FORD MOTOR COMPANY did not comply by executing the contract in a timely manner, maintaining a preliminary relationship under which GALINDO SA made significant investments, which, pursuant to the provisions of Article 463 paragraph III of the Civil Code must result in restitution for the damage caused.

Likewise, given the failure to make good on the *prestaciones*[1] , which were not carried out on a timely basis, the restitution set forth and established by Article 922 of the Commerce Code applies.

2.4.- PRECONTRACTUAL NEGLIGENCE

When drafting the dealer contract of 1999, FORD MOTOR COMPANY committed precontractual negligence given that, when making the demands for investment in infrastructure and at the time the disbursements were made by GALINDO SA, while the preliminary contract was in effect, and in order to sell its products, the American company failed to warn, mention or indicate the causes of termination for the primary contract. This allowed them to get GALINDO SA  to make significant investments which to date are nonproductive assets. Therefore it did not act in accordance with the rules of good faith and committed an abuse of rights; according to Article 984 of the Civil Code, this entails a responsibility to compensate the damage, even more so if FORD MOTOR COMPANY itself was the party unilaterally terminating the contract executed in 1999. Had GALINDO SA known that the primary contract would be terminated within such a short period, it would not have invested during the period in which the preliminary contract was in effect.

2.5.- DAMAGE INCURRED.

To date, GALINDO SA, given the breach and precontractual negligence committed, has nonproductive assets with a value of more than USD 2,000,000; execution of these specifically date to the period in

---

[1] Ambiguous: *prestaciones* has an array of meanings, including *benefits*, *allowances*, *services*, *payments* or *features*.

*[illegible stamp]*
*[Page has an illegible watermark.]*
*[Pages numbered 1 through 29 on both sides; margin (alternating left or right) text from previous or next page consisting only of partial words.]*

which the preliminary contract was in effect; because of this, GALINDO has been unable to make the payments to the European financial backer related to FORD MOTOR COMPANY itself as an affiliate, which has been the key reason for the actual termination of the dealer contract, wielded by FORD.

This unilateral termination has, in turn, made it impossible for GALINDO SA to continue operating with the FORD brand, and other aspects linked to the contract of 1999.

III.-CLAIM.-

Given the above, based on the legal provisions mentioned and on Articles 327, and pursuant to the Code of Civil Procedures, we filed a lawsuit against the American company, FORD MOTOR COMPANY for restitution of damage, asking that upon completion of the necessary formalities, judgment be issued declaring the claim to be PROVEN, and ordering:

a) restitution for the damage caused to GALINDO SA as a result of the precontractual negligence and failure to communicate the grounds for termination of the dealer contract executed in 1999, which led to the investment in nonproductive assets.

b) restitution for the damage caused by the failure to execute the contract in a timely fashion which, in turn, caused the unjustified investments.

c) That the amounts be settled by enforcing the judgment once said judgment is executed.

d) Court costs.

IV.- RESPONDENT AND AMOUNT.

The Respondent is the North American company that operates under the corporate name of FORD MOTOR COMPANY, represented by Willian*[sic]* Clay Ford in his capacity as CEO, of legal age, legally competent, of American nationality, domiciled at The American Road, Dearborn, Michigan 48121-1899 in the United States of America.

We include the fact that the amount of this lawsuit is unspecified, given that the amount of the damages shall be subject to settlement upon enforcement of the judgment.



*[Tax letterhead, series of tax stamps and wet stamps: D.S. 21124 of 15-11-85; R.M. No. 1039 of 13-11-2001 Bs 1.50; illegible round stamp; tax stamp 10.- Bs; illegible rectangular stamp behind others; No. 2526088-91, Series "-2002"; triangular stamp: Bar Association, Cochabamba, Bolivia] [hand written: upper right corner: 131-133; beside triangular stamp: 7th; above stamps, sometimes illegible: one hundred two-three) [Page has an illegible watermark and illegible writing at the bottom.]*

*[Pages numbered 1 through 29 on both sides; margin (alternating left or right) text from previous or next page consisting only of partial words.]*

ADDITION 1.-  For the purpose of service on the Respondent, I request that the respective service be made according to Article 114 of the Code of Civil Procedure, and that the corresponding process be in writing.

ADDITION 2.- I hereby attach documentary evidence, which is in English, accompanied in each case by its corresponding translation by an authorized translator, and request that it be included in the case file.

ADDITION 3.- The attorney who represents us submits fees according to the professional retainer signed.

ADDITION 4.- We declare that we are domiciled at the offices of the undersigned attorney, located at Chuquisaca street number 688; the notices mentioned above and required by law should be delivered to this address.

 JUSTICE, ETC.

Cochabamba, July 23, 2002


[illegible signature]               [illegible signature]               02 AUG [illegible]
972871 CBBA                        Maria Salinas
                                   Attorney
                                   [illegible] 1613391-MCA 0817

            NOTE                                           [triangular stamp]
**Filed by**_____Enrique Galindo Huerta_____C.I. N.o.      Bar Association
**Date:** _____02 - 08 - 2002_____Time___16:20___         Cochabamba - Bolivia
**Documentary evidence:** Photocopies [illegible] 135: I attest
- File Pages (9) [illegible]                    [illegible signature]
- Power of attorney Pages (6) [illegible]       Division Clerk
- Ford Blue File Pages (111)                    Second Civil Division




[illegible signature]
972871 CBBA.

D.S. 21124 de 15-11-85
R.M. N° 1039 de 13-11-2001

Bs 1.50

N° 2526088

Serie "A-2002"



SEÑOR JUEZ DE PARTIDO DE TURNO EN LO CIVIL.

Proceso de Conocimiento

ENRIQUE GALINDO HUERTA, con CI-972871 Cbba, domiciliado en la calle Libertador Bolivar No. 1416, en mi condición de representante legal de la sociedad anónima GALINDO SA - segun poder 0044/2002, mayor de edad, hábil por derecho, a usted respetuoso expongo y pido:

I.- ANTECEDENTES .-

1.1.- CONCESION REGIONAL

GALINDO Y CIA Sociedad en Comandita por Acciones; DESDE EL AÑO 1943 mantuvo un convenio de ventas con FORD MOTOR COMPANY para realizar la comercialización de vehículos, repuestos y adicionalmente otorgar asistencia técnica a los clientes de la marca que adquirían los vehículos.

En el desarrollo de las actividades en fechas pasadas las relaciones se mantuvieron en forma consistente y sin mayores inconvenientes dado el cumplimiento en la Compañía Ford. El convenio de ventas, el año 1992 luego de una negociación entre las partes de manera progresiva se convirtió en un contrato de concesión, hasta que el año 1993 en 5 de enero, se suscribió un nuevo documento en el que GALINDO SA (la sociedad en comandita se convirtió en sociedad anónima )y Ford Motor Company convenían que la primera sería concesionaria en Bolivia en el Departamento de Cochabamba. Por un plazo indefinido.

El año 1994 como resultado de un estudio efectuado por FORD MOTOR COMPANY se asignó a GALINDO SA en forma adicional los departamentos de La Paz, Oruro, Potosí, Chuquisaca y Tarija,) y otorgó a favor de otro concesionario los Departamentos de Santa Cruz, Beni y Pando. (Se instruyó a Galindo SA que todas sus instalaciones sean equipadas, que cuente con repuestos y otros, que sin duda, determinaban se ejecuten inversiones no previstas en el contrato regional y menos en los nuevos acuerdos cursados por correspondencia, empero; los trabajos en los departamentos adicionales no se llevaron a cabo, pues no existía contrato y menos exclusividad, lo que ponía en riesgo la ecuación económica financiera de la inversión que podría efectuar GALINDO SA )

1.2.- CONCESION NACIONAL

En el año 1995, previo acuerdo no escrito se designó a GALINDO SA como concesionario exclusivo para BOLIVIA, dejándose de lado de manera práctica el acuerdo del año 1993 que era sólo para el Departamento de Cochabamba.

En el año 1995, y estando GALINDO ya establecido como concesionario exclusivo, FORD MOTOR COMPANY en el mes de octubre cursó una carta de intenciones, en la que se pedía a GALINDO SA ejecute inversiones en instalaciones, equipamiento, capacitación de personal, cuente con un capital de $us. 4.300.000 y se desarrollen algunas acciones en fechas topes. A cambio se ofertaba, asegurar la franquicia Ford y suscribir un contrato que se encontraba desarrollando.

Esa carta de intenciones fue firmada por el representante legal y enviada a FORD MOTOR COMPANY. A partir de ese momento, cumplimos a cabalidad lo establecido en la carta de intenciones y FORD efectúo varias exigencias para los centros de servicios en la ciudad de Cochabamba y La Paz, como pavimentar áreas, instalación de señalización, construcción de nuevos depósitos con dimensiones mínimas, construcción del centro de entrenamiento y otros que significaron erogaciones e inversiones considerables para GALINDO SA.

En la ciudad de Santa Cruz se materializaron fuertes inversiones inicialmente en local arrendado y posteriormente en la construcción de un edificio propio, cuyas especificaciones, características e incluso planos fueron determinado por FORD MOTOR COMPANY.

Adicionalmente, se adquirieron el stock de repuestos, equipos y capacitó al personal de las distintas áreas.

En la condición de concesionarios exclusivos y en una vinculación no escrita, FORD MOTOR COMPANY ejecutó otras exigencias, concretamente que GALINDO se someta a los programas FORD 2000 y de Gerencia de Procesos para lograr certificaciones. Programas que tenían 5 niveles y buscaban mejorar las ventas y servicios de los concesionarios, empero, involucraban para su adecuación nuevas inversiones para GALINDO SA. Nuestra empresa dio cumplimiento a las exigencias hasta el nivel III recibiendo incluso felicitaciones y premios por su pleno cumplimiento, empero, cuando decía ejecutarse el nivel IV, los programas se interrumpieron por definición



D.S. 21124 de 15-11-85
R.M. Nº 1039 de 13-11-2001
Bs 1.50

Nº 2526089
Serie "A-2002"
La Paz-Bolivia

1 unilateral de la empresa Americana, habiendo sido inútiles los esfuerzos e
2 inversiones ejecutadas por GALINDO SA.
3 Todas esas inversiones, exigidas, instruidas y aprobadas por FORD afectaron
4 seriamente al capital de operaciones de GALINDO SA, al extremo, que en el
5 período contractual, no pudo cumplir con las obligaciones con un
6 financiador europeo vinculado con la FORD.

1.3.- CONCESION CONTRACTUAL.-

7 El 15 de abril de 1999, se suscribió entre GALINDO SA y FORD MOTOR COMPANY
8 contrato de concesión para BOLIVIA, estableciéndose las condiciones en las
9 que se desarrollaría la concesión, sin embargo, no se hizo ningún tipo de
10 referencia o adoptó definiciones respecto de las inversiones efectuadas por
11 GALINDO SA en el período previo a la firma del contrato (cuatro
12 años). Contrato que fue incumplido por FORD en forma paulatina, pues, no
13 envió repuestos en forma oportuna, no entregaba los vehículos pedidos e
14 incluso llegó al extremo de instruir a otros concesionarios de Latinoamérica
15 que no vendan productos a GALINDO SA por el incumplimiento con el
16 financiador europeo, para finalmente, luego de tres años de vigencia del
17 contrato darlo por terminado en 1 de febrero del 2002, con lo que se condenó
18 a GALINDO SA de manera práctica que la totalidad de las inversiones
19 efectuadas en el período 95 al 99, antes de la firma del contrato no las pueda
20 recuperar y sean inversiones innecesarias, situación que no se habrían
21 producido si no concurrían las exigencias de FORD MOTOR COMPANY

II.- FUNDAMENTOS DE DERECHO.-

2.1.- LEY APLICABLE.-

22 El artículo 787 del Código de Comercio establece que en materia comercial, la
23 voluntad puede expresarse verbalmente o por escrito, tal disposición y el
24 vínculo establecido entre GALINDO SA y FORD MOTOR COMPANY en el período
25 comprendido entre 1995 y abril de 1999, evidencia que concurrió una
26 relación jurídica previa al contrato de concesión de 1999, por la cual,
27 GALINDO SA era el único autorizado para adquirir vehículos y repuestos
28 marca FORD para su reventa en todo el territorio de BOLIVIA y, a su vez,
29 otorgar servicios de asistencia mecánica y conceder la garantía del
30 fabricante. Esa relación jurídica, que al tenor de los artículos 816 y 804 debe

www.scantopdf.eu

regirse por la Ley Boliviana y difiere de la establecida en el año 1999 por ser previa, no es susceptible de ser "encasillada" en un contrato típico comercial que corresponda a nuestra legislación.

## 2.2.- ANALOGÍA Y SUPLETORIEDAD

La analogía en derecho no es otra cosa que "regular mediante un caso previsto en la ley, otro que siendo semejante se ha omitido considerar en aquella". Este principio de analogía, rige en nuestra legislación comercial y se encuentra consagrado precisamente en el artículo 1 del Código de Comercio, cuando estipula imperativamente "En los casos no regulados expresamente, se aplicarán por analogía las normas de éste Código". Siendo ello así, y concurriendo un relación jurídica previa al contrato de 1999, no escrita y de naturaleza comercial, se debe aplicar las normas de un contrato semejante a la situación existente, y siendo ello así, encontramos como contrato típico comercial, al contrato de suministro, en el cual se establece la concurrencia de compra venta de productos y la prestación de servicios en forma periódica.

En consecuencia, la relación jurídica entre GALINDO SA y FORD MOTOR COMPANY en el periodo comprendido entre 1995 a 1999, por analogía debe regirse por las disposiciones normativas del contrato de suministro en nuestra legislación comercial.

El mismo artículo 1 del Código de Comercio, establece que también rige el principio de supletoriedad de las normas civiles, es decir, que si se recurre a la analogía y esta no llena el vacío deben recurrirse a las normas civiles. Supletorio, involucra "aquello que remedia una falta". En el caso sub-lite, se está en una relación jurídica previa a un contrato de concesión de derecho privado, y le es aplicable el contrato de suministro por analogía, pero al ser previa, debe recurrirse a las normas del contrato preliminar conceptualizadas en el artículo 463 del Código Civil dada la inexistencia de normas atinentes a contratos preliminares en el Código de Comercio.

Lo expresado, demuestra que si bien, no es posible encasillar al contrato que existió entre GALINDO SA y FORD MOTOR COMPANY, empero, aplicando la analogía y la supletoriedad, se concluye que la relación jurídica concurrente en el periodo 1995 a 1999 debe regirse por las regulaciones del contrato

www.scantopdf.eu

D.S. 21124 de 15-11-85
R.M. N° 1039 de 13-11-2001

Bs 1.50

CONTROL
29
EMISION NACIONAL
CONCESIO
La Paz

N° 2526090
Serie "A-2002"

preliminar supletoriamente y por las regulaciones del contrato de suministro por analogía.

2.3.- INCUMPLIMIENTO.-

En ese marco legal, en el simple cotejo de las fechas de la designación como concesionario exclusivo para Bolivia en septiembre de 1995 y la firma del contrato de concesión, se puede establecer, ineludiblemente que FORD MOTOR COMPANY no cumplió oportunamente la suscripción del contrato, manteniendo una relación preliminar, en la que GALINDO SA efectuó inversiones considerables; lo que al tenor de lo dispuesto por el artículo 463 parágrafo III del Código Civil, debe motivar el resarcimiento del daño producido.

En igual forma, dada la falta de cumplimiento de las prestaciones que no se ejecutaron oportunamente, resulta aplicable el resarcimiento previsto y señalado por el artículo 922 del Código de Comercio.

2.4.- CULPA PRECONTRACTUAL.-

FORD MOTOR COMPANY para la formación del contrato de concesión de 1999, incurrió en culpa precontractual dado que al momento de efectuar las exigencias de inversión en infraestructura y las erogaciones efectuadas por GALINDO SA durante la vigencia del contrato preliminar y con tal de que se vendan sus productos, esa compañía Americana omitió advertir, mencionar o señalar cuales podrían ser las causas de extinción del contrato principal, con lo logró que GALINDO SA efectúe inversiones considerables que a la fecha resultan ser activos improductivos, consiguientemente no se condujo con las reglas de buena fe e incurrió en abuso de derecho, lo que al tenor del artículo 984 del Código Civil, conlleva una responsabilidad de resarcimiento de daños; más aún si fue la propia FORD MOTOR COMPANY la que dio por terminado unilateralmente el contrato suscrito en 1999, y que de haber conocido GALINDO SA que se terminaría el contrato principal en un corto período no habría invertido en la vigencia del contrato preliminar.

2.5.- DAÑOS PRODUCIDOS.-

A la fecha GALINDO SA, dado el incumplimiento y la concurrencia de la culpa precontractual cuenta con activos improductivos con un valor superior a los $us. 2.000.000 cuya ejecución data precisamente del período de la vigencia del

contrato preliminar, y por ello, no ha podido dar cumplimiento a los pagos del financiador europeo relacionado con la propia FORD MOTOR COMPANY como su afiliado, y esa ha sido la razón esencial de la propia terminación del contrato de concesión esgrimida por FORD)

Terminación unilateral que a su vez, ha determinando la imposibilidad de que GALINDO SA. siga operando con la marca FORD, y otros aspectos vinculados al contrato de 1999.

III.- DEMANDA.-

(Por lo expuesto, y respaldados en las disposiciones legales mencionadas y los artículos 327 y siguientes del Código de Procedimiento Civil, deducimos proceso de conocimiento en contra de la empresa norteamericana FORD MOTOR COMPANY, sobre resarcimiento de daños y perjuicios solicitando que previo los trámites de rigor se declare en sentencia PROBADA la demanda y se disponga:

a)El resarcimiento de los daños y perjuicios producidos a GALINDO SA emergente de la culpa precontractual y la omisión de comunicación de las causales de terminación del contrato de concesión suscrito en 1999; que motivo las inversiones en activos improductivos.

b)El resarcimiento de los daños y perjuicios producidos con el incumplimiento de la suscripción del contrato en forma oportuna que motivó a su vez inversiones injustificadas.

c)Que los importes se liquiden en ejecución de sentencia, una vez ejecutoriada la misma.

d)La condena en costas.)

IV.- DEMANDADO Y CUANTIA.-

El demandado es la empresa de origen NORTEAMERICANO que gira bajo la razón social de FORD MOTOR COMPANY, representada por WILLIAM CLAY FORD en su condición de Presidente Ejecutivo, mayor de edad, hábil por derecho de Nacionalidad Norteamericana, con domicilio en The American Road, Dearborn, Michigan 48121-1899 en Estados Unidos de Norteamérica.

Hacemos presente que la cuantía de la presente demanda es indeterminada, debido a que el importe de los daños será liquidable en ejecución de sentencia.

8

D.S. 21124 de 15-11-85.
R.M. N° 1039 de 13-11-2001
Bs 1.50

N° 2526091
Serie "A-2002"
La Paz - Bolivia

OTROSI 1.- A los efectos de la citación del demandado, solicito se libre el respectivo exhorto en aplicación del artículo 114 del Código de Procedimiento Civil, debiendo imprimirse el trámite correspondiente.

OTROSI 2.- Acompaño prueba documental, la cual se encuentra en idioma inglés, acompañada de su traducción correspondiente en todos los casos por traductor autorizado, pidiendo que se arrime a sus antecedentes.

OTROSI 3.- El abogado que nos patrocina se somete en honorarios a la iguala profesional suscrita.

OTROSI 4.- Señalamos domicilio en las oficinas del abogado que suscribe, ubicadas en la calle Chuquisaca No. 688, lugar donde deberán hacer conocer aquellas diligencias señaladas y previstas por ley.

JUSTICIA, etc.

Cochabamba, Julio 23 del 2002.

972871   CBBA

NOTA
Presentó Enrique Retinto Huerta C.I. N.o.
Fecha: 02-08-2002   Hrs. 16:20
Prueba Literal 7 Fotocopias fojas 135 :doy fé
- Carpeta fs. (9) Mas   Glanjinés
- Poder Fs. (6) Mas
POR SECRETARIO DE CAMARA
SALA CIVIL SEGUNDA
- Carpeta Ford Azul fs. (11)

972871   CBBA

www.scantopdf.eu
www.scantopdf.eu



715 S.W. 73RD AVENUE
MIAMI, FLORIDA 33144
TEL 305 373•7874 FAX 381•7874
TOLL FREE: 1 (888) 304•7874
E-MAIL: info@pretran.com

**Certificate of Accuracy**



State of Florida)
County of Miami-Dade)

**Vicente de la Vega**, certified by the Administrative Office of the United States Court and by the Court Interpreters Certification Board of the State of Florida, swears, deposes and states that the attached translation has been performed by a translator fully qualified to translate in the **SPANISH** and **ENGLISH** languages, as engaged to this effect by and on behalf of Precision Translating Services, Inc.

Sworn to and subscribed before me this Tuesday, October 22, 2013 by **Vicente de la Vega**, who is personally known to me.

_____
**Vicente de la Vega**

My commission expires:

ALICIA A. MUINA
MY COMMISSION # EE 056220
EXPIRES: May 18, 2015
Bonded Thru Notary Public Underwriters

_____
Notary Public State of Florida at Large

**The utmost care has been taken to ensure the accuracy of all translations. Precision Translating Services, Inc. and its employees shall not be liable for any damages due to its own negligence or errors in typing or translation, nor shall it be liable for the negligence of third parties.**

# EXHIBIT Tr.D

[illegible]                                                     147

[three illegible tax stamps, overlaid by round stamps reading "Republic of Bolivia, District Court Seven"]

[illegible]

<u>HONORABLE DISTRICT JUDGE SEVEN FOR CIVIL MATTERS</u>

Arbitration defense

Addition 1.- Attaching Power of Attorney

Addition 2.- Submitting and including documentary evidence

Addition 3. Professional fees.

Addition 4. Procedural Domicile

SANDRA YAÑEZ EID, a Bolivian, divorced, an attorney by profession, of legal age and legally competent, identified by Identification Card No. 3027222 Cbba., domiciled at Pinto Palace Building, 2nd Floor, Suite 210 in the city of Cochabamba, on behalf of FORD MOTOR COMPANY, as demonstrated by the mandate attached to this brief, comes before Your Honor and respectfully states and pleads:

1. **Standing**

As evidenced by Certified Copy No. 493/2002 attached to this document, FORD MOTOR COMPANY, which has valid domicile and legal existence according to the laws of the State of Delaware in the United States of America, and is domiciled in the state of Michigan in the United States of America, has granted me the authority to come before Your Honor on their behalf.

This certified copy of the power of attorney is based on and valid pursuant to the provisions of Articles 415 (ISOLATED RECORDS), 417 (DOCUMENT AUTHENTICATION) and 420 (REPRESENTATIVES) of the Bolivian Code of Commerce given that: i) FORD MOTOR COMPANY carries out no regular acts of commerce in Bolivia, therefore it is not required to register with the Commercial Registry; ii) The power of attorney granted has gone through all necessary steps and received all necessary authentications to be valid under Bolivian law; and iii) In that regard, the requirement to register with the Commerce Registry has been met in order for the power of attorney to be fully valid for third parties.

Based on the above, I respectfully request that Your Honor, applying Articles 58, 60 and 402, paragraph II of the Code of Civil Procedure, accept my standing and as a result, notify me of future procedural steps and filings, and rule on the contents of this brief.

2. **Facts**

On August 2, 2002, Enrique Galindo Huerta, in his capacity as legal representative of Sociedad Anónima Automores Galindo S.A. filed for a proceeding leading to a declaratory judgment against FORD MOTOR COMPANY; this process is currently before the court under your authority.

At that time, he submitted a series of documents in English, accompanied by their appropriate translations.



[partial, illegible round stamp]

Given that FORD MOTOR COMPANY has no domicile or legal representative in the Republic, it was notified by subpoena. Service was carried out in the United States of America.

Through this brief, based on Article 12 of the Arbitration and Conciliation Act, Law 1770, in the name and on behalf of FORD MOTOR COMPANY, I file an arbitration defense in the aforementioned process, based on considerations of fact and law that are set forth below.

**3.   Plaintiff's petition**

Under item III of the brief by which the process leading to declaratory judgment was initiated, the plaintiff states as transcribed below:

*III.-CLAIM.-*

*Given the above, based on the legal provisions mentioned and on Articles 327, and pursuant to the Code of Civil Procedures, we filed a lawsuit against the American company, FORD MOTOR COMPANY for restitution of damage, asking that upon completion of the necessary formalities, judgment be issued declaring the claim to be PROVEN, and ordering:*

*a) restitution for the damage caused to GALINDO SA as a result of the precontractual negligence and failure to communicate the grounds for termination of the dealer contract executed in 1999, which led to the investment in nonproductive assets.*

*b) restitution for the damage caused by the failure to execute the contract in a timely fashion which, in turn, caused the unjustified investments.*

*c) That the amounts be settled by enforcing the judgment once said judgment is executed.*

*d) Court costs.*

The transcription of the above prayer for relief indisputably shows that the lawsuit is focused exclusively on the alleged precontractual negligence attributed to FORD MOTOR COMPANY with regard to the "dealer contract" executed in 1999.

In this regard, it is important to note that the contract in question is comprised of a series of documents, among which are, primarily, the "Global Importer Dealer Sales and Service Agreement Standard Provisions", translated and submitted to Your Honor by the plaintiff as "Global Importer Dealer Sales and Service Agreement", and the "Global Importer Dealer Standard Manual", translated and submitted in turn to Your Honor by the plaintiff as "Global Importer Dealer Sales and Service Contract and General Provisions".

One hundred forty eight                    148

It bears repeating that the documents mentioned above were submitted by the plaintiff who expressly stated in his Addition 2.- of the complaint: " I hereby attach documentary evidence, which is in English, accompanied in each case by its corresponding translation by an authorized translator, and request that it be included in the case file."  By this, the plaintiff has fully admitted to the authenticity and validity of such documents.

**4.   Existence of an arbitration agreement**

In this case, item 14 of the "Global Importer Dealer Sales and Service Agreement" establishes the rules to which all conflicts arising between the parties shall be submitted.  The first and last paragraphs of this item, in particular, clearly state that:

"The Company and the Dealer acknowledge that conflicts may arise that cannot be resolved in the normal course of business. In the event of any such conflict, dispute or complaint between the parties in connection with the violation, implementation, invalidation or TERMINATION OF THIS AGREEMENT, or of any or all of its appendices, the following procedure shall be implemented, consisting of the sole recourse for the parties:…

7) The Arbitration to which the parties bind themselves and submit must take place in the State of Michigan unless otherwise agreed to in writing by both parties.  The substantive and procedural law of the State of Michigan, without taking into account the conflict of legal standards, shall apply to the procedures and the parties agree to accept such jurisdiction…

The Company and the Dealer agree that the conflict resolution process described in <u>Clause 14, which</u> includes mandatory arbitration, shall be the sole mechanism for resolving any conflict or complaint between the parties relating to the cause or relating in any way to the stipulations of this Contract, including all of its appendices, **<u>its formation</u>**, interpretation, implementation, invalidity or termination." (underlining and bold print ours)

From the above quote it is evident that any conflict relating to the Contract, including everything relating to formation of the Contract, must necessarily be submitted to arbitration.  Based on an analysis of the claim, one can conclude that the claim submitted refers specifically to precontractual negligence, i.e., the formation of the Contract, an element that, in light of the arbitration agreement, must be inescapably be submitted to arbitration by agreement of the parties.

5.   Applicable Law

According to paragraph III of Article 12 (Arbitration defense) of the Arbitration Act,  once the existence of an arbitration agreement with no option to appeal  is on record, the competent court shall declare the arbitration defense to be proven or, addressing only the non-validity or

impossibility of enforcing the arbitration agreement, shall dismiss the arbitration defense...".

In this regard, the assessment of the validity of the arbitration agreement must necessarily begin with the supposition that international rules of arbitration apply, given that, according to Article 71 (Characterization) of the Arbitration and Conciliation Act, an arbitrator is international by nature in the following cases:

1. When at the time the arbitration agreement is executed, the parties' establishments are in different States.

2. When the place where a substantial part of the duties, or the place with which the object of the conflict is most closely related, is outside the State in which the parties have their establishments.

3. When the parties have expressly agreed that the matter subject to arbitration is related to more than one State.

Given that at the time, and in fact on the date, that the arbitration agreement was executed the parties (AUTOMOTORES GALINDO S.A. and FORD MOTOR COMPANY) had their establishments in different States (Bolivia and the United States of America), it is clear that the conflict is subject to the laws of international arbitration established by the Arbitration and Conciliation Act.

As a consequence of the above, i) the international agreements specified in Article (73) of the Arbitration and Conciliation Act apply; ii) The provisions of Title I of the Arbitration and Conciliation Act that relate to arbitration in general, shall be applied in supplement; iii) the Arbitration Court shall decide the conflict subject to the legal provisions chosen by the parties as applicable to the cause of the conflict; iv) The parties' capacity to enter into the arbitration agreement on their own or on behalf of another person, shall be governed by the laws of their place of domicile, primary establishment, or regular residence, unless Bolivian law is more favorable to the validity of the arbitration agreement; v) The substantial or formal validity of the international arbitration agreement is governed by the law selected by the parties.

**6. Prayer for Relief**

In response to the points of fact and of law set forth above, in the name and on behalf of my client, I respectfully ask that Your Honor, in application of Article 12 of the Arbitration and Conciliation Act, without a major process and through an express ruling, declare this arbitration defense to be proven.

**Addition 1.** Certified Copy No. 493/2003 Attached.

**Addition 2.** In application of Article 330 of the Code of Civil Procedure, I request that the evidence appearing in the file, with its respective translations into Spanish submitted by the plaintiff, be admitted



One hundred forty nine                    14

as documentary evidence for the arbitration defense, according to the following list:

    1)    Global Importer Dealer Sales and Service Agreement Standard Provisions and all of it appendices, including but not excluding,

        a. Ford Motor Company  Global Importer Dealer Sales and Service Contract and General Provisions.

        b. Ford Motor Company Global Importer Dealer Standard Manual.

**Addition 3.-** Professional fees according the retainer signed with the company represented.

**Addition 4.-** I indicate as my domicile for process, the Pinto Palace Building, Suite 210.

Justice

Cochabamba, November 19, 2003

[illegible signature]
Sandra E. Yañez Eid
Attorney
National IDF C.-5737
RUC No. 8273103

NOTE

**Filed by** _____ Sandra E Yanez _____

_____ C.I. __(M.N.) CI 3087222 Cbba.

**Date:** _____ 24 – 11 - 04 _____ Time__ 9:45 __

**Documentary evidence:** _ Certified Copy _ Pages _9_ I attest.

    F    13

[illegible signature]

[illegible signature]
[illegible]
AIDE
District Court
7 for Civil and Commercial Matters
Cochabamba – Bolivia







Republic of Bolivia

Disrict Court 7 for Civil Matters

Cochabamba - Bolivia

January 23, 2004

TRANSFER.- of the arbitration defense files.- For Addition 1 - Attach to case file.- For Addition 2.- Taken into account and to be considered during judgment.- For Addition 3.- Taken into account.- For Addition 4.- Process domicile considered as designated.- Notify officer.

[illegible signature]
Dr. Basilio Cruz Chilo
[illegible] Judge for Civil Matters
[illegible] Court
Cochabamba – Bolivia

[illegible signature]
Ma. [illegible] Montaña Montaña
Secretary Attorney
District Court 7 for Civil Matters
Cochabamba – Bolivia



www.scantopdf.eu

## SEÑOR JUEZ SÉPTIMO DE PARTIDO EN LO CIVIL

Excepción de arbitraje
Otrosi 1°.- Adjunta poder.
Otrosi 2°.- Presenta prueba literal y hace presente.
Otrosi 3°.- Honorarios profesionales.
Otrosi 4°.- Domicilio procesal.

SANDRA YAÑEZ EID, boliviana, divorciada, de profesión abogada, mayor de edad y hábil por ley, identificada mediante Cédula de Identidad N° 3027222 Cbba., domiciliada en Edificio Pinto Palace Piso 2 Oficina 210 de la ciudad de Cochabamba, en representación de la empresa FORD MOTOR COMPANY, cual consta en el mandato que acompaña al presente memorial, se presenta ante las consideraciones de su autoridad y respetuosamente expone y pide:

### 1. Apersonamiento

Tal como se acredita por el Testimonio N° 493/2003 que se adjunta al presente escrito, la empresa FORD MOTOR COMPANY, con domicilio válido y existencia legal de acuerdo a las leyes del Estado de Delaware de los Estados Unidos de Norteamérica, con domicilio en el estado de Michigan de los Estados Unidos de Norteamérica, me ha concedido facultades de apersonarme ante vuestras autoridades en su representación.

Dicho testimonio de poder encuentra su validez y fundamento en lo dispuesto por los artículos 415 (ACTOS AISLADOS), 417 (AUTENTICACION DE DOCUMENTOS) y 420 (REPRESENTANTES) del Código de Comercio Boliviano ya que: i) FORD MOTOR COMPANY no ejerce actos habituales de comercio en Bolivia por lo cual no se encuentra obligada a matricularse en el Registro de Comercio; ii) El poder otorgado ha cumplido con todos los pasos necesarios y legalizaciones para ser válido de acuerdo a las leyes bolivianas; y iii) respecto al mismo se ha cumplido el requisito de inscripción en el Registro de Comercio a fin de que éste tenga pleno valor legal ante terceros.

En base a lo anterior, solicito respetuosamente a su probidad, que en aplicación de los artículos 58, 60 y 402 parágrafo II del Código de Procedimiento Civil, acepte mi personería y, en consecuencia, se me haga conocer futuras diligencias y actos procesales y se provea el contenido del presente memorial.

### 2. Antecedentes

El 2 de agosto de 2002, Enrique Galindo Huerta, en su condición de representante legal de la Sociedad Anónima Automotores Galindo S.A., dedujo proceso de conocimiento en contra de FORD MOTOR COMPANY, proceso que actualmente se encuentra radicado ante el despacho a cargo de su autoridad.

En dicha oportunidad, presentó una serie de documentos en idioma Inglés acompañados de sus traducciones de parte.

Debido a que FORD MOTOR COMPANY no poseía domicilio ni representante legal en la República, se dispuso su citación mediante exhorto, diligencia que fue llevada a cabo en los Estados Unidos de Norteamérica.

Mediante el presente memorial, al Amparo del artículo 12 de la Ley de Arbitraje y Conciliación N° 1770, en nombre y representación legal de FORD MOTOR COMPANY, presento excepción de arbitraje en el mencionado proceso, en base a las consideraciones de hecho y de derecho que se exponen a continuación.

3. Petición del demandante

En el numeral III. del memorial por el cual se deduce el proceso de conocimiento, el demandante textualmente señala:

"III. DEMANDA.-

Por lo expuesto; y respaldados en las disposiciones legales mencionadas y los artículos 327 y siguientes del Código de Procedimiento Civil, deducimos proceso de conocimiento en contra de la empresa norteamericana FORD MOTOR COMPANY, sobre resarcimiento de daños y perjuicios, solicitando que previos los trámites de rigor se declare en sentencia PROBADA la demanda y se disponga:

a) **El resarcimiento de los daños y perjuicios** producidos a GALINDO S.A. **emergente de la culpa precontractual y la omisión de comunicación de las causales de terminación del contrato de concesión suscrito en 1999**, que motivó las inversiones en activos improductivos.

b) **El resarcimiento de los daños y perjuicios producidos con el incumplimiento de la suscripción del contrato en forma oportuna** que motivó a su vez inversiones injustificadas.

c) Que los importes se liquiden en ejecución de sentencia una vez ejecutoriada la misma.'

d) La condena en costas". (Las negrillas y el subrayado son nuestros)

De la trascripción del anterior petitorio se demuestra incontrastablemente que la demanda se centra exclusivamente en la pretendida culpa precontractual atribuida a FORD MOTOR COMPANY con relación al "contrato de concesión" suscrito en 1999.

Al respecto es importante destacar que dicho contrato se encuentra conformado por una serie de documentos entre los que se encuentran principalmente el "Global Importer Dealer Sales and Service Agreement Standard Provisions", traducido y presentado ante su autoridad por el demandante como "Convenio de Ventas y Servicio del Concesionario Importador Global" y el "Global Importer Dealer Standard Manual", traducido y presentado a su vez por el demandante ante su autoridad como "Concesionario Importador Global Contrato de Ventas y Servicios Disposiciones Generales".

www.scantopdf.eu

www.scantopdf.eu

Conviene insistir en que los documentos mencionados anteriormente fueron presentados por el demandante que señaló expresamente en el Otrosi 2.- del memorial de demanda: "Acompaño prueba documental, la cual se encuentra en idioma inglés, acompañada de su traducción correspondiente en todos los casos por traductor autorizado, pidiendo que se arrime a sus antecedentes". Por lo cual la autenticidad y validez de dichos documentos ha sido plenamente admitida por el demandante.

### 4. Existencia de un convenio arbitral

En este sentido, el numeral 14 del "Convenio de Ventas y Servicio del Concesionario Importador Global", establece las reglas a las que se someterá toda disputa emergente entre las partes. En particular, el primer y el último párrafo del mencionado numeral claramente establecen que:

La Compañía y el Concesionario reconocen que podrán suceder controversias que no podrán ser resueltas en el curso normal de los negocios. En el caso de que surja tal controversia, disputa o reclamo entre las partes en conexión con la violación, implementación, invalidez o terminación de este Contrato así como con cualquiera o todos sus anexos, se pondrá en marcha el siguiente procedimiento que constituirá un recurso exclusivo para las partes: ...

7) El Arbitraje al cual las partes se obligan y someten deberá tomar lugar en el Estado de Michigan a menos que sea acordada otra cosa por escrito por ambas partes. La Ley substantiva y procedimental del Estado de Michigan, sin tomar en cuenta el conflicto de normas legales, deberá aplicarse a los procedimientos y las partes acuerdan aceptar tal jurisdicción...

La Compañía y el Concesionario acuerdan que el proceso de resolución de controversias descrita en esta cláusula 14 y que incluye el arbitraje obligatorio, será el mecanismo exclusivo para resolución de cualquier controversia o reclamo entre ambas partes relacionado con la causa o que se relacione de cualquier forma con lo estipulado en este Contrato incluyendo todos sus anexos, su formación, interpretación, implementación, invalidez o terminación." (el subrayado y las negrillas son nuestras)

De la cita anterior se puede evidenciar que queda sometida obligatoriamente a arbitraje toda controversia relacionada al Contrato, incluyendo todo lo relativo a la formación del Contrato. Efectuado un análisis de la demanda se puede concluir que, la demanda presentada se refiere específicamente a la culpa precontractual, es decir a la formación del Contrato, elemento que en virtud a la cláusula arbitral deberá ser sometido ineludiblemente a arbitraje por acuerdo de partes.

### 5. Normativa aplicable

De acuerdo al parágrafo III del artículo 12° (Excepción de arbitraje) de la Ley de Arbitraje, constatada la existencia del convenio arbitral y sin lugar a recurso alguno, la autoridad judicial competente declarará probada la excepción de arbitraje o

www.scantopdf.eu

pronunciándose únicamente sobre la nulidad o ejecución imposible del convenio arbitral, desestimará la excepción de arbitraje".

Al respecto, la evaluación de la validez del convenio arbitral, deberá necesariamente partir del presupuesto de que son aplicables al mismo las reglas de los arbitrajes de carácter internacional ya que, de conformidad al artículo 71° (Caracterización) de la Ley de Arbitraje y Conciliación, un arbitraje es de carácter internacional, en los casos siguientes:

1. Cuando al momento de celebrar el convenio arbitral, las partes tengan sus establecimientos en Estados diferentes.

2. Cuando el lugar de cumplimiento de una parte sustancial de las obligaciones o el lugar con el cual el objeto de la controversia tenga una relación más estrecha se encuentre fuera del Estado en el que las partes tienen sus establecimientos.

3. Cuando las partes hubieren convenido expresamente que la materia arbitrable está relacionada con más de un Estado.

Dado que al momento de celebrar el convenio arbitral e incluso a la fecha, las partes (AUTOMOTORES GALINDO S.A y FORD MOTOR COMPANY) tienen sus establecimientos en Estados diferentes (Bolivia y Estados Unidos de Norteamérica), queda claro que la controversia se encuentra sometida las reglas del arbitraje de carácter internacional establecidas por la Ley de Arbitraje y Conciliación.

Como consecuencia de lo anterior: i) Son aplicables a la controversia los convenios internacionales detallados en el artículo 73 de la Ley de Arbitraje y Conciliación; ii) Las disposiciones del Título I de la Ley de Arbitraje y Conciliación relativas al arbitraje en general, se aplicarán con carácter supletorio; iii) El Tribunal Arbitral decidirá la controversia con sujeción a las normas legales elegidas por las partes, como aplicables al fondo de la controversia; iv) La capacidad de las partes para otorgar el convenio arbitral por sí mismas o en representación de otra persona, será la que establezca la ley del lugar de su domicilio, establecimiento principal o residencia habitual, salvo que la ley boliviana sea más favorable a la validez del convenio arbitral; v) La validez sustancial o formal de un convenio arbitral internacional se rige por la ley elegida por las partes.

6. Petitorio

En virtud a los fundamentos de hecho y de derecho precedentemente expuestos, en nombre y representación de mi mandante, solicito respetuosamente a su autoridad que en aplicación del artículo 12 de la Ley de Arbitraje y Conciliación, sin mayor trámite y mediante resolución expresa, declare probada la presente excepción de arbitraje.

Otrosí 1°.- Adjunta Testimonio N° 493/2003.

Otrosí 2°.- En aplicación del Artículo 330 del Código de Procedimiento Civil, solicito que se dé por presentada la prueba que cursa en el expediente con sus

respectivas traducciones al idioma Español ofrecida por el demandante, en calidad de prueba documental de la excepción de acuerdo al siguiente detalle:

1) Convenio de Ventas y Servicio del Concesionario Importador Global Provisiones Estándares y todos sus anexos, incluyendo pero no excluyendo:

a. Concesionario Importador Global, Contrato de Ventas y Servicios, Disposiciones Generales de la Compañía Ford Motor

b. Manual de Normas de Concesionario Importador Global de la Compañía Ford Motor.

Otrosi 3°.- Honorarios profesionales de acuerdo a iguala suscrita con la empresa patrocinada.

Otrosi 4°.- Señalo domicilio procesal en el Edifico Pinto Palace Oficina 210.

Justicia

Cochabamba 19 de noviembre de 2003

*Sandra E. Yáñez Eid*
A B O G A D O
MATRICULA No 2269
RUC No. 8273103

## N O T A

Presentó .......... Sandra ..... Yanez ..... Eid ..............

...................................................... C.I. (M. NºI. 3037222666.

Fecha .... 2 4 – 11 – 03 ......... Hrs. 9.45

Prueba literal ...testimonio... fs. ........9............ doy fé
F 19.

*Mercado Hinojosa*
AUXILIAR
Juzgado de Partido 7mo. en lo Civil
Cochabamba - Bolivia

www.scantopdf.eu



A, 23 de enero de 2004

TRASLADO.- de la excepción de arbitraje opuesto.- Al Otrosí 1°.- Arrímese a sus antecedentes.- Al Otrosí 2do.- Se tiene presente y considérese en resolución.- Al Otrosí 3ro.- Se tiene presente.- Al Otrosí 4to.- Por señalado el domicilio procesal que indica.- Notifique funcionario.

Dr. BASILIO CRUZ CHILO
JUEZ DE PARTIDO 7mo. EN LO CIVIL
Corte Superior de Justicia
COCHABAMBA - BOLIVIA.

SECRETARIA ABOGADA
Juzgado 7mo. de Partido en lo Civil
Cochabamba - Bolivia



715 S.W. 73RD AVENUE
MIAMI, FLORIDA 33144
**TEL** 305 373•7874 **FAX** 381•7874
**TOLL FREE:** 1 (888) 304•7874
**E-MAIL:** info@pretran.com

**Certificate of Accuracy**



State of Florida)
County of Miami-Dade)

**Vicente de la Vega**, certified by the Administrative Office of the United States Court and by the Court Interpreters Certification Board of the State of Florida, swears, deposes and states that the attached translation has been performed by a translator fully qualified to translate in the **SPANISH** and **ENGLISH** languages, as engaged to this effect by and on behalf of Precision Translating Services, Inc.

Sworn to and subscribed before me this Tuesday, October 22, 2013 by **Vicente de la Vega**, who is personally known to me.

_____
        **Vicente de la Vega**

My commission expires:

ALICIA A. MUINA
MY COMMISSION # EE 056220
EXPIRES: May 18, 2015
Bonded Thru Notary Public Underwriters

_____
Notary Public State of Florida at Large

**The utmost care has been taken to ensure the accuracy of all translations.  Precision Translating Services, Inc. and its employees shall not be liable for any damages due to its own negligence or errors in typing or translation, nor shall it be liable for the negligence of third parties.**

# EXHIBIT Tr.E

[stamp]

Republic of Bolivia

District Court 7

for Civil Matters

Document

FORD MOTOR COMPANY
rep. by Sandra Yañez
C- 06 – IV – 04
Time: 09/15

March 29, 2004

**HEARING**: The Arbitration defense filed by Ford Motor Company, represented by Mrs. Sandra Yañez Eid.

**GROUNDS**: The General Provisions of the Sales and Services contract executed by and between Global Importer Dealer "Galindo and Cia., Limited Partnership with Shares, and Ford Motor Company",  contains an Arbitration agreement documented in item 14, under the title Conflict Resolution Procedures, which states: The Company and the Dealer acknowledge that conflicts may arise that cannot be resolved in the normal course of business. In the event of any such conflict, dispute or complaint between the parties in connection with the violation, implementation, invalidation or termination of this agreement, or of any or all of its appendices, the following procedure shall be implemented, consisting of the sole recourse for the parties: (a) As soon as possible, the Company and the dealer shall hold a meeting, including  individuals with the power to make decisions regarding  resolution of the conflict, in order to attempt in good faith to negotiate a solution to the conflict, although it is acknowledged that no meeting of this type will consider invalidating or reducing the duties and responsibilities of the parties present; nor will it consider the waiver of a solution by any party, if that party is otherwise authorized to grant that solution.

(b) If within thirty (30) days following such meeting, the Company and the Dealer have not been successful in negotiating a solution to the conflict, both parties agree to go to arbitration, to which they shall submit according to the Arbitration Rules of the United Nations Commission on International Trade Law (hereinafter "UNCITRAL") in effect on the date that this Agreement is signed.

(l)  The Authority appointed must be the American Arbitration Association.

(2)   The case shall be handled by the American Arbitration Association according to its "Procedures for cases subject to the UNCITRAL Arbitration Rules".

That with regard to Arbitration, the law states:  regarding the agreement in Art. 10 and regarding the Arbitration defense in Art. 12 of Law No. 1770 on Arbitration and Conciliation dated March 10, 1997, item III of which provides: ***"…once the existence of an arbitration agreement with no option to appeal  is on record, the competent court shall declare the arbitration defense to be proven or, addressing only the non-validity or impossibility of enforcing the arbitration agreement, shall dismiss the arbitration defense…"***

That Ford Motor Company has unilaterally terminated the validity of the contract; now, in regard to the damages that the dealer claims were caused by this act (the unilateral rupture of the contract), it is impossible to submit this claim for arbitration in an Arbitration Court of the State of Michigan, United States of America, in accordance with the contract; this impossibility is addressed in Art. 12-III, last part, of the aforementioned Law.

**THEREFORE:**  The arbitration defense is dismissed.  Notify the official.

[illegible signature]
Dr. Basilio Cruz Chilo
[Illegible] Judge for Civil Matters
[illegible] of Justice
Cochabamba – Bolivia

[illegible signature]
Ma. [illegible] Montaña Montaña
Attorney Clerk
District Court 7 for Civil Matters
Cochabamba – Bolivia



Cédula

rep. por Sandra Yañez
c - 06 - IV - 04
Hrs. 09:15

A, 29 de marzo de 2004

VISTOS. La excepción de Arbitraje opuesta por la Empresa Ford Motor Company representada por la Sra. Sandra Yañez Eid.-

CONSIDERANDO: Que, en el contrato de Ventas y Servicios Disposiciones Generales suscrito entre el concesionario Importador Global "Galindo y Cia. Sociedad en Comandita por Acciones y la Compañía Ford Motor Comapany", existe convenio Arbitral instrumentado en el numeral 14 bajo el título Procedimientos de Resolución de Controversias. que dice: La Compañía y el Concesionario reconocen que podrán suceder controversias que no puedan ser resueltas en el curso normal de los negocios. En el caso de que surja tal controversia, disputa o reclamo entre las partes en conexión con la violación, implementación, invalidez o terminación de este contrato así como con cualquiera o todos sus anexos, se pondrá en marcha el siguiente procedimiento que constituirá un recurso exclusivo para las partes: (a) La Compañía y el concesionario sostendrán una reunión a la brevedad posible, en la que intervengan personas con poder de decisión en cuanto toca a la resolución de la controversia, para tratar de negociar con buena fe una solución a ésta, aunque estableciéndose que ninguna reunión de tal tipo considerará viciar o reducir las obligaciones y responsabilidades de las presentes partes o considerar la renuncia por una de las partes de cualquier solución a la cual tal parte esté de otra manera autorizada a dar.

(b) Si dentro de treinta (30) días posteriores a tal reunión la Compañía y el Concesionario no han tenido éxito en negociar una solución a la controversia, ambos acuerdan llevar la misma a un arbitraje al cual se someten de acuerdo con las Normas de Arbitraje de la Comisión de las Naciones Unidas sobre Derecho Comercial (de aquí en adelante, "UNCITRAL"), y que estén en vigencia a la fecha de suscripción de este Contrato.

(1) La Autoridad nombrada deberá ser la Asociación Americana de Arbitraje.

www.scantopdf.eu

(2) El caso será tratado por la Asociación Americana de Arbitraje de acuerdo con sus "Procedimientos para casos que estén sometidos a las Reglas de Arbitraje de la UNCITRAL".

Que, sobre el tema Arbitral, esta legislado: sobre el convenio en el Art. 10 y sobre la excepción de Arbitraje en el Art. 12 de la Ley No. 1770 de 10 de marzo de 1997 de Arbitraje y Conciliación, cuyo numeral III preceptúa: "*Constatada la existencia del convenio arbitral y sin lugar a recurso alguno, la autoridad judicial competente declarara probada la excepción de arbitraje o, pronunciándose únicamente sobre la nulidad o ejecución imposible del convenio arbitral, desestimara la excepción de arbitraje*".

Que, la Compañía Ford Motor Company, ha terminado con la vigencia del contrato por decisión unilateral; ahora, sobre los daños reclamados por el concesionario que dice ocasionados por ese hecho (de la ruptura unilateral del contrato), resulta imposible llevar ese reclamo a la vía arbitral en ejecución del convenio ante un Tribunal Arbitral del Estado de Michigan Estados Unidos de Norte América, situación imposible que esta prevista su observancia en el Art. 12 =III ultima parte de la Ley citada.

POR TANTO: Se desestima la excepción de arbitraje.- Notifique funcionario.

DR. BASILIO CRUZ CHILO
JUEZ DE P... EN LO CIVIL
Corte Sup. de Justicia
COCHABAMBA - BOLIVIA

Fulma Montaño Montaño
SECRETARIA ABOGADA
Juzgado 7mo. de Partido en lo Civil
Cochabamba - Bolivia

www.scantopdf.eu



715 S.W. 73RD AVENUE
MIAMI, FLORIDA 33144
TEL 305 373•7874 FAX 381•7874
TOLL FREE: 1 (888) 304•7874
E-MAIL: info@pretran.com

**Certificate of Accuracy**



State of Florida)
County of Miami-Dade)

**Vicente de la Vega**, certified by the Administrative Office of the United States Court and by the Court Interpreters Certification Board of the State of Florida, swears, deposes and states that the attached translation has been performed by a translator fully qualified to translate in the **SPANISH** and **ENGLISH** languages, as engaged to this effect by and on behalf of Precision Translating Services, Inc.

Sworn to and subscribed before me this Tuesday, October 22, 2013 by **Vicente de la Vega**, who is personally known to me.

_____
     **Vicente de la Vega**

My commission expires:

ALICIA A. MUINA
MY COMMISSION # EE 056220
EXPIRES: May 18, 2015
Bonded Thru Notary Public Underwriters

_____
Notary Public State of Florida at Large

**The utmost care has been taken to ensure the accuracy of all translations.  Precision Translating Services, Inc. and its employees shall not be liable for any damages due to its own negligence or errors in typing or translation, nor shall it be liable for the negligence of third parties.**

CARFIE-WL_130916.01_6 OF 8

EXHIBIT Tr.F

[illegible]

[three illegible tax stamps, overlaid by illegible wet stamps]

R Rob

## HONORABLE DISTRICT SEVEN JUDGE FOR CIVIL MATTERS FOR THE JUDICIAL DISTRICT OF COCHABAMBA

Appeal and statement of grievances

Additions.-

SANDRA E. YAÑEZ EID, whose particulars are known, on behalf of FORD MOTOR COMPANY by virtue of the power of attorney contained in Certified Copy No. 493/2003 on file, come in regard to the litigation pursued against her client by Automotores Galindo S.A . (GALINDO S.A.), state and plead:

**I.       FACTS**

In a brief dated July 23, 2002, Galindo S.A. filed a lawsuit for damages against FORD MOTOR COMPANY.  Having been legally notified by brief dated November 19, 2003, my principle filed an arbitration defense, which served was answered by Galindo S.A. on February 2, 2004.  In this regard, on March 29, 2004, your court issued a ruling dismissing the arbitration defense filed by my principle within the legal time period, Article 12 of the Conciliation and Arbitration Act, in keeping with Article 336 of the Code of Civil Procedures, which states that you "…refuse to hear the case when the party filed against requests it." On April 6, 2004, FORD MOTOR COMPANY was legally notified of this judgment.

This judgment states, at the end, *"…that Ford Motor Company has unilaterally terminated the validity of the contract; now, in regard to the damages that the dealer claims were caused by this act (the unilateral rupture of the contract), it is impossible to submit this claim for arbitration in an Arbitration Court of the State of Michigan, United States of America, in accordance with the contract; this impossibility is addressed in Art. 12-III, last part, of the aforementioned Law* (Note: The judge is referring to the Conciliation and Arbitration Act), *THEREFORE.- The arbitration defense is dismissed…".*

Consequently, in accordance with the fact stated, on behalf of my principle, FORD MOTOR COMPANY, have suffered grievances I  come to file an appeal against the aforementioned Judgment issued by your authority on March 29, 2004, within the legal time period and according to the following terms:

**II.       INDISPUTABILITY OF THE EXISTANCE OF AN ARBITRATION AGREEMENT**

According to the brief by which the arbitration defense was filed in application Art. 12 of Law 1770, ("The arbitration agreement introduces a waiver by the parties against initiating court proceedings regarding the matters or disputes submitted for arbitration"), the first and last paragraphs of item 14 of the "Global Importer Dealer Sales and Service Agreement" signed between FORD MOTOR

[Largely illegible text in margin from preceding paege.]

COMPANY and GALINDO *had to be accepted by Galindo S.A. before executing the contract of 1999"* (emphasis ours).

Given the above, we must conclude that Your Honor declared it impossible to execute the arbitration agreement based on the fact that the contract had already been terminated. This is, in addition, supported by the fact that the Judgment that Your Honor issued on March 29, 2004 specifically mentions in the final part that *"…That Ford Motor Company has unilaterally terminated the validity of the contract; now, in regard to the damages that the dealer claims were caused by this act (the unilateral rupture of the contract), it is impossible to submit this claim for arbitration in an Arbitration Court of the State of Michigan, United States of America, in accordance with the contract; this impossibility is addressed in Art. 12-III, last part, of the aforementioned Law. THEREFORE: The arbitration defense is dismissed…" (underlining and emphasis ours).*

**III. EXECUTABILITY OF THE ARBITRATION AGREEMENT**

Contrary to what Your Honor asserted, execution of the aforementioned Arbitration Agreement is absolutely possible, given the following:

a) Rights can be subject to arbitration. Art. 3 of Law 1770 indicates that "conflicts that arise of may arise from legal contractual or extracontractual relationships between the parties… regarding rights that are available and do not affect public policy." In no way does the Arbitration Agreement contained in the 1999 contract deal with rights that are not subject to disposition or that affect public policy, nor do they refer to matters expressly excluded by the arbitration law (Art. 6, Law 1770).

b) The parties' express will to submit their conflicts to arbitration exists. Both parties have sufficient legal capacity to submit to arbitration in exercise of their free will. And in fact, the parties have expressed their specific will to submit to arbitration *"any conflict or complaint between the parties in connection with the cause or related in any way to the stipulations of the Contract, including all of its appendices, its formation…"* It cannot be disputed that the arbitration clause should be applied to any conflict relating to the cause or formation of the contract. In addition, the parties have freely determined the place of arbitration, applicable law, etc., and execution of all of these is perfectly feasible. In other word, the arbitration agreement has met all of the legal requirements for its validity and execution. Execution thereof is not impossible.

**IV. APPLICATION OF ARBITRATION DEFENSE**

But with regard to the arbitration defense, does it apply to a terminated contract?

PRECISION TRANSLATING SERVICES, INC. WWW.PRETRAN.COM CERTIFIED TRANSLATION



Art. 11 of Law 1770 states as transcribed *"(Autonomy of the arbitration agreement). Every arbitration agreement that forms part of a primary contract is considered to be an agreement that is independent of the other stipulations therein."* Indeed, the clause that contains the arbitration agreement, commonly called the "arbitration clause", must be considered to be a separate contract and does not depend on the contract that formally contains it. Therefore, termination of the contract in no way signifies termination of the arbitration agreement. The arbitration agreement is fully applicable. More so if the arbitration agreement explicitly covers the formation period or causes of the primary contract.

On the other hand, termination of the contract in no way means that the arbitration agreement is no applicable, because the plaintiff specifically claims "preCONTRACTUAL negligence" and his complaint is directly linked to the existence of a primary contract.

In this regard, according to Article 465 of the Civil Code *"(PRECONTRACTUAL NEGLIGENCE). During the <u>preliminary dealings and formation of the agreement</u>, the parties must act in good faith, being required to remedy any injury they cause by negligence, recklessness or failure to detect the causes that render the agreement invalid."* (underlining and bold print ours).

In the lawsuit, GALINDO S.A. argues that Ford Motor Company supposedly *"failed to warn, mention or indicate the causes of termination for the primary contract. This allowed them to get GALINDO SA to make significant investments which to date are nonproductive assets. Therefore it did not act in accordance with the rules of good faith and committed an abuse of rights; according to Article 984 of the Civil Code, this entails a responsibility to compensate the damage."*

The alleged negligence to which GALINDO attributes the alleged damages suffered is inseparable from the 1999 contract. Without this contract, there would be no alleged negligence act and therefore, there could be no damage.

However, is the arbitration agreement applicable to the precontractual period?

The arbitration agreement on which the arbitration defense is based states clearly that it must apply to any conflict related to the cause of this contract, its formation, etc. GALINDO specifically claims precontractual negligence, which, as we saw, according to Article 465 of the Civil Code refers to the formation of the contract; on the other hand, it has indicated that it made investments that they now claim as unproductive in order to sign the primary contract, in their own words, *"…the investments and subjection to FORD [plans/drawings] that Galindo S.A. <u>had to assume</u> prior to executing the contract of 1999"* (brief responding to the arbitration defense), i.e., that they were preparing for the contract, the reason for making the investments was the contract, in other words, it was preparing, FORMING the necessary requirements; i.e., that the contract was in formation.

[Largely illegible text in margin from previous paege.]

PRECISION TRANSLATING SERVICES, INC.
CERTIFIED TRANSLATION
WWW.PRETRAN.COM



Specifically, in response to Art. 452 of the Civil Code, the parties worked on the indispensable purpose and cause in order for there to be a meeting of the minds (consent) which eventually resulted in the contract.  The parties prepared for the contract, formed, their essential elements. The contract was in formation.

**V.    PLEA**

Therefore, given all of the above, in application of the arbitration agreement contains in the "Global Importer Dealer Sales and Service Agreement" signed between FORD MOTOR COMPANY and GALINDO S.A. and in execution of the articles referenced from Law 1770, the Conciliation and Arbitration Act, the Civil Code and the Code of Civil Procedure, on behalf of my principle, I FILE AN APPEAL against the Judgment issued by Your Honor in this proceeding on March 29, 2004, as it causes me grievances, and I pray that you therefore send the matter before the appellate court in order for that court to completely **REVOKE** it and let the legal formalities be carried out.

Addition.- Let it be entrusted to a public servant.

Cochabamba, April 8, 2004

[illegible signature]

Sandra E. Yañez Eid

Attorney

National IDF C.-5737

RUC No. 8273103

NOTE

**Filed by**_____      Sandra E Yanez_____

_____C.I. ___3087222 Cbba.

**Date:** _____12 - 04 - 04_____Time___15:40___

**Documentary evidence:** __Appeal___Page__1___I attest.

Paper

F   13          [illegible signature]

3027222 Cbba.

[illegible signature]

[illegible]

AIDE

District Court

7 for Civil and Commercial Matters

Cochabamba – Bolivia



Republic of Bolivia

Disrict Court 7 for
Civil Matters

Cochabamba - Bolivia

April 13, 2004

Transfer [illegible] and Notify Procedures Clerk

[illegible signature]

Dr. Basilio Cruz Chilo

[illegible] Judge for Civil Matters

[illegible] Court

Cochabamba – Bolivia

[illegible signature]

Ma. [illegible] Montaña Montaña
Secretary Attorney

District Court 7 for Civil Matters

Cochabamba – Bolivia





*Sidia*

$P \ Rob^1$

## SEÑOR JUEZ SÉPTIMO DE PARTIDO EN LO CIVIL DEL DISTRITO JUDICIAL DE
## COCHABAMBA

**Apela y expresa agravios**

**Otrosíes.-**

SANDRA E. YÁÑEZ EID, de generales de ley conocidas en representación de la empresa FORD MOTOR COMPANY, en virtud al poder contenido en el Testimonio N° 493/2003 cursante en obrados, dentro de la demanda seguida en su contra por Automotores Galindo S.A. (GALINDO S.A.), expone y pide:

### I.   ANTECEDENTES

Mediante memorial de 23 de julio de 2002, Galindo S.A. interpuso una demanda por daños  y perjuicios contra **FORD MOTOR COMPANY.** Habiendo sido legalmente notificada por memorial de 19 de noviembre de 2003,  mi representada opuso una excepción de arbitraje, la misma que una vez corrida en traslado fue contestada por Galindo S.A. el 2 de febrero de 2004. Al respecto, el 29 de marzo de 2004, su autoridad dictó resolución desestimando la excepción de arbitraje opuesta por mi representada en el plazo de ley, artículo 12 de La Ley de Conciliación y Arbitraje, concordante con el artículo 336 del Código de Procedimiento Civil el cual determina que Usted se "...inhiba de conocer el caso cuando lo solicite la parte judicialmente demandada." El 6 de abril de 2004 FORD MOTOR COMPANY fue legalmente notificada con dicha resolución.

Dicha resolución, en su parte final, dice "...*la Compañía Ford Motor Company, ha terminado con la vigencia del contrato por decisión unilateral; ahora, sobre los daños reclamados por el concesionario que dice ocasionados por este hecho (de la ruptura unilateral del contrato), resulta imposible llevar este reclamo a la vía arbitral en ejecución del convenio ante un Tribunal Arbitral del Estado de Michigan Estados Unidos de Norteamérica: situación imposible que está prevista su observancia en el Art 12- III última parte de la ley citada* (Nota: El juez se refiere a la Ley de conciliación y arbitraje) *POR TANTO.- Se desestima la excepción de arbitraje...*".

En consecuencia, de acuerdo a los antecedentes planteados, a nombre de mi representada, FORD MOTOR COMPANY, habiendo sufrido agravios, dentro del término legal, me permito recurrir de apelación contra la mencionada Resolución dictada por su autoridad el 29 de marzo de 2004, de acuerdo a los siguientes términos:

### II.   INCUESTIONABILIDAD DE EXISTENCIA DE CONVENIO ARBITRAL

De acuerdo a lo señalado en el memorial por el que se opuso la excepción de arbitraje en aplicación del Art. 12 de la Ley 1770, ("El convenio arbitral importa la renuncia de las partes a iniciar proceso judicial sobre las materias o controversias sometidas al arbitraje") el primer y último párrafos del numeral 14 del "Convenio de Ventas y Servicio del Concesionario Importador Global", firmado entre FORD MOTOR COMPANY y GALINDO

www.scantopdf.eu

_tuvo que asumir Galindo S.A._ antes de suscribir el contrato el año 1999" (resaltado nuestro).

En vista de lo anterior, debemos concluir que su autoridad ha declarado la imposibilidad de ejecutar el convenio arbitral basada en que el contrato ya se había extinguido. Esto es además respaldado por el hecho de que la Resolución dictada por su autoridad el 29 de marzo de 2004 menciona expresamente en su parte final que "...la Compañía Ford Motor Company, _ha terminado con la vigencia del contrato por decisión unilateral; ahora_, sobre los daños reclamados por el concesionario que dice ocasionados por este hecho (de la ruptura unilateral del contrato), _resulta imposible llevar este reclamo a la vía arbitral en ejecución del convenio ante un Tribunal Arbitral del Estado de Michigan Estados Unidos de Norteamérica:_ situación imposible que está prevista su observancia en el Art 12- III última parte de la ley citada POR TANTO.- Se desestima la excepción de arbitraje...". (subrayado y resaltado nuestro).

### III.   EJECUTABILIDAD DEL CONVENIO ARBITRAL

Contrariamente a lo afirmado por su autoridad la ejecución del citado Convenio arbitral es absolutamente posible por lo siguiente:

a) El derecho puede sujetarse a arbitraje. El Art. 3 de la Ley 1770 señala que pueden someterse a arbitraje "las controversias surgidas o que puedan surgir de relaciones jurídicas contractuales o extracontractuales de las partes...sobre derechos disponibles y que no afecten al orden público". En ningún caso el Convenio arbitral contenido en el contrato de 1999 versa sobre derechos no susceptibles de disposición o que afecten el orden público, y tampoco se refiere a materias que expresamente son excluidas por la ley del arbitraje (Art. 6 Ley 1770).

b) Existe la voluntad expresa de las partes de someter sus controversias a arbitraje. Ambas partes tienen suficiente capacidad jurídica como para someterse a arbitraje en ejercicio de su libre arbitrio. Y de hecho las partes han expresado su voluntad expresa de someterse a arbitraje a través de una cláusula que señala textualmente su voluntad de someter a arbitraje, "cualquier controversia o reclamo entre ambas partes relacionado con la causa o que se relacione de cualquier forma con lo estipulado en este Contrato incluyendo todos sus anexos, su _formación..._" Es indiscutible que la cláusula arbitral se debe aplicar a cualquier controversia relacionada a la causa o a la formación del contrato. Además, las partes han determinado libremente el lugar del arbitraje, la norma aplicable, etc aspectos todos perfectamente factibles de ejecución.

Es decir que el convenio arbitral ha cumplido con todos lo requisitos legales para su validez y ejecución. No es de ejecución imposible.

### IV.   APLICACIÓN DE LA EXCEPCIÓN DE ARBITRAJE

Pero la excepción de arbitraje ¿es aplicable a un contrato terminado?

El Art. 11 de la Ley 1770 señala textualmente *"(Autonomía del convenio arbitral). Todo convenio arbitral que forme parte de un contrato principal se considera como un acuerdo independiente de las demás estipulaciones del mismo"*. En efecto, la cláusula que contiene el convenio arbitral, comúnmente denominada "cláusula arbitral", debe considerarse como un contrato distinto y que no depende del contrato que formalmente lo contiene. Por tanto, la terminación del contrato de ninguna manera significa la terminación del convenio arbitral. El convenio arbitral es plenamente aplicable. Más aun si explícitamente el convenio arbitral cubre el periodo de formación o las causas del contrato principal.

Por otro lado, la terminación del contrato en modo alguno significa la inaplicabilidad del convenio arbitral porque justamente el demandante reclama una "culpa pre-CONTRACTUAL" y su demanda está íntimamente ligada a la existencia de un contrato principal.

Al respecto, de acuerdo al artículo 465 del Código Civil *"(CULPA PRECONTRACTUAL). En los tratos preliminares y en la formación del contrato las partes deben conducirse conforme a la buena fe, debiendo resarcir el daño que ocasionen por negligencia, imprudencia u omisión en advertir las causales que invaliden el contrato".* (subrayado y negrillas nuestros).

En la demanda GALINDO S.A. argumenta que Ford Motor Company supuestamente *"omitió advertir, mencionar o señalar cuáles podrían ser las causas de extinción del contrato principal, con lo que logró que Galindo S.A. efectúe inversiones considerables que a la fecha resultan improductivos, consiguientemente no se condujo con las reglas de la buena fe e incurrió en abuso de derecho, lo que al tenor del artículo 984 del Código Civil, conlleva una responsabilidad de resarcimiento de daños".*

El supuesto hecho culposo al que GALINDO atribuye los supuestos daños que sufrió es indisoluble del contrato de 1999. Sin ese contrato no existe supuesto hecho culposo y por tanto no puede existir daño.

Sin embargo, el convenio arbitral ¿es aplicable al periodo pre-contractual?

El convenio arbitral por el que procede la excepción de arbitraje indica claramente que se debe aplicar a cualquier controversia relacionada con la causa de este contrato, su formación, etc. GALINDO específicamente reclama culpa precontractual, que como vimos, de acuerdo al artículo 465 del código Civil se refiere a la formación del contrato, por otra parte ha indicado que realizó las inversiones que hoy reclama improductivas a fin de firmar el contrato principal, en sus propias palabras *"...a las inversiones y sujeción a planes de la FORD que tuvo que asumir Galindo S.A. antes de suscribir el contrato el año 1999"* (memorial de respuesta a excepción arbitral), es decir que estaba preparándose para el contrato, la razón de ser de dichas inversiones era el contrato, es decir que estaba preparando, FORMANDO los requisitos necesarios; es decir que el

www.scantopdf.eu

contrato estaba en formación. Justamente, en virtud al Art. 452 del Código Civil las partes trabajaban sobre el objeto y la causa imprescindibles para la coincidencia de voluntades (consentimiento) que finalmente dio lugar al contrato. Las partes se preparaban para el contrato, formaban sus elementos esenciales. El contrato estaba en formación.

**V.     PETITORIO**

Por tanto, en virtud de lo expuesto, en aplicación del convenio arbitral contenido en el "Convenio de Ventas y Servicio del Concesionario Importador Global", firmado entre FORD MOTOR COMPANY y GALINDO S.A. y en ejecución de los artículos citados de la Ley 1770 de Conciliación y Arbitraje, del Código Civil y el Código de Procedimiento Civil, a nombre de mi representada, **INTERPONGO RECURSO DE APELACIÓN** contra la Resolución dictada por su autoridad en el presente proceso el 29 de marzo de 2004 por causarme agravios, y solicito su consiguiente remisión al tribunal de alzada, a fin de que el mismo lo **REVOQUE** totalmente, y sean previas las formalidades de ley.

Otrosí.- Se comisione a funcionario público

Cochabamba, 8 de abril de 2004

Sandra E. Yáñez Eid
A B O G A D O
Carnet Nacional C - 5737
RUC No. 8273103

**N O T A**

Presentó ...Sandra  E.  Yañez...................

.............................................. C.I. 3023222. cbha.

Fecha ...12 - 54 - 04........ Hrs. 15:40.

Prueba literal ...Esr. pela.+.c...... fs. .....1..............: doy fé
a Delación.
F  13.

Iluminada Galani Heras
AUXILIAR
Juzgado de Partido
7mo. en lo Civil y Comercial
Cochabamba - Bolivia

www.scantopdf.eu

13 de abril de 2004

Dr. BASILIO CRUZ CHILO
JUEZ 7mo. EN LO CIVIL
Corte Superior de Justicia
COCHABAMBA - BOLIVIA

Edna Montano Montano
SECRETARIA ABOGADA
Juzgado 7mo. de Partido en lo Civil
Cochabamba - Bolivia

Produced with scantopdf.eu



715 S.W. 73RD AVENUE
MIAMI, FLORIDA 33144
**TEL** 305 373•7874 **FAX** 381•7874
**TOLL FREE:** 1 (888) 304•7874
**E-MAIL:** info@pretran.com

**Certificate of Accuracy**



State of Florida)
County of Miami-Dade)

**Vicente de la Vega**, certified by the Administrative Office of the United States Court and by the Court Interpreters Certification Board of the State of Florida, swears, deposes and states that the attached translation has been performed by a translator fully qualified to translate in the **SPANISH** and **ENGLISH** languages, as engaged to this effect by and on behalf of Precision Translating Services, Inc.

Sworn to and subscribed before me this Tuesday, October 22, 2013 by **Vicente de la Vega**, who is personally known to me.

_____
**Vicente de la Vega**

My commission expires:



_____
Notary Public State of Florida at Large

**The utmost care has been taken to ensure the accuracy of all translations.  Precision Translating Services, Inc. and its employees shall not be liable for any damages due to its own negligence or errors in typing or translation, nor shall it be liable for the negligence of third parties.**

# EXHIBIT Tr.G

REG/S. CH/MW/AINT. 137/26.05.06

[stamp]
Judicial District
Appellate Court
Second Civil
Division
Cochabamba -
Bolivia

*[Along the margin: illegible text from the previous page.]*

***May 26, 2006***

***HEARING****: Appeal of the ruling dated March 29, 2004, written by District Judge Seven for Civil Matters in the Capital, in the **ordinary** lawsuit filed by Enrique Galindo Huerta, legal representative of **Galindo S.A.** against **Ford Motor Company**, represented by Sandra Yañez Eid; the case file, and*

***WHEREAS****:  Sandra Yañez Eid, on behalf of Ford Motor Company, filed an appeal against the ruling of March 29, 2004; this appeal will be considered by this Court within the framework set forth by Article 236 of the Code of Civil Procedures.*

***WHEREAS****: While it is true that our legal system provides for ordinary and even extraordinary appeals through which litigants may assert rights that may have been denied them, and these recourses are also established in Article 8 of the Universal Declaration of Human Rights and Article 8 subp. 2-b) of the Pact of San Jose, Costa Rica; however, these appeals must also be clearly established in the current laws.*

*Accordingly, Article 12, paragraph III of Law 1770,  clearly states that "…once the existence of an arbitration agreement with **no option to appeal**  is on record, the competent court shall declare the arbitration defense to be proven or, addressing only the non-validity or impossibility of enforcing the arbitration agreement, shall dismiss the arbitration defense…"; in this case, once arbitration defense was dismissed, Ford Motor Company filed an appeal for* amparo[1]. *This recourse was improperly admitted by the lower court, in outright ignorance of the legal provision transcribed above, which must be followed obligatorily as a matter of public policy, according to Article 90 of the Code of Civil Procedure.  The Supreme Court has recorded the following case law in this regard, which states "…when the court verifies the existence of the arbitration agreement, it must declare the arbitration defense to be proven, by means of an explicit ruling not subject to appeal, as per Article 2-III of the aforementioned Special Law [on/for] preferential enforcement, as ordered by Article 5 of the Judicial Organization Act.  Thus, for the above reasons, in the case at hand, it was not proper to file, much less grant, the recourses of appeal or cassation…" (A.S.[2] No. 78 dated April 11, 2005).*

*As a result, this Court is not competent to hear the appeal contained on pages 169-169.*

---

[1] *An appeal for relief under the Constitution to protect civil liberties.*
[2] *Supreme Court ruling*



**THEREFORE:** The Second Civil Division of the Appellate Court **INVALIDATES** the ruling granting the appeal dated May 24, 2004, supplemented by the ruling dated July 9, 2004, and the ruling dated March 29, 2004 is declared to be executed.  Notify the official.

**For the record.**

**Judge authoring the judgment: Dr. Virginia Rocabado Ayaviri.**


[illegible signature]                              [illegible signature]
[stamp]                                             [stamp]
Dr. Marta del Carmen Ponce de Rocha      Dr. Virginia Rocabado Ayaviri
President                                          Judge for Civil Division II
Appellate Court                                    Appellate Court
Cochabamba – Bolivia                               Cochabamba - Bolivia


[illegible signature]
Rafael Padillo Amestoy
Court Clerk for Civil Division II
Appellate Court
Cochabamba – Bolivia


In Cochabamba, on the 9th day of June, 2006, at 18:00 hours, I notified
 Sandra E. Yañez Eid, on behalf of Ford Motor Company, of the above
Hearing Judgment dated May 26, 2006 , with a copy of the law posted
on the Bulletin board of the Second Civil Division, in the presence of the
undersigned.  I so attest.


[illegible signature]                              Pablo Duran
[stamp]                                    [illegible] C15242133
Jhazmany J. Zenteno Valdéz
Proceedings Officer for Civil Division II
Appellate Court
Cochabamba – Bolivia


In Cochabamba, on the 9th day of June, 2006, at 18:00 hours, I notified
 Enrique Galindo Huerta, on behalf of Galindo S.A., of the above
Hearing Judgment dated May 26, 2006 , with a copy of the law posted
on the Bulletin board of the Second Civil Division, in the presence of the
undersigned.  I so attest.


[illegible signature]                              Pablo Duran
[stamp]                                    [illegible] 15242133
Jhazmany J. Zenteno Valdéz
Proceedings Officer for Civil Division II
Appellate Court
Cochabamba – Bolivia


Court [illegible] from [illegible], 20[illegible]

[illegible], 20[illegible]  I so attest.


[signature]
Moyra Vargas Rejas
AIDE
District Court 7 for Civil Matters
In the Capital
Cochabamba, Bolivia

[Along the margin: illegible text from the next page.]

*26 de mayo de 2.006*

**VISTOS:** *En apelación el auto de fecha 29 de marzo de 2.004 dictado por el Juez de Partido Séptimo en lo Civil de la Capital, dentro el proceso* ordinario *seguido por Enrique Galindo Huerta representante legal de* **Galindo S.A.** *contra* **Ford Motor Company** *representado por Sandra Yañez Eid; los antecedentes, y*

**CONSIDERANDO:** *Contra el auto de 29 de marzo de 2.004 que rechaza la excepción de arbitraje, Sandra Yañez Eid en representación de Ford Motor Company interpone recurso de apelación, recurso éste que será considerado por este Tribunal dentro el marco previsto por el artículo 236 del Código de Procedimiento Civil.*

**CONSIDERANDO:** *Si bien es cierto que nuestro ordenamiento jurídico prevé los recursos ordinarios e incluso extraordinarios por los que cualquiera de las partes en litigio puedan reclamar sus derechos que hubieran sido conculcados, recursos éstos que también se encuentran establecidos en el artículo 8 de la Declaración Universal de los Derechos Humanos y artículo 8 inc. 2-h) del Pacto de San José de Costa Rica; empero, éstos recursos también deben ser claramente establecidos en las normas en vigencia.*

*Conforme el parágrafo III del artículo 12 de la Ley 1770 claramente dice: "...constatada la existencia del convenio arbitral* **sin lugar a recurso alguno**, *la autoridad judicial competente declarará probada la excepción de arbitraje o, pronunciándose únicamente sobre la nulidad o ejecución imposible del convenio arbitral, desestimará la excepción de arbitraje..."; en el caso habiendo sido desestimada la excepción de arbitraje, la Empresa Ford Motor Company interpone recurso de apelación, recurso éste que fue concedido en forma indebida por el a-quo, en franco desconocimiento de la disposición legal transcrita que es de cumplimiento obligatorio por ser de órden público tal como preceptúa el artículo 90 del Procedimiento Civil. Al respecto el Tribunal Supremo ha sentado la siguiente jurisprudencia que señala:"...cuando la autoridad judicial constata la existencia del convenio arbitral, debe declarar probada la excepción de arbitraje, mediante resolución expresa que no admite recurso alguno, conforme al artículo 12-III de la citada Ley Especial de aplicación preferente, por mandato del artículo 5 de la Ley de Organización Judicial. Que, por las razones expuestas, en el caso presente, no correspondían interponerse y menos concederse los recursos tanto de apelación como de casación..." (A.S. N° 78 de 11 de abril de 2.005).*

*Consiguientemente, no se encuentra abierta la competencia de este Tribunal para conocer el recurso de fs. 167-169.*

**POR TANTO:** *La Sala Civil Segunda de la Corte Superior de Justicia ANULA el auto de concesión de alzada de 24 de mayo de*

2.004 complementada por auto de 9 de julio de 2.004 y se declara ejecutoriado el auto de 29 de marzo de 2.004. Notifique funcionario.

Regístrese.

Vocal relatora: Dra. Virginia Rocabado Ayaviri.

Dra. María del Carmen Ponce de Rocha
PRESIDENTA
CORTE SUPERIOR DE JUSTICIA
Cochabamba - Bolivia

Dra. Virginia Rocabado Ayaviri
VOCAL DE LA SALA CIVIL II
CORTE SUPERIOR DE JUSTICIA
Cochabamba - Bolivia

Rafael Padilla Amestuy
SECRETARIO DE CÁMARA DE LA SALA CIVIL II
Corte Superior de Justicia
Cochabamba - Bolivia

En Cochabamba, a los _09_ días del mes de _junio_ de _2006_ a horas _18:00_ notifique con el _Auto de Vista_ de 26 de mayo de 2006 que antecede a _Sandra Lee Yañez, Esdl por la Empresa Meston Company_ fijando copia de ley en el tablero de la _Sala Civil Segunda, en presencia_ de quien suscribe. Doy fe.

Pabla Duran
C.I. 5242133

Jhazmany J. Zenteno Valdéz
OFICIAL DE DILIGENCIAS SALA CIVIL II
Corte Superior de Justicia
Cochabamba - Bolivia

En Cochabamba, a los _09_ días del mes de _junio_ de _2006_ a horas _18:00_ notifique con el _Auto de Vista_ de 26 de mayo de 2006 que antecede a _Enrique Salindo Huerta por Salindo S.A._ fijando copia de ley en el tablero de la _Sala Civil Segunda, en presencia_ de quien suscribe. Doy fe.

Jhazmany J. Zenteno Valdéz
OFICIAL DE DILIGENCIAS SALA CIVIL II
Corte Superior de Justicia
Cochabamba - Bolivia

Rosa Edna Vejar
C.I. 7 9412785 eSSa

Moyra Vargas Rejas
AUXILIAR
JUZGADO DE 1ro EN LO CIVIL
DE LA CAPITAL
COCHABAMBA - BOLIVIA

Vacación Judicial del ___ de ___ de 20___ al ___ de ___ de 20___. Doy fe



715 S.W. 73RD AVENUE
MIAMI, FLORIDA 33144
TEL 305 373•7874 FAX 381•7874
TOLL FREE: 1 (888) 304•7874
E-MAIL: info@pretran.com

**Certificate of Accuracy**



State of Florida)
County of Miami-Dade)

**Vicente de la Vega**, certified by the Administrative Office of the United States Court and by the Court Interpreters Certification Board of the State of Florida, swears, deposes and states that the attached translation has been performed by a translator fully qualified to translate in the **SPANISH** and **ENGLISH** languages, as engaged to this effect by and on behalf of Precision Translating Services, Inc.

Sworn to and subscribed before me this Tuesday, October 22, 2013 by **Vicente de la Vega**, who is personally known to me.

_____
**Vicente de la Vega**

My commission expires:

ALICIA A. MUINA
MY COMMISSION # EE 056220
EXPIRES: May 18, 2015
Bonded Thru Notary Public Underwriters

_____
Notary Public State of Florida at Large

**The utmost care has been taken to ensure the accuracy of all translations.  Precision Translating Services, Inc. and its employees shall not be liable for any damages due to its own negligence or errors in typing or translation, nor shall it be liable for the negligence of third parties.**

CARFIE-WL_130916.01_4 OF 8

# EXHIBIT Tr.H

Mr. Primitivo Gutierrez
Sanchez
for FOR [sic] MOTOR COMPANY
[illegible] / 18 / 12 / 00
Time  17:25 pm

**TO THE HONORABLE JUDGES OF THE APPELLATE COURT OF THE JUDICIAL DISTRICT OF COCHABAMBA.**

FILING A CONSTITUTIONAL *AMPARO* APPEAL AGAINST THE JUDGES OF THE SECOND CIVIL DIVISION OF THE JUDICIAL DISTRICT OF COCHABAMBA and DISTRICT JUDGE 7 FOR CIVIL MATTERS and pleads.

<u>ADDITIONAL</u>:  The contents thereof.

<u>**PRIMITIVO GUTIÉRREZ SÁNCHEZ**</u>, by profession an Attorney, National Registration No. 02835 with the National Bar Association of Bolivia, ID No. 497504L.P. (permanently domiciled in the city of Santa Cruz de la Sierra, Radial Castilla No. 12-B, in Barrio Las Palmas), and occasionally domiciled at Sucre street, No. 780, Arandia Bldg., 2nd floor, suite 2-B, legal representative of: **FORD MOTOR COMPANY** (hereinafter in this appeal, simply "**FORD**"), a company established under the laws of the State of Delaware in the United States of America, by virtue of special and sufficient Power of Attorney No. 493/2003 issued before the Office of Notario[1] Tatiana Terán de Velasco in the Judicial District of La Paz (which is attached, comes before this Hon. Appellate Court and most respectfully submits, argues and pleads:

I.  **STANDING OF THE APPELLANT**

By virtue of Power of Attorney No. 493/2003 issued before the Office of Notario Dr. Tatiana Terán de Velasco, I come before the Hon. Appellate Court in the name and on behalf of FORD MOTOR COMPANY, a US corporation, and ask to be informed of the subsequent proceedings inherent to this Constitutional *Amparo*[2] appeal, in application of Art. 97(1) of Constitutional Court Act No. 1836 dated April 1, 1998.

II.  **CHALLENGED AUTHORITIES**

This Constitutional *Amparo* appeal is brought against the judges of the Second Civil Division of the Appellate Court of the Judicial District of Cochabamba: Dr. Maria del Carmen Ponce de la Rocha, Dr.

[illegible initials]

---

[1] *A Notario in Bolivia is an attorney with a specific jurisdiction and duties, including form, filing and function.*

[2] *An appeal for relief under the Constitution to protect civil liberties.*

Virginia Rocabado Ayaviri, hereinafter in this appeal referred to as the "APPELLATE JUDGES" and District Judge 7 for Civil Matters of Cochabamba, Dr. Basilio Cruz Chilo (hereinafter the LOWER-COURT JUDGE), domiciled in the Appellate Court Building of the Judicial District of Cochabamba and the different courts, located on San Martín street, at the corner of Jordán, respectively.

**III.     PROCEDURAL BACKGROUND.**

i)      On August 2, 2002, GALINDO S.A. filed an ordinary lawsuit for recovery of damages against the American company FORD MOTOR COMPANY, in the person of Mr. William Clay Ford, domiciled at The American Road, Dearborn, Michigan 48121-1899 in the United States of America.

ii)     On November 14, 2003, and by means of the brief on pages 147-149, FORD MOTOR COMPANY, through its legal representative: Dr. Sandrá Yañez Eid, filed an arbitration defense against the cause brought by GALINDO S.A.

iii)    Through a Judgment dated March 29, 2004 (pages 165 of the case file) the LOWER COURT Judge dismissed the arbitration defense.

iv)     On April 12, 2004, FORD filed an appeal against the ruling of the LOWER COURT Judge, such that with the Plaintiff's response, through a Brief dated May 24, 2004 (page 172, reverse side), the appeal was granted and the case file sent for review by the Appellate Court.

v)      On May 26, 2006, CIVIL DIVISION II of the Appellate Court of the Judicial District of Cochabamba issued the Hearing Judgment by which they invalidated the ruling that allowed the appeal on page 173, reverse side, dated May 24, 2004 and supplemented (page 165 of the case file).

These decisions gave rise to this constitutional *amparo* appeal.

**IV.     GROUNDS FOR DISMISSING THE ARBITRATION DEFENSE.**

It is also, therefore, important, Hon. Judges of the *Amparo* Appellate Court, to detail the grounds for dismissing the arbitration defense, both by the LOWER COURT Judge and by Civil Division II of the Appellate Court of the Judicial District of Cochabamba:

**a)      Grounds for the decision by the Lower Court Judge.**

2



The grounds on which the LOWER COURT Judge dismissed the arbitration defense is that: when FORD unilaterally terminated the contract, it became impossible to take the route of arbitration in execution of the agreement, as stipulated in paragraph III, Art. 12 of Law No. 1770; transcribed, it reads: "*That Ford Motor Company has unilaterally terminated the validity of the contract; now, in regard to the damages that the dealer claims were caused by this act (the unilateral rupture of the contract), it is impossible to submit this claim for arbitration in an Arbitration Court of the State of Michigan, United States of America, in accordance with the contract; this impossibility is addressed in Art. 12-III, last part, of the aforementioned Law.*"

Hon. Judges of the *Amparo* Court, the LOWER COURT Judge has ignored or cancelled the provisions of Art. 11 of Law No. 1770 which states: "*Art. 11 (Autonomy of the arbitration agreement).  Every arbitration agreement that forms part of a primary contract is considered to be an agreement that is <u>independent of the other stipulations therein</u>.*" Therefore, the unilateral termination by FORD has in no way affected the arbitration clause.  Furthermore, plaintiff GALINDO S.A. has submitted as documentary evidence, translated into Spanish, the document supplementing the 1999 Contract, entitled: "*Global Importer Dealer Sales and Services Agreement*", paragraph 14 of which reads, in its pertinent parts: "*The Company and the Dealer <u>acknowledge</u> that conflicts may arise that <u>cannot be resolved in the normal course of business. In the event of any such conflict, dispute or complaint between the parties in connection with the violation, implementation, invalidation or TERMINATION OF THIS AGREEMENT, or of any or all of its appendices, the following procedure shall be implemented, consisting of the sole recourse for the parties:…7) ARBITRATION…(sic)…*".

Therefore, Hon. Judges of the *Amparo* Court, the unilateral termination of the contract in no way affects the arbitration clause, nor does it involve an action that cannot be executed. Moreover, having expressly addressed the application of the arbitration agreement EVEN IN THE EVENT OF TERMINATING THE CONTRACT, as specified in paragraph 14 of the "*Global Importer Dealer Sales and Services Agreement*" attached to the Primary Contract of 1999.  Therefore, the LOWER COURT Judge's decision introduces the transgression or violation from Art. 11 of

[illegible initials]

Arbitration and Conciliation Act No. 1770 and ignores item 14 of the aforementioned Agreement, supported* by the autonomy of the will governed by Art . 454 of the Civil Code.

b)      **Grounds for the decision of Civil Division II (Lower Court).**

The Lower Court, in the conclusions of the Hearing Judgment dated May 26, 2006, rests its decision on paragraph III of Art. 12 of Arbitration and Conciliation Act No. 1770, under which, whether  i) the arbitration defense is declared to be proven; or ii) the arbitration defense is dismissed, NO APPEAL WHATSOEVER IS ADMISSIBLE.  Therefore, the writ admitting the appeal is invalidated and the decision of the LOWER COURT Judge of March 29, 2004 is declared to be executed. The decision is also supported by Supreme Court Ruling No. 78 of April 11, 2005. There is no doubt that the appeal recourse is not admissible under the provisions of the aforementioned paragraph II of Art. 12 of Law No. 1770.

The above implies that: both the transgression or violation of Art. 11 of Law No. 1770 itself, to which the LOWER COURT JUDGE has referred, as well as the failure to consider paragraph 14 of the *"Global Importer Dealer Sales and Services Agreement"* attached to the primary contract of 1999, based on the autonomy of the will (Art. 454 of the Civil Code), MUST THEY BE LEFT WITH NO OPTION OF FILING A CHALLENGE THROUGH ANY MEANS OR RECOURSE?  By closing any possibility of complaint or challenge, constitutional *amparo* remains open to protect the fundamental rights of persons and those who have been injured, which is the reason for this appeal.

V.      **SPECIFIC CONSTITUTIONAL GUARANTEES INJURED BY THE DECISIONS OF THE LOWER COURT AND LOWER COURT Judge BEING CHALLENGED**

The Lower Court, by invalidating the ruling that admitted the appeal and issuing the judgment on pages *[sic]* 165 of March 29, 2004 (issued by the LOWER COURT JUDGE), has cut off all possibility of filing a complaint through procedural jurisdictional channels. The LOWER COURT Judge, by dismissing the arbitration defense in error or in violation of Art. 11 of Law 1770, without any option whatsoever for appeal, HAS LEFT FORD WITHOUT ANY PROCEDURAL

JURISDICCIONAL DEFENSE WHATSOEVER.

Therefore, there is no other option, Hon. Judges of the *Amparo* Court, than for FORD turn to the recourse of constitution *amparo* to protect is fundamental rights which have been injured, in order that they might be re-established.

The injured constitutional rights are listed below:

1.     **Inviolability of the right of each person to legal defense.**

The right of individuals or corporations to a legal defense is a constitutional guarantee with which those dealing in justice are obligated to comply; however, both the Lower Court, by invalidating the judgment admitting the appeal and declaring the decision of the LOWER COURT Judge of March 29, 2004 to be executed, have cut off or curtailed the aforementioned right to defense, either through a claim or through judicial challenge.

The LOWER COURT Judge, by dismissing the arbitration defense filed by FORD based on the autonomy of the will, Art. 11 of Law No. 1770, and paragraph 14 of the *"Global Importer Dealer Services and Sales Agreement"*, has violated FORD's right to defense, due to the express prohibition of an appeal against the decision of the first instance court.

Furthermore, Hon. Judges of the *Amparo* Court, the *impossibility of executing the arbitration agreement*, as stated in the last part of Paragraph III of Art. 12 of Law No. 1770 makes exclusive and limited reference to the arbitration clause or agreement, and in NO WAY TO THE EXECUTION OF THE PRIMARY CONTRACT, as the LOWER COURT Judge has, completely erroneously and in violation, interpreted it. It should be stated that if the content of the arbitration clause were to express conditions that were impossible to meet, for example: that the court be comprised of 100 arbitrators, or that the arbitrators be appointed by a nonexistent entity, etc., that would mean something impossible to meet or execute.

2      **Autonomy of the will of persons.**

Paragraph II of the Constitution guarantees all persons legal personality and capacity in keeping with the law.  Art. 454 of the Civil Code establishes the contractual freedom of persons to

[illegible initials]

CERTIFIED
TRANSLATION

create, modify or extinguish contractual rights and obligations (civil or commercial) with the limitation that the specific laws not be altered.

As stated by Morales Guillén (Civil Code, annotated, page 319), the principle of Autonomy of the Will, regulated by the aforementioned Article 454, is summarized in three postulates: *"1) Individuals are free to contract and discuss conditions, on equal terms: to determine the content of purpose; combine types of contracts addressed by law or invent completely new ones; 2) They may choose the laws most convenient to their legal relationship or rule out the application of any supplemental law; 3) ignoring ceremonial ways and formal ways are the exception [sic]; 4) the effects of a contract are those that the parties have chosen to build into it, and the rules of interpretation do not grant the judge the power to impose his or her criteria, but rather the intent of the parties."*

Art. 11 of Law No. 1770 acknowledges the independence of the arbitration clause with regard to the primary contract.  The arbitration agreement involves the parties waiving judicial process (paragraph 1, Art. 12 of Law 1770).  Waiving arbitration is also only, necessarily, admissible by the will of the parties (Art. 13 of Law 1770).

The LOWER COURT Judge, by wrongly dismissing the arbitration defense, has infringed on the fundamental right that the corporations, FORD and GANLIDO S.A. *[sic]*, have to submit their conflicts, of whatever kind and even after the contractual relationship has ended, to arbitration and by virtue of the autonomy of the will, as guaranteed in paragraph 1 of Art. 6 of the C.P.E., reiterated and ratified by Art. 454 of the Civil Code and Arts 11, 12-1 and 13 of Law No. 1770.  A judge may not substitute the will of the parties who establish a manner of resolving their conflicts, even in the case of nullity proceedings.

**3      Absence of legal certainty in the LOWER COURT Judge's decision.**

Art. 35 of the Constitution guarantees that the fundamental principles and guarantees of individuals such as the referenced "legal certainty", are also incorporated amply and implicitly, as fundamental rights of persons.

6



The principle of *"legal certainty"*, according to Manuel Ossorio, is an "essential condition of life and the development of nations and the individuals comprising them." This guarantee *"represents the guarantee that the law will be applied objectively, such that individuals know at all times what their rights and obligations are",* without the whims or blunders of authorities causing them harm. The principle of legal certainty is in effect in every "Bill of Rights".

The parties have determined that conflicts  -even if the contract has been terminated- shall be resolved by an Arbitration Court; by dismissing the arbitration defense, the LOWER COURT Judge has declared itself to be competing with the autonomy of the will of parties who have decided to waive judicial process (as set forth in paragraph 1, Art. 12, of Law 1770) to resolve the conflict arising between FORD MOTOR COMPANY and GALINDO S.A., and has therefore committed a violation of the constitutional guarantee in Art. 31 of the Constitution, which states that the actions of anyone usurping jurisdiction and competence that do not originate with law, are void.  The action causes harm to the inherent guarantee of legal certainty, which public servants are obligated to safeguard.

Thus, the LOWER COURT Judge has violated the constitutional guarantee of legal certainty by dismissing the arbitration defense through an interpretation of paragraph III, the last part of Art. 12 of Law 1770, which is completely in error and violates Arts. 11, 12-I and 13 of that same Law No, 1770. Transgression of the legal standards mentioned causes *legal uncertainty* for the corporation, FORD; even more so, given that it signed the primary contract and the appendices outside of Bolivian territory and subject to the laws of the State of Michigan in the United States of America.  Therefore, the international arbitration clause is completely alien to the substantive laws of our country, and based on the parties' will or autonomy. Consequently, the *legal uncertainty* caused by the decision of the LOWER COURT Judge has even greater significance when dealing with countries outside of Bolivian territory.

**VI.     PLEA.**

Based on the facts related and legal grounds which demonstrate the violation of constitutional rights

[illegible initials]

7

and guarantees incurred both by the JUDGES of Civil Division II of the Appellate Court of the Judicial District of Cochabamba: **Dr. Maria del Carmen Ponce de la Rocha and Dr. Virginia Rocabado Ayaviri,** and **District Judge No, 7 for Civil Matters, Dr. Basilio Cruz Chilo**, on behalf of and in legal representation of FORD MOTOR COMPANY (FORD), I pray that the Honorable *Amparo* Court, applying the articles referenced and mentioned in this brief, declare the constitutional *amparo* appeal to be **Admissible and Proper**, and therefore order that: i) the statement of execution in the judgment of March 29, 2004, contained in the last part of the Hearing Judgment on pages 194 dated May 26, 2006, be rendered null and void or declared inapplicable; and ii)  determine that the LOWER COURT Judge, in compliance with paragraph III of Art. 12 on the Arbitration and Conciliation Law No. 1770 **declare the arbitration defense** filed by FORD MOTOR COMPANY to be **proven**, with the case file sent for review by the Arbitration Court agreed upon by the parties, with costs awarded.

**ADDITION 1.**  Service is ordered of the honorable Judges of Civil Division II of the Appellate Court of the Judicial District of Cochabamba and District Judge 7 for Civil Matters, whose details are listed at the beginning of this brief.

**ADDITION 2.**   SC[3] 1351/2003-R, 814/2006-R and AC-282/2006-RCA establish as a requirement that Interested Third Parties be served notice, in the event that the *amparo* arises from a judicial or administrative process.  Therefore, in support of the laws mentioned, we ask the *Amparo* Court to serve the interested parties with notice in person or by Document: GALINDO S.A. in the person of Mr. Enrique Galindo Huerta, C.I. No. 972871, domiciled at Libertador Bolivar street No. 1416 in this city.

**ADDITION 3.**  Documentary evidence is attached, consisting of the following documents:

-      Brief with the Complaint filed by GALINDO S.A.

-      Brief with the arbitration defense by FORD MOTOR COMPANY.

-      Judgment handed down by the Lower Court Judge on March 29, 2004.

-      Hearing Judgment on page 194, dated May 26, 2006.

-      Special and sufficient Power of Attorney No. 493/2003.

**ADDITION 4.**  The attorneys providing service announce the existence of professional retainers with the

8

---

[3] *Supreme Court Ruling*

international entity that they represent.

**ADDITION 5.** Domicile for procedures: The Office of the Division Clerk.

Justice. Cochabamba, December 8, 2006

[illegible signature]                    [illegible signature]
Dr. Primitivo Gutierrez S.              Heidy Paula Jimenez H.
Attorney                                      Attorney
NIT: 1005[illegible]22, M.C.A. 4.522        M.C.A. 4836 - C - 15568



*PRIMITIVO GUTIERREZ*
*SANCHEZ*
*por FORD MOTOR COMPANY*
*Ubal, 8/12/06*
*Hrs: 17:25 pm*

SEÑORES VOCALES DE LA CORTE SUPERIOR DE DISTRITO JUDICIAL DE
COCHABAMBA.

> INTERPONE AMPARO CONSTITUCIONAL
> CONTRA LOS VOCALES DE LA SALA CIVIL
> SEGUNDA DEL DISTRITO JUDICIAL DE
> COCHABAMBA y el señor JUEZ 7° DE
> PARTIDO EN LO CIVIL y pide.
> OTROSÍES. Su contenido.

PRIMITIVO GUTIÉRREZ SÁNCHEZ, de profesión Abogado, Matrícula Nacional No. 02835 del
Colegio Nacional de Abogados de Bolivia, C. I. No. 497504L.P. (con domicilio permanente en la ciudad
de Santa Cruz de la Sierra, Radial Castilla No. 12-B, del Barrio Las Palmas) y domicilio eventual en la
calle Sucre No. 780 Edf. Arandia, piso 2° oficina 2-B, apoderado de la empresa: **FORD MOTOR
COMPANY** (en lo posterior del presente recurso simplemente: **"FORD"**) una corporación constituida
bajo las leyes del Estado de Delaware de los Estados Unidos de Norteamérica, en virtud del poder
especial y suficiente No. 493/2003 expedido ante la Notaría de Tatiana Terán de Velasco del Distrito
Judicial de La Paz (que se adjunta, ante las consideraciones de R. Tribunal Superior, con todo respeto se
presenta, expone y pide:

I.      **PERSONERÍA DE LA PARTE RECURRENTE.**

En virtud al Poder No.493/2003 de fecha 11 de noviembre de 2003, expedido por la señora Notario de
Fe Pública No. 061, Dra. Tatiana Terán de Velasco, me apersono ante el R. Tribunal Superior  en
nombre y representación legal de la corporación **FORD MOTOR COMPANY** de USA y pido que se
me hagan conocer las diligencias posteriores inherentes al presente recurso de Amparo Constitucional, en
aplicación del inciso I del Art. 97° de la Ley del Tribunal Constitucional No. 1836 de fecha 1 de abril de
1998.

II.     **AUTORIDADES RECURRIDAS.**

El presente Amparo Constitucional se dirige contra los señores vocales de la Sala Civil Segunda de la
**Corte Superior de Distrito Judicial de Cochabamba: Dras. María del Carmen Ponce de la Rocha,
Dra. Virginia Rocabado Ayaviri,** en lo sucesivo del presente recurso serán nombrados como las

1

www.scantopdf.eu

señoras "**MAGISTRADOS**" y el señor **Juez de Partido 7°** en lo Civil de Cochabamba, Dr. Basilio Cruz Chilo (en lo posterior el JUEZ AD-QUO), domiciliados en el Edificio de la Corte Superior del Distrito Judicial de Cochabamba y los diferentes juzgados, ubicados sobre la calle San Martín esquina Jordán, respectivamente.

III.    ANTECEDENTES DE NATURALEZA PROCESAL.

i)      En fecha **2 de agosto de 2002**, la sociedad GALINDO S.A., ha interpuesto una demanda ordinaria sobre resarcimiento de daños y perjuicios contra la empresa **norteamericana FORD MOTOR COMPANY**, en la persona del señor William Clay Ford, con domicilio en The American Road , Dearborn Michigan 48121-1899 de los Estados Unidos de Norteamérica.

ii)     En fecha 14 de noviembre de 2003  y a través del memorial de fojas 147-149 la corporación **FORD MOTOR COMPANY** mediante la apoderada: Dra. Sandrá Yañez Eid, ha opuesto **excepción de arbitraje** contra la pretensión de la sociedad GALINDO S.A.

iii)    Mediante Resolución de fecha 29 de marzo de 2004 (fs. 165 de obrados) el Juez **AD-QUO**, ha **desestimado la excepción de arbitraje**.

iv)     En fecha  12 de abril de 2004 la corporación **FORD** ha deducido recurso de apelación contra la resolución del Juez **AD-QUO**, de manera que con la respuesta de la parte demandante, a través del Auto de fecha 24 de mayo de 2004 (fs.172 vta), se  ha concedido el recurso de alzada y remitido obrados a conocimiento del Tribunal Superior.

v)      En fecha 26 de mayo de 2006, la **SALA CIVIL II de la Corte Superior del Distrito Judicial de Cochabamba**, ha emitido el Auto de Vista por el que **anula** el auto de concesión del recurso de apelación de fs. 172 vta de fecha 24 de mayo de 2004 y complementado en fecha 9 de julio de 2004 y se declara **ejecutoriado** el Auto de fecha 29 de marzo de 2004 (fs. 165 de obrados).

Decisiones que motivan el presente recurso de amparo constitucional.

IV.    FUNDAMENTOS DE LA DESESTIMACIÓN DE LA EXCEPCIÓN DE ARBITRAJE.

Resulta también de suyo importante, señores Magistrados del Tribunal de Amparo, puntualizar los fundamentos de la desestimación de la **excepción de arbitraje** tanto del Juez AD-QUO como de la Sala Civil II de la Corte Superior del Distrito Judicial de Cochabamba:

a)      Fundamentos de la decisión del Juez Ad-quo.

2

www.scantopdf.eu

El fundamento del señor Juez AD- QUO para desestimar la excepción de arbitraje es que: al haber terminado unilateralmente el contrato la corporación FORD, resulta imposible llevar el reclamo a la vía arbitral en ejecución del convenio, como esta previsto en el numeral III del Art. 12° de la Ley No. 1770; de forma textual, indica: *"Que la compañía Ford Motor Company, ha terminado con la vigencia del contrato por decisión unilateral; ahora, sobre los daños reclamados por el concesionario que dice ocasionados por ese hecho (de la ruptura unilateral del contrato) resulta imposible llevar ese reclamo a la vía arbitral en ejecución del convenio ante un Tribunal Arbitral del Estado de Michigan Estados de Norteamérica, situación imposible que está prevista su observancia en el Art. 12- III. última parte de la ley citada".*

El Juez AD-QUO, señores Magistrados del Tribunal de Amparo, ha ignorado o enervado la previsión del Art. 11° de la Ley No. 1770, que consagra: *"Art. 11° (Autonomía del convenio arbitral). Todo convenio arbitral que forme parte de un contrato principal se considera como un acuerdo independiente de las demas estipulaciones del mismo".* Por lo que la terminación unilateral de la corporación FORD, no ha afectado en modo alguno a la cláusula arbitral. Es más, la demandante GALINDO S.A. ha presentado en calidad de prueba literal y traducido al español el documento complementario al Contrato de 1999 denominado: *"Convenio de Ventas y Servicios del Concesionario Importador Global"* en cuyo numeral 14, la parte pertinente, dispone: *"La Compañía y el Concesionario reconocen que podrán suceder controversias que no podrán ser resueltas en el curso normal de los negocios. En el caso de que surja tal controversia, disputa o reclamo entre las partes en conexión con la violación, implementación, invalidez o TERMINACIÓN DE ESTE CONTRATO así como con cualquiera o todos sus anexos, se pondrá en marcha el siguiente procedimiento que constituirá un recurso exclusivo para las partes: ...7) El ARBITRAJE...(sic)...".*

De manera que, señores Magistrados del Tribunal de Amparo, la terminación unilateral del contrato no afecta en modo alguno a la cláusula arbitral y tampoco implica un acto imposible de ejecución; más aún, al haberse previsto expresamente la aplicación del convenio arbitral AÚN EN EL CASO de TERMINACIÓN del CONTRATO, como determina el numeral 14 del *"Convenio de Ventas y Servicios del Concesionario Importador Global"* anexo al Contrato

3

Principal de 1999. Por lo que la decisión del **Juez AD-QUO** importa la trasgresión o violación del Art. 11° de la Ley de Arbitraje y Conciliación No. 1770 y el desconocimiento del numeral 14 del Convenio mencionado, amparado en la autonomía de la voluntad así normada por el Art. 454° del Código Civil.

b) **Fundamento de la decisión de la Sala Civil II (Tribunal Ad-quem).**

El Tribunal Ad-quem en la parte considerativa del Auto de Vista de fecha 26 de mayo de 2006 apoya su decisión en el párrafo III del Art. 12° de la Ley de Arbitraje y Conciliación No. 1770, por el que ya sea que: i) declare probada la excepción de arbitraje, o ii) desestime la excepción de arbitraje, es SIN LUGAR A RECURSO ALGUNO. Por ello, anula el auto de concesión del recurso de apelación y declara **ejecutoriada** la resolución del Juez AD-QUO de 29 de marzo de 2004. Respalda la decisión también en el Auto Supremo No. 78 de 11 de abril de 2005.

Indudablemente, no corresponde el recurso de apelación por disposición del citado párrafo II del Art. 12° de la Ley No. 1770.

Lo anterior implica que: tanto la trasgresión o violación del Art. 11° de la propia Ley No. 1770 en que ha incurrido el Juez AD-QUO así como el desconocimiento del numeral 14° del *"Convenio de Ventas y Servicios del Concesionario Importador Global"* anexo al contrato principal de 1999, fundados en la autonomía de la voluntad (Art. 454° del Código Civil) DEBEN QUEDAR SIN LA OPCIÓN DE IMPUGNACIÓN POR NINGÚN MEDIO O RECURSO?. Al haberse cerrado o toda posibilidad de reclamación o impugnación, queda abierto el amparo constitucional en resguardo de los derechos fundamentales de las personas y que han sido lesionados, motivo del presente recurso.

V. **GARANTIAS CONSTITUCIONES ESPECIFICAS LESIONADAS CON LAS DECISIONES DEL TRIBUNAL AD-QUEM y AD-QUO, RECURRIDOS.**

El Tribunal Ad-quem al anular el auto de concesión de alzada y declarar ejecutoriada la resolución de fojas. 165 de fecha 29 de marzo de 2004 (emitida por el Juez AD-QUO) ha cortado toda posibilidad de reclamación por la vía jurisdiccional procedimental o procesal.

El Juez AD-QUO al desestimar la excepción de arbitraje de manera equívoca o vulneratoria del Art. 11° de la Ley 1770, sin la posibilidad de recurso alguno, HA DEJADO SIN LUGAR A

DEFENSA de la empresa **FORD** de NINGUNA NATURALEZA PROCEDIMENTAL O PROCESAL JURISDICCIONAL.

Por lo tanto, no queda otra opción, señores Magistrados del Tribunal de Amparo, que la empresa **FORD** recurra al recurso de amparo constitucional en resguardo de sus derechos fundamentales que han sido lesionados, de modo que se restablezcan los mismos.

A continuación se exponen los derechos constitucionales lesionados:

1°    **Inviolabilidad del derecho de defensa en juicio de toda persona.**

El derecho de las persona naturales o jurídicas a la defensa en juicio constituye una garantía constitucional que los operadores de justicia están impelidos a su cumplimiento; sin embargo, tanto el Tribunal Ad-quem al anular el auto de concesión de apelación y declarar ejecutoriada la decisión del Juez Ad-quo de 29 de marzo de 2004, ha cercenado o cortado el mencionado derecho de defensa ya sea por la vía de reclamo o impugnación judicial.

El Juez AD-QUO al desestimar la excepción de arbitraje opuesta por la corporación FORD amparada en la autonomía de la voluntad, el Art. 11° de la Ley No. 1770 y el numeral 14° del *"Convenio de Ventas y Servicios del Concesionario Importador Global"*, ha concluido el derecho de defensa de la corporación **FORD**, debido a la prohibición expresa del recurso de apelación contra la decisión de la autoridad judicial de primera instancia.

Más aún, señores Magistrados del Tribunal de Amparo, la *ejecución imposible del convenio arbitral,* así previsto en la parte última del párrafo III del Art. 12° de la Ley No. 1770, hace referencia exclusiva y limitada a la cláusula o convenio arbitral y de NINGUNA MANERA A LA EJECUCION DEL CONTRATO PRINCIPAL, como en forma totalmente errada y violatoria ha interpretado el Juez AD-QUO. Vale decir, si la cláusula arbitral en su contenido expresará condicionamientos imposibles de cumplir, verbigracia: que el tribunal este compuesto por 100 árbitros o que sean nombrados los árbitros por una entidad inexistente, etc., importa una imposibilidad de cumplimiento o ejecución.

2°    **La autonomía de la voluntad de las personas.**

El párrafo II del Art. 6° de la Constitución Política del Estado garantiza a toda persona la personalidad y capacidad jurídica con **arreglo a las leyes.** El art. 454° del Código Civil

5

consagra la libertad contractual de las personas para **crear, modificar o extinguir derechos y obligaciones contractuales** (civiles o comerciales) con la limitación de que evite alterar las leyes expresas.

Conforme señala Morales Guillén (Código Civil, concordado y anotado, pág 319), el principio de la Autonomía de la Voluntad, regulado por el artículo 454 citado, se resume en tres postulados: *"1). Los individuos son libres de contratar y discutir , en pie de igualdad, las condiciones; determinar el contenido de su objeto; combinar los tipos de contratos previstos por la ley o inventar otros completamente nuevos; 2) Pueden elegir la legislación más conveniente a su relación jurídica o descartar la aplicación de toda ley de carácter supletorio; 3) se desconocer las formas rituales y las formas solemnes son excepcionales; 4) los efectos de los contratos, son los que las partes han querido darle y las reglas de interpretación no asignan al juzgador la facultad de hacer prevalecer su criterio, sino la intención de las partes".*

El Art. 11° de la Ley No. 1770 reconoce la independencia de la cláusula arbitral con referencia al contrato principal. El convenio arbitral implica la renuncia de las partes al proceso judicial (párrafo I del Art. 12° de la Ley 1770). La renuncia al arbitraje solo procede, también por voluntad de las partes necesariamente (art. 13° de la Ley 1770).

El Juez AD-QUO, desestimar la excepción de arbitraje de forma errada, ha conculcado el derecho fundamental de la personas jurídicas: **FORD** y GANLIDO S.A., a someter sus controversias de la naturaleza que fueren y aún después de terminada la relación contractual, por la vía arbitral y en virtud de la autonomía de la voluntad, como garantiza el párrafo I del Art.6° de la C.P.E., y queda reiterada o ratificada por el Art. 454° del Código Civil y los Arts. 11°, 12°-I y 13° de la Ley No. 1770. El operador de justicia no puede suplir la voluntad de las partes que determinen una forma de solucionar sus controversias, aún se traten de procesos de nulidad.

3°      **La ausencia de seguridad jurídica en la decisión del Juez AD-QUO.**

El Art. 35° de la Constitución Política del Estado garantiza que aquellos principios y garantías fundamentales de las personas, como la referida a la *"seguridad jurídica"* se hallan también incorporadas por amplitud e implícitamente como derechos fundamentales de las personas.

6

El principio de *"seguridad jurídica"*, a decir Manuel Ossorio, es una "condición esencial para la vida y el desenvolvimiento de las naciones y de los individuos que la integran". Esta garantía *"representa la garantía de la aplicación objetiva de la ley, de tal modo que los individuos saben en cada momento cuáles son sus derechos y sus obligaciones"*, sin que el capricho o la torpeza de las autoridades puedan causarles perjuicio. El principio de seguridad jurídica, se encuentra vigente en todo "Estado de Derecho".

Las partes han resuelto que las controversias -aún en el caso de terminación del contrato- sean resueltas por un Tribunal Arbitral; al desestimar la excepción de arbitraje, el Juez AD-QUO se ha declarado con competencia en contra de la autonomía de la voluntad de las partes que han decidido renunciar al proceso judicial (como determina el párrafo I del Art. 12° de la Ley No. 1770) para resolver la controversia suscitada entre FORD MOTOR COMPANY y la sociedad GALINDO S.A., de manera que ha incurrido en la violación de la garantía constitucional del Art. 31° de la Constitución Política del Estado que consagra que son nulos los actos de quienes usurpen jurisdicción y competencia que no emane de la ley. Acto que importa una agravante a la garantía inherente a la **seguridad jurídica** que se halla obligado a resguardar el servidor público.

De manera que, el Juez AD-QUO ha conculcado la garantía constitucional de la **seguridad jurídica** al desestimar la excepción de arbitraje mediante una apreciación del párrafo III parte final del Art. 12° de la Ley 1770 en forma totalmente errónea y violatoria de los Arts. 11°, 12°-I y 13° de la propia Ley No. 1770. La trasgresión de las normas legales indicadas, importa una *inseguridad jurídica* para la persona jurídica: **FORD**, más aún, al haberse suscrito el contrato principal y los anexos fuera del territorio boliviano y sujeta a las leyes del Estado de Michigan de los Estados Unidos de Norteamérica. Por lo que la cláusula arbitraje internacional, resulta totalmente ajena a las normas sustantivas de nuestro país, y fundada en la voluntad o autonomía de las partes. De manera que la *inseguridad jurídica* provocada por la decisión del Juez AD-QUO tiene aún mayor significación en el concierto de los países fuera del territorio boliviano.

VI.    **PETICIÓN.**

En mérito de la exposición relatada y los fundamentos jurídicos que denotan la violación de los

7

derechos y garantías constitucionales incurridas tanto por parte de los señores VOCALES de la Sala Civil II de la Corte Superior del Distrito Judicial de Cochabamba: **Dras. Maria del Carmen Ponce de la Rocha, Dra. Virginia Rocabado Ayaviri** y el señor **Juez de Partido 7° en lo Civil: Dr. Basilio Cruz Chilo,** en nombre y representación legal de la persona jurídica **FORD MOTOR COMPANY (FORD)** solicito al Respetable Tribunal de Amparo, en aplicación de los artículo citados y mencionados en este memorial, se declare **Procedente y haber lugar al amparo constitucional** y como consecuencia de ello, se disponga i) se deje sin efecto legal o declare inaplicable la declaración de ejecutoria del auto de 29 de marzo de 2004 contenida en la parte final del Auto de Vista de fs. 194 de fecha 26 de mayo de 2006; y, ii) se determine que el Juez AD-QUO de cumplimiento al párrafo III del Art. 12° de la Ley de Arbitraje y Conciliación No. 1770 declarando **probada la excepción de arbitraje** opuesta por la corporación FORD MOTOR COMPANY con la remisión de obrados a conocimiento del Tribunal Arbitral convenido por las partes, con la imposición de costas.

**OTROSÍ 1°** Se ordene la citación a los distinguidos señores Vocales de la Sala Civil II de la Corte Superior del Distrito Judicial de Cochabamba así como al señor Juez de Partido 7° en lo Civil, cuyos datos se detallan en el inicio de éste memorial.

**OTROSÍ 2°** Las SC 1351/2003-R, 814/2006-R y el AC 282/2006-RCA establecen como requisito la citación a Terceros Interesados, para el caso de que el amparo, emerja de un proceso judicial o administrativo. Por tanto, en amparo de las normas mencionadas, solicitamos al Tribunal de Amparo disponga la citación personal o por Cédula de los terceros interesados: la sociedad GALINDO S.A., en la persona del señor Enrique Galindo Huerta, C.I.No. 972871, con domicilio en la calle Libertador Bolívar No. 1416 de esta ciudad.

**OTROSÍ 3°** Se adjunta la prueba documental, consistente en los siguientes documentos:

- Memorial de Demanda presentado por GALINDO S.A.
- Memorial de excepción de arbitraje de FORD MOTOR COMPANY.
- Resolución del Juez Ad-quo de 29 de marzo de 2004.
- Auto de Vista de fs. 194 de fecha 26 de mayo de 2006.
- Poder Especial y suficiente No.493/2003.

**OTROSÍ 4°** Los abogados patrocinantes anuncian la existencia de iguala profesional con el organismo

8

internacional representado.

**OTROSÍ 5°** Domicilio procesal: la Secretaría de Cámara.

Justicia, Cochabamba, 8 de diciembre de 2006

9



715 S.W. 73RD AVENUE
MIAMI, FLORIDA 33144
**TEL** 305 373•7874 **FAX** 381•7874
**TOLL FREE:** 1 (888) 304•7874
**E-MAIL:** info@pretran.com

**Certificate of Accuracy**



State of Florida)
County of Miami-Dade)

**Vicente de la Vega**, certified by the Administrative Office of the United States Court and by the Court Interpreters Certification Board of the State of Florida, swears, deposes and states that the attached translation has been performed by a translator fully qualified to translate in the **SPANISH** and **ENGLISH** languages, as engaged to this effect by and on behalf of Precision Translating Services, Inc.

Sworn to and subscribed before me this Tuesday, October 22, 2013 by **Vicente de la Vega**, who is personally known to me.

_____
        **Vicente de la Vega**

My commission expires:

ALICIA A. MUINA
MY COMMISSION # EE 056220
EXPIRES: May 18, 2015
Bonded Thru Notary Public Underwriters

_____
Notary Public State of Florida at Large

**The utmost care has been taken to ensure the accuracy of all translations. Precision Translating Services, Inc. and its employees shall not be liable for any damages due to its own negligence or errors in typing or translation, nor shall it be liable for the negligence of third parties.**

EXHIBIT Tr.I

Mr. Primitivo Gutierrez Sanchez
[illegible] / 06 / 2007
1                     time: 11:05 AM

[national seal]

## JUDICIARY BRANCH OF THE NATION
## SUPERIOR COURT OF JUSTICE, COCHABAMBA
## THIRD CRIMINAL COURT

Appeal: Constitutional *Amparo*[1]
Petitioner:  FORD MOTOR COMPANY
Respondent: Second Civil Division and District Judge 7 for Civil Matters

**Cochabamba, February 2, 2007**

**HEARING:** The Constitutional *Amparo* Appeal filed on December 9, 2006 by Primitivo Gutierrez Sanchez, on behalf of FORD MOTOR COMPANY against Dr. Basilio Cruz Chilo, Dr. Maria del Carmen Ponce de Rocha and Dr. Virginia Rocabado Ayaviri; the first, District Judge 7 for Civil Matters in this Capital City; and the latter two Judges of the Second Civil Division, the case history, the arguments made in hearings; and,

**GROUNDS II:** As provided by Art. 19 of the Constitution, in accordance with Art. 94 of Law No, 1836: "An appeal for Constitutional *Amparo* shall be admitted against any improper judgment, act or omission committed by an authority or official, provided no other means or recourse was available to provide immediate protection of rights and guarantees, as well as against any improper act or omission by a private individual or group of individuals who restrict, suppress or threaten to restrict or suppress, the rights and guarantees recognized by the Constitution and the Law."

**WHEREAS**: Having verified the requirements that must be met by all constitutional *amparo* appeals, as stipulated in Art. 97 of the Constitutional Court Act, the *amparo* petitioned by Primitivo Gutierrez Sanchez on behalf of FORD MOTOR COMPANY does not sufficiently prove the appellant's standing, as shown in the following analysis:

**I.** All persons covered by Art. 5 of the Commerce Code are required to prove to the court that they are registered with the Commerce Registry as stipulated in Art. 33 of that Code, which states: "The judges before whom merchants appear must require that the merchants first provide evidence of their registration with the Commerce Registry". In addition and likewise, Art. 165 of the Commerce Code states that: "The appointment and removal of administrators and representatives must be recorded with the Commerce Registry, with the powers granted being specifically stated in the articles of incorporation or the Power of Attorney granted before a *Notario de Fe Pública*[2].  The lack of registration is not prejudicial to third parties." which means that the appellant company must provide evidence not only of the company's registration with the Commerce Registry, but of the appointment of the legal representative pursuing the constitutional *amparo* appeal, recorded with said Registry, in application of Arts. 27 and 29 of the aforementioned body of laws.

---

[1] An appeal for relief under the Constitution to protect civil liberties.
[2] A Notario in Bolivia is an attorney with a specific jurisdiction and duties, including form, filing and function.

2

While it is true that the attached power of attorney instrument, included on pages 17 through 25, meet the requirement for validity set forth in Art. 1309 of the Civil Code, because it is a photocopy of the original, authenticated by the officer who is the legal depository of that document, Dr. Tatiana Terán de Velasco, *Notario Público* No. 61 for the city of La Paz; however, it does not evidence the registration of FORD MOTOR COMPANY with the Commerce Registry or of the appointment of Ford's legal representative, given that, although the authenticated photocopy contains the seal of the Commerce Registry office in the margin, it lacks legal value because it is not authenticated by the officer in charge of the Commerce Registry.

While it is true that FORD MOTOR COMPANY is headquartered in the United States of America, this fact does not exempt its representative from meeting the aforementioned legal requirements in order to have sufficient standing in court proceedings.  In any case, the appellant provided no evidence that the public instrument that was –he states- issued abroad, meets the requirements established there, as stipulated by Art. 1294 of the Civil Code.

According to the above, in light of the failure to adhere to the legal formalities, the certified copy of power of attorney No. 493/2003, dated November 11, 2003, issued in the presence of *Notaria de Fe Pública* No. 61 for the city of La Paz, Dr. Tatiana Terán de Velasco, is not sufficient to evidence the legal standing of Primitivo Gutierrez Sanchez on behalf of FORD MOTOR COMPANY.

Furthermore, and always with regard to the legal standing of the appellant, the certified copy of the power of attorney that was attached granted him powers to act: "...in defense of the company in the ordinary civil proceedings brought by AUTOMOTORES GALINDO S.A., currently filed with District Court Seven for Civil Matters in the District of Cochabamba, Republic of Bolivia..."; but does not specifically authorize him to act in this constitutional *amparo* appeal and to pursue action against District Judge Seven for Civil matters or the Judges of the Second Civil Division of the Court of Justice of Cochabamba.

In that regard, Art. 809 of the Civil Code states that: "A power of attorney is either special, for one or more specified activities; or general, for all of the principle's activities."  A special power of attorney is given to someone for specific actions and only those actions. In order to act in court proceedings, a special power of attorney is required, as stated in Art. 835 of the Civil Code, paragraph I: "General powers of attorney do not grant authority for judicial actions which, because of their nature, require special powers or attorney or the personal appearance of the interested party."

In this case, the power of attorney given by FORD MOTOR COMPANY was granted to act in the ordinary proceedings brought by Galindo S.A., but not to act in this constitutional *amparo* appeal filed against the judicial authorities of District Court Seven for Civil Matters of the Capital and the Second Civil Division: i.e., this mandate is not a special mandate that allows the appellant to act in this matter, because it fails to specifically state so. This means that the certified copy submitted by the appellant is not sufficient to prove his standing.

II.  The certified copy of the power of attorney used by the appellant to act in this matter also fails to meet the provisions of Art. 402 of the Code of Civil Procedure, as it has not been submitted in Spanish, in its entirety; it still contains portions in a foreign language that have not been translated. This

3

situation invalidates the probative value of this instrument for proceedings and reinforces the conclusion that the appellant has not properly proven his standing.

III.  The Constitutional Court has established that the relief requested must be explicit, clear and precise, as required by Art. 97, paragraph VI of the Constitutional Court Act, which states that the petition must specify the *amparo* relief being requested and be linked to the purpose of the appeal or cause of action, in order that the Judgment, issued by the court that hears and defines the appeal, might be congruent with the relief requested (the appeal petition).   This understanding is reflected in Constitutional Judgment [SC] No. 0365/2005-R dated April 13, 2005, which states: "(...) As a general principal, the constitutional rights judge is required to grant only what has been requested; this demonstrates the enormous importance of the petition made in the case, as the Judge is bound to it; i.e., the Judge must grant or deny the petition made. Given the nature of the protected rights, a Constitutional Judge may make an exception and grant relief that goes beyond the petition only for the purpose of effectiveness or immediacy in protecting the violated right or guarantee , when the Judge realizes that an error was made at the time of formulating the prayer for relief. This action must be considered on a case-by-case basis, given that it is an exception (...)".

In this case, the appellant does not state specifically the relief that he seeks, because in his prayer for relief he does not state that the judgment issued by District Judge Seven for Civil Matters on March 29, 2004 should be invalidated; however, he asks that the aforementioned Judge admit as proven the defense of arbitration filed on behalf of Ford Motor Company. This means that if the first judgment is in effect, it would be necessary to agree to another, parallel judgment being issued to the contrary; this situation is incongruous and contrary to any body of law.  Therefore, the appellant is considered to have failed to meet the requirement of Art. 97, paragraph VI of the Constitutional Court Act, the scope of which is set forth in the interpretation of case law mentioned in the preceding paragraph.

IV.- Regarding the inadmissibility of the *amparo* appeal for reasons of subsidiary, the Constitutional Court, through Ruling No. 808/2006 dated August 17, 2005, states "That the subsidiary nature of the *amparo* appeal has been addressed considerably in case law from this Court; we also have SSCC[3] 1089/2003-R, 0052/2004-R, 0106/2004-R, 0374/2002-R, among others, which state that this extraordinary action may not be filed until after ordinary or administrative recourses have been pursued and, if they are pursued, then they must be exhausted within that process or legal channel, whether judicial or administrative, unless the restriction or suppression of constitutional rights and guarantees presents an irremediable and irreparable harm.

From this interpretation of case law come the following rules and sub-rules regarding the inadmissibility of *amparo*, based on subsidiary when: 1) the judicial or administrative authorities have been unable to rule on a matter because the party has not used any means of defense or submitted any recourse, such that: a) no recourse or means of challenge was presented at the proper time or in the legal period of time; and b) no means of defense allowed by law was used; and 2) when the judicial or administrative authorities have or could have had the opportunity to make a ruling because the party did used a recourse or means of defense, such that: a) the recourse was filed but incorrectly, which

3

---

[3] *Constitutional Judgments (the double initials reflect the plural form)*

4

would be the case with untimely filing or improper filing or b) a means of defense is used that is useful and proper for defending a right, but the process was not exhausted, being at a point of filing and processing the *amparo* relief, pending judgment.  Both cases fall outside the exception to the principle of subsidiarity which occurs when irremediable or irreparable harm is caused by the suppression or restriction of constitutional rights and guarantees that gave rise to the complaint; in this case, and as an exception, the protection demanded is warranted even if there are other means of defense or recourses pending resolution."

In this case, the appellant, in the ordinary lawsuit pursued before District Court 7 for Civil Matters in the Capital, filed an appeal against the judgment handed down by judges of said court on March 29, 2004 and this filing was improper because, according to Art. 12, paragraph III of the Arbitration and Conciliation Act, that judgment was not subject to challenge.  However, as long as the appeal was pending resolution, the 6-month period was suspended and the appellant preserved the right to take action through a constitutional *amparo* appeal after being notified of the ruling from the May 26, 2006 hearing; notice of this ruling was made on June 9, 2006 (as shown in the proceedings appearing on page 194, reverse side, of the primary ordinary process.)

The Constitutional Court has, through Constitutional Ruling No. 770/2003 dated June 6, 2003, established a maximum period of six months in which to file for the protection of this appeal; the six months begins with the last complaint made regarding the acts injuring or violating the constitutional rights and guarantees.  In the case at hand, the term began on the date on which the appellant was notified of the ruling in the May 26, 2006 hearing, which occurred on June 9, 2006 (page 194, reserve side, of the primary case file), and ended on December 9, 2006, the precise date on which the appellant filed this constitutional *amparo* appeal, hindering the limitations on his right to take action due to the passage of time.

Consequently, although the principle of subsidiarity does not apply to this case, the situation posed does not fall within the scope and provisions of Art. 19 of the Constitution and does not meet the requirements of Art. 97, paragraphs I and VI of the Constitutional Court Act, therefore the *amparo* appeal filed by Primitivo Gutierrez Sánchez must be declared inadmissible.

**THEREFORE:**  The Third Criminal Division of the Superior Court of Justice of this Judicial District declares INADMISSIBLE the *amparo* petition made by Primitivo Gutierrez Sanchez on December 9, 2006.

As provided in Article 102-V of Law 1836, let this judgment be submitted on review to the Constitutional Court within 24 hours.-
**For the record.**

Judge authoring the decision: Dr. Juan Marcos Terrazas Rojas.
Signed: Dr. Angel Villarroal Diaz and Dr. Juan Marcos Terrazas, President and Judge of the Third Criminal Court. Before me, the Clerk.  I so attest.
In order.

[signature]
[stamp]
Mirtha G. Meneses Gómez
Division Clerk for the
First Criminal Division
Appellate Court
Cochabamba - Bolivia

4

*cbboil 06/02/2007*

*hrs: 11:05 Au*

PODER JUDICIAL DE LA NACIÓN
**CORTE SUPERIOR DE JUSTICIA COCHABAMBA**
**SALA PENAL TERCERA**

Recurso: Amparo Constitucional.
P. Demandante: FORD MOTOR COMPANY
Querellado: Sala Civil Segunda y Juez 7° de Partido en lo Civil

### Cochabamba, 2 de febrero de 2.007

**VISTOS:** El Recurso de Amparo Constitucional interpuesto en fecha 09 de diciembre de 2006 por Primitivo Gutierrez Sanchez, en representación de FORD MOTOR COMPANY, contra los Dres. Basilio Cruz Chilo, Maria del Carmen Ponce de Rocha y Virginia Rocabado Ayaviri, Juez de Partido 7° en materia Civil de esta Capital, el primero, y Vocales de la Sala Civil Segunda, las dos útlimas, sus antecedentes, lo expuesto en audiencia; y,

**CONSIDERANDO II:** Conforme dispone el art. 19 de la Constitución Política del Estado concordante con el art. 94 de la Ley No. 1836: "Procederá el recurso de Amparo Constitucional contra toda resolución, acto u omisión indebida de autoridad o funcionario, siempre que no hubiere otro medio o recurso para la protección inmediata de los derechos y garantias, así como contra todo acto u omisión indebida de persona o grupo de personas particulares que restrinjan, supriman o amenacen restringir o suprimir los derechos o garantias reconocidos por la Constitución Política del Estado y las Leyes".

**CONSIDERANDO:** Verificados los requisitos de forma que debe contener todo recurso de amparo constitucional, conforme manda el art. 97 de la Ley del Tribunal Constitucional, se establece que el amparo solicitado por Primitivo Gutierrez Sanchez, en representación de FORD MOTOR COMPANY, no acredita suficientemente la personeria del recurrente; como se fundamenta en el análisis que sigue a continuación:

I. Todas las personas comprendidas en el art. 5 del Código de Comercio, se encuentran obligadas a acreditar ante la autoridad jurisdiccional su matricula del Registro de Comercio, conforme señala el art. 33 del mismo cuerpo legal, que prescribe: *"Los jueces ante quienes ocurren los comerciantes deben exigir a éstos que acrediten previamente su matricula del Registro de Comercio"*; asimismo, y de manera concordante, el art. 165 del Código de Comercio, establece: *"La designación y cesación de administradores y representantes deben inscribirse en el registro de Comercio con indicación expresa de las facultades otorgadas en la escritura de constitución o en el Poder conferido ante Notario de Fe Pública. La falta de inscripción no perjudica a terceros"*; lo que significa que la empresa recurrente debe acreditar no sólo la matricula de la empresa inscrita en el Registro de Comercio, sino también la designación del representante legal que participa en la interposición del presente recurso de amparo constitucional inscrita en ese registro, en aplicación de los arts. 27 y 29 del repetido cuerpo de leyes.

1

2

Si bien es cierto que el instrumento de poder adjunto, de fs. 17 a fs. 25, cumple con el requisito de validez previsto en el art. 1309 del Código Civil, porque es fotocopia del original, legalizada por la funcionaria que es la depositaria legal de ese documento, Dra. Tatiana Terán de Velasco, Notario Público N° 61 de la ciudad de la La Paz; sin embargo, no acredita la matricula del Registro de Comercio de FORD MOTOR COMPANY y tampoco el registro de designación de su representante legal, pues, aunque en la fotocopia legalizada aparece el sello marginal de la oficina del Registro de Comercio, éste carece de valor legal porque no esta legalizado por el funcionario que tiene a su cargo el Registro de Comercio.

Si bien es cierto que la empresa FORD MOTOR COMPANY tiene sede en Estados Unidos de Norteamérica; sin embargo, esta situación no exime a su representante de cumplir con las disposiciones legales que han sido citadas precedentemente, para actuar en procesos judiciales con la suficiente personería. En todo caso, el recurrente no acreditó que el instrumento público que –señala– fue otorgado en el extranjero, cumpla las formas allí establecidas, conforme establece el art. 1294 del Código Civil.

Conforme a lo expuesto, por carecer de la formalidad legal observada, el testimonio de poder N° 493/2003, de fecha 11 de noviembre de 2003, otorgado por la Notaría de Fe Pública N° 61 de la ciudad de la Paz, Dra. Tatiana Terán de Velasco, es insuficiente para acreditar la personería de Primitivo Gutierrez Sanchez, en representación de FORD MOTOR COMPANY.

Por otro lado, siempre con relación a la personería jurídica del recurrente, el testimonio de poder que acompañó, le otorga facultades para intervenir: "...en defensa de la empresa dentro del proceso civil ordinario iniciado por AUTOMOTORES GALINDO S.A. y actualmente radicado en el Juzgado Séptimo de Partido en lo Civil del Distrito de Cochabamba-República de Bolivia..."; pero no le confiere poder expreso para actuar en el presente recurso de amparo constitucional y dirigir la acción contra el Juez Séptimo de Partido en lo civil o las Vocales de la Sala Civil Segunda de la Corte de Justicia de Cochabamba.

Al respecto, el art. 809 del Código Civil establece: "El mandato es especial para uno o muchos negocios determinados; o general para todos los negocios del mandante". El poder especial se otorga a alguien para actos determinados y solamente para ellos. Para actuar en procesos judiciales se requiere poder especial, conforme prescribe el art. 835 del Código Civil, parágrafo I: "El poder general no confiere facultades para los actos judiciales que por su naturaleza exijan poderes especiales o la presencia personal del interesado".

En el caso, el poder conferido por FORD MOTOR COMPANY se otorgó para actuar dentro del proceso ordinario iniciado por Galindo S.A., pero no para actuar en este recurso de amparo constitucional seguido contra las autoridades judiciales del Juzgado de Partido Séptimo en lo Civil de la Capital y Sala Civil Segunda; es decir, ese mandato no es especial para que el recurrente actúe en esta acción, porque carece de atribución específica en ese sentido. Esto quiere decir que el testimonio presentado por el recurrente es insuficiente para acreditar su personería.

II. El testimonio de poder que utiliza el recurrente para actuar en esta acción, tampoco cumple la disposición del art. 402 del Código de Procedimiento Civil, porque no ha sido presentado en su integridad, en idioma español, contiene aún partes en idioma extranjero que se encuentran sin traducir. Esta situación

2

3

invalida el valor probatorio procesal de ese instrumento, y refuerza la conclusión de que el recurrente no ha acreditado debidamente su personería.

III. El Tribunal Constitucional ha establecido que la tutela solicitada debe ser expresa, clara y precisa, conforme el requisito de contenido previsto en el art. 97, parágrafo VI de la Ley del Tribunal Constitucional, que exige precisar el amparo que se solicita, vinculado al objeto del recurso o causa petendi, a objeto de que la Resolución que emita el órgano jurisdiccional que conoce y define el recurso guarde congruencia con lo que se pide (petitium del recurso). Este entendimiento se encuentra reflejado en la Sentencia Constitucional N° 0365/2005-R, de 13 de abril de 2005, que señala:"(...) Por principio general, el Juez de tutela está obligado a conceder solamente lo que se le ha pedido; esto muestra la enorme importancia que tiene el petitium de la causa, pues, el Juez está vinculado a la misma; esto es, deberá acceder o negar el petitorio formulado; sólo excepcionalmente, dada la naturaleza de los derechos protegidos es posible que el Juez constitucional pueda conceder una tutela ultra petita, de cara a dar efectividad e inmediatez a la protección del derecho o la garantía vulnerada, cuando advierta que existió error a tiempo de formular el petitorio. Extremo que deberá ser ponderado en cada caso concreto, al tratarse de una excepción (...)".

En el caso, el recurrente no fija con precisión el amparo que solicita, porque en su petitum no expresa que se deje sin efecto el auto pronunciado por el Juez Séptimo de Partido en lo Civil, de fecha 29 de marzo de 2004; sin embargo, solicita que el nombrado Juez declare probada la excepción de arbitraje que opuso en representación de Ford Motor Company; lo que significa que estando vigente la primera resolución habría que aceptar que se dicte otra paralela en sentido contrario; situación que resulta incongruente y contraria a todo orden jurídico. Por este motivo, se establece que el recurrente incumplió la previsión del art. 97, parágrafo VI de la Ley del Tribunal Constitucional, cuyos alcances están expresados en el entendimiento jurisprudencial citado en el párrafo precedente.

IV.- Con relación a la improcedencia del amparo por cuestión de subsidiariedad, el Tribunal Constitucional, mediante Sentencia N° 808/2006, de fecha 17 de agosto de 2006, establece "Que, el carácter subsidiario del recurso de amparo, ha sido desarrollado por abundante jurisprudencia de este Tribunal, así tenemos las SSCC 1089/2003-R, 0552/2003-R, 0106/2003-R, 0374/2002-R, entre otras, que señalan que no podrá ser interpuesta esta acción extraordinaria, mientras no se haya hecho uso de los recursos ordinarios o administrativos y, en caso de haber utilizado los mismos deberán ser agotados dentro de ese proceso o vía legal, sea judicial o administrativa, salvo que la restricción o supresión de los derechos y garantías constitucionales ocasione perjuicio irremediable e irreparable.

Que, de ese entendimiento jurisprudencial, se extraen las siguientes reglas y subreglas de improcedencia de amparo por subsidiariedad cuando: 1) las autoridades judiciales o administrativas no han tenido la posibilidad de pronunciarse sobre un asunto porque la parte no ha utilizado un medio de defensa ni ha planteado recurso alguno, así: a) cuando en su oportunidad y en plazo legal no se planteó un recurso o medio de impugnación y b) cuando no se utilizó un medio de defensa previsto en el ordenamiento jurídico; y 2) las autoridades judiciales o administrativas pudieron haber tenido o tienen la posibilidad de pronunciarse, porque la parte utilizó recursos y medios de defensa, así: a) cuando se planteó el recurso pero de manera incorrecta, que se daría en casos de

3

4

planteamientos extemporáneos o equivocados y b) cuando se utilizó un medio de defensa útil y procedente para la defensa de un derecho, pero en su trámite el mismo no se agotó, estando al momento de la interposición y tramitación del amparo, pendiente de resolución. Ambos casos, se excluyen de la excepción al principio de subsidiariedad, que se da cuando la restricción o supresión de los derechos y garantías constitucionales denunciados, ocasionen perjuicio irremediable e irreparable, en cuya situación y de manera excepcional, procede la tutela demandada, aún existan otros medios de defensa y recursos pendientes de resolución".

En el caso, aunque el recurrente interpuso en el juicio ordinario civil que se tramita ante el Juzgado 7° de Partido en lo Civil de la Capital, recurso de apelación contra la resolución de la autoridad judicial de ese Juzgado, de fecha 29 de marzo de 2004, en forma errada, porque ese resolución resultaba inimpugnable por disposición del art. 12, parágrafo III de la Ley de Arbitraje y Conciliación; mientras el recurso estuvo pendiente de resolución, suspendió el plazo de 6 meses y el recurrente conservó el derecho de accionar por vía del recurso de amparo constitucional a partir de la notificación con el auto de vista de fecha 26 de mayo de 2006, resolución que se le notificó en fecha 9 de junio de 2006 (conforme se evidencia de la diligencia que corre a fs. 194 vlta. del proceso ordinario principal).

El Tribunal Constitucional ha establecido mediante Sentencia Constitucional N° 770/2003, de 6 de junio de 2003, que el plazo máximo dentro del cual se debe accionar la tutela de este recurso es de seis meses, término que se computa a partir del último reclamo que se efectúa respecto de los actos que lesionan o vulneran los derechos y garantías constitucionales. En el caso, el plazo corrió a partir de la notificación con el auto de vista de 26 de mayo de 2006 al recurrente, que se produjo en fecha 9 de junio de 2006 (fs. 194 vlta. del expediente principal) y feneció en fecha 9 de diciembre de 2006, fecha en que precisamente el recurrente interpuso el presente recurso de amparo constitucional, impidiendo la prescripción de su derecho de accionar por el transcurso del tiempo.

En consecuencia, aunque el principio de subsidiariedad no es aplicable al caso, la situación planteada no se encuentra dentro de los alcances y previsiones del art. 19 de la Constitución Política del Estado y no cumple los requisitos del art. 97, parágrafos I y VI de la Ley del Tribunal Constitucional, de manera que corresponde declarar la improcedencia del recurso de amparo presentado por Primitivo Gutierrez Sánchez.

POR TANTO: La Sala Penal Tercera de la Corte Superior de Justicia de este Distrito Judicial, declara IMPROCEDENTE el amparo solicitado por Primitivo Gutierrez Sanchez, de fecha 09 de diciembre de 2006.

Conforme la previsión del artículo 102-V de la Ley 1836, elévese en revisión la presente resolución ante el Tribunal Constitucional en el plazo de 24 horas.- Regístrese.

Vocal relator: Dr. Juan Marcos Terrazas Rojas.
Fdo. Dr. Ángel Villarroel Díaz y Dr. Juan Marcos Terrazas, Presidente y Vocal de la Sala Penal Tercera. Ante mí Secretaria. Doy fe.
Es Conforme

Mirtha G. Meneses Gómez
SECRETARIA DE CÁMARA
DE LA SALA PENAL PRIMERA
CORTE SUPERIOR DE JUSTICIA
Cochabamba - Bolivia

4



715 S.W. 73RD AVENUE
MIAMI, FLORIDA 33144
**TEL** 305 373•7874 **FAX** 381•7874
**TOLL FREE:** 1 (888) 304•7874
**E-MAIL:** info@pretran.com

**Certificate of Accuracy**



State of Florida)
County of Miami-Dade)

**Vicente de la Vega**, certified by the Administrative Office of the United States Court and by the Court Interpreters Certification Board of the State of Florida, swears, deposes and states that the attached translation has been performed by a translator fully qualified to translate in the **SPANISH** and **ENGLISH** languages, as engaged to this effect by and on behalf of Precision Translating Services, Inc.

Sworn to and subscribed before me this Tuesday, October 22, 2013 by **Vicente de la Vega**, who is personally known to me.

_____
**Vicente de la Vega**

My commission expires:

ALICIA A. MUINA
MY COMMISSION # EE 056220
EXPIRES: May 18, 2015
Bonded Thru Notary Public Underwriters

_____
Notary Public State of Florida at Large

**The utmost care has been taken to ensure the accuracy of all translations. Precision Translating Services, Inc. and its employees shall not be liable for any damages due to its own negligence or errors in typing or translation, nor shall it be liable for the negligence of third parties.**

# EXHIBIT Tr.J

Case 1:13-cv-23285-DPG   Document 14-2   Entered on FLSD Docket 11/07/2013   Page 91 of
111

[national seal]

CONSTITUTIONAL RULING 0583/2010-R
Sucre, July 12, 2010

File: 2007-15412-31-RAC
District: Cochabamba
Appellate Judge authoring opinion: Dr. Juan Lanchipa Ponce

Review of the Judgment dated February 2, 2007, on pages 89 to 90, reverse side, handed down by
the Third Criminal Division of the Judicial District of Cochabamba Appellate Court in the
constitutional *amparo*[1] appeal petition, now a constitutional *amparo* appeal cause of action filed by
Primitivo Gutiérrez Sánchez on behalf of Ford Motor Company against Virginia Rocabado Ayaviri,
Maria del Carmen Ponce de Rocha,  Judges of the Second Civil Division of the Appellate Court and
Basilio Cruz Chilo, District Judge Seven for Civil and Commercial Matters, all from the same Judicial
District, claiming that the rights of the company that he represents to legal certainty and defense
have been violated, citing for this purpose Articles 7(a) and 16.II of the repealed Constitution
(CPEabrg).

I.  BACKGROUND RELEVANT TO THE COURT

I.1. Content of the appeal

I.1.1.Facts underlying the appeal

In the  brief submitted on December 9, 2006, appearing on pages 27 to 31, the appellant states that
on August 2, 2002, Sociedad Galindo S.A. filed ordinary proceedings against his client to recover
damages; that in turn, on November 14, 2003, he filed an arbitration defense which was dismissed
by the lower court Judge [sic] in a Judgment dated March 29, 2004; an appeal was filed against that,
the Second Civil Division of the Judicial District of Cochabamba having issued a Hearing Judgment on
May 26, 2006, invalidating the judgment that allowed the appeal and declaring the Judgment
dismissing the arbitration defense to be in effect; by the lower court's ruling that Ford had
terminated the contract unilaterally,  it became impossible to submit the complaint to arbitration by
applying Art 12.III of Law 1770 dated March 10, 1997, without taking into account the provisions of
Art 11 of that same Law regarding the autonomous nature of the arbitration agreement, referring to
the contract of 1999, titled Global Importer Dealer Service and Sales Agreement, which established
that upon termination of the contract and any or all of its appendices, the following procedure shall
be put in motion, constituting the  parties' sole resource , which is arbitration; therefore the
unilateral termination of the contract in no way affects the arbitration clause nor does it involve an
act that cannot be enforced.

I.1.2. Rights purportedly violated

The appellant believes that his client's rights to legal certainty and defense have been violated, citing
for this purpose Arts. 7(a) and 16.II of the CPEabrg.

---

[1] *An appeal for relief under the Constitution to protect civil liberties.*

I.1.3. Judicial authorities challenged and prayer for relief

Given this background, a constitutional *amparo* appeal is filed against Virginia Rocabado Ayaviri and Maria del Carmen Ponce de Rocha, Judges of the Second Civil Division of the Appellate Court; and Basilio Cruz Chilo, District Judge Seven for Civil and Commercial Matters, all in the Judicial District of La Paz, requesting that the appeal be admitted and the order to enforce the Judgment of March 29, 2004 be vacated and the lower court [sic] comply with Art. 12.III of Law1770, ruling that the arbitration defense is proven, sending the proceedings to the competent authority.

I.2. *Amparo* Court hearing and judgment

Upon holding the public hearing on February 2, 2007, as per pages 85 to 88, reverse side, of the record, with the appellant and the interested third-party present and in the absence of the challenged authorities, representing the Public Prosecutor, the following proceedings took place:

I.2.1. Ratification and expansion of the appeal

The appellant ratifies the [challenge/appeal] expressed and expanded; he indicated that the company and the dealer must submit to a period of meetings and if, within thirty days, a settlement is not reached, they may seek arbitration before the competent authority, which is the American Arbitration Association, as the contract was signed in the United States, in which case the parties jointly appoint an arbitrator and if they fail to do so, the commission proceeds to make the appropriate appointment.

I.2.2.  Report by the challenged authorities

The challenged Judges, in the written report appearing on pages 70 and 71, stated that; 1) The power of attorney attached to the appeal is not sufficient as the photocopy has not been authenticated with the seal of the Fundación para el Desarrollo Empresarial (FUNDEMPRESA), therefore it should not have been admitted; and, 2) they ratify the Hearing Judgment of May 26, 2006 in its entirety, since at no time did they violate the right to legal certainty nor to defense, given that the only thing they are accused of in the appeal is having declared the appealed Judgment to be executed, a decision which is based on procedures provisions and the principal of *preclusión*[2].

The co-respondent Judge submitted a written report, appearing on pages 72 to 74, in which he states: a) on August 2, 2002, Galindo S.A. filed an ordinary suit against Ford Motor Company for compensation of damages, the latter filing an arbitration defense; b) the arbitration defense was dismissed in the Judgment dated March 29, 2004, because the arbitration agreement is governed by Art. 10 and the defense by Art. 12, both of Law 1770, as the company decided unilaterally to terminate the validity of the contract, and with regard to the damages claimed by the dealer, it is impossible to proceed through arbitration, as set forth in Art. 12.III of said Law; in addition, the Judgment was made based on application of Arts. 519 and 520 of the Civil Code (CC), which also applies by stipulation of Art. 97 of Law 1770; and c) National law governs with regard to all inhabitants, whether domiciled in this country or abroad or passing through, under the principle of territoriality set forth in Arts. 2, 228 and 229 of the CPEabrg.

I.2.3.  Participation by Interested Third Party

---

[2] *Rule under which matters must be raised at the proper stage in a lawsuit and cannot be asserted after that stage.*

Enrique Galindo Huerta, on behalf of Galindo S.A. and through the written argument prepared by the attorney, included on pages 75 to 77, states that the Judgment dismissing the arbitration defense is not subject to appeal and that two years and nine months have passed since the time of notification was given to the company, but *amparo* must be filed within six months; therefore it had to be rejected in limine. The legal representative has no active legal standing as he did not meet the requirements of Arts. 809, 811 and 835 of the CC and 97.1 of Law 1936 dated April 1, 1998.

I.2.4. Judgment

The Third Criminal Division of the Appellate Court of the Judicial District of Cochabamba, established as an *Amparo* Court, issued a Judgment on February 2, 2007, declaring the appeal to lack merit based on the following: i) The petition for *amparo* does not meet the requirements set forth in Art. 94 of the Constitutional Court Law (LTC), because the defendant's standing was not sufficiently evidenced in accordance with Arts. 809 and 835 of the CC; likewise, Art. 402 of the Code of Civil Procedures (CPC) was not met; ii) The petitioning Company did not meet the requirement for *amparo* as stipulated in Arts. 5, 27, 29, 33 and 165 of the Commerce Code (Ccom), because it did not attach its registration with the commerce registry, substantiating its legal representative; iii) The petition for *amparo* does not fall within the scope and provisions of Art. 19 of the CPEabrg and does not meet the requirements of Art. 97.I and IV of the LTC; and iv) That, in addition, the appeal was not filed in a timely manner, given that the Hearing Judgment challenged was issued on June 9, 2006, and this protective cause of action was filed on December 9 of that same year.

I.3. Procedure process with the Constitution Court

The Jurisdictional Agreement 001/2010 dated March 8 restarted jurisdictional activities, whereby the cause at hand was assigned on May 18, 2010, therefore the Constitutional Judgment was issued within the proper term.

II. CONCLUSIONS

 Based on the careful review and consultation of the background in the case file, the following is determined:

II.1. On August 2, 2002, Galindo S.A. filed an ordinary lawsuit against Ford Motor Company seeking damages, file with District Court Seven for Civil and Commercial Matters in the Judicial District of Cochabamba, presided over by the challenged Judge (pages 34 to 37, reverse side).

II.2. In the attorney's arguments submitted on November 24, 2003, the Ford Motor Company representative filed a motion (pages 38 to 40), which was dismissed by the challenged Judge in a Judgment dated August 29, 2004, based on the fact that the aforementioned Company made the unilateral decision to terminate the contract, therefore this claim cannot be pursue arbitration for damages caused before the arbitration court of Michigan, United States of America, in observance of Art. 12.III of Law 1770 (pages 41 and reverse side.).

II.3 Once the aforementioned decision (pages 45 to 47) was appealed, the Second Civil Court presided by the co-respondent Judges in Hearing Judgment dated May 26, 2006, invalidated the Judgment of May 24, 2004 admitting the appeal, arguing that Art. 12.III of Law 1770 states that the dismissal of an arbitration defense is not subject to appeal, and thereby declared the Judgment of March 29, 2004 to be executed (pages 48 and reverse side), regarding which the appellant notified his principal on June 9, 2006 (pages 48, reverse side.)

III.  LEGAL BASIS FOR THE RULING

The appellant, now petitioner, claims that this client's rights of legal certainty and defense have been violated, stating that in the ordinary process being pursued against his principal, the former filed an arbitration defense which was dismissed by the challenged Judge; for that reason, he filed an appeal for *amparo*, the co-responding Judges having issued a Hearing Judgment in which they invalidated the Judgment that admitted the appeal and declared that Judgment dismissing the defense to be executed. Therefore, in reviewing the Judgment on constitutional *amparo*, the matter is whether or not to grant the requested protection.

III.1. Recitals.  Application of the Constitution and proper use of terminology in the constitutional *amparo* proceedings.

According to the provisions of Art. 410 of the current Constitution (CPE), given that the Constitution is the highest law in the Bolivian legal system, and has primacy over any other legal provision, in order to fulfill the mandate and functions established in Arts. 1 and 7 of the LTC, 4 of Law 003, the Law on the Need to Transition to New Entities within the Judiciary and Office of the Public Prosecutor, through SC 0011/2010-R dated April 6, this Court determined that all of its actions shall follow the new constitutional system in observance of and consistent with all of the International Treaties and Conventions regarding Human Rights  ratified by the country and which form part of the collection of constitutional laws.

Likewise, with matters of procedure, in regard to the terminology in this protection proceeding, following a regulatory analysis of SC 0071/2010-R dated May 3, the criteria was unified and established such that "petitioner" shall be used when referring to the individual or corporation filing this protection matter, and "response" shall be used with regard to the authority, official, or individual against whom such proceeding is filed.  Likewise, in matters of terminology regarding the court order, if protection is extended, the term "granted" shall be used; if not, then protection shall be "denied".

In those cases where an analysis of the merits of the case submitted is not possible, the court will default to a denial, placing that fact on record given that the petitioner might wish to refile the protection proceedings, provided the petitioner complies with the requirements for admissibility.

Judgments which, by virtue of Arts. 4 and 44 of the LTC, are binding for all court authorities acting as a Constitutional Rights Court, such as this Court. (SC 0119/2010-R dated May 10).

III.2. Active standing in the constitutional *amparo* proceeding, in cases of representing corporations with a power of attorney

III.2.1 Constitutional, legal and case law framework

Art. 19.II of the CPEabrg stated that an *Amparo* appeal shall be filed by the person who believes that they were wronged or by someone else on their behalf and holding sufficient power of attorney… Art. 129I of the CPE establishes that: a constitutional *amparo* proceeding shall be filed by the person deeming themselves to be injured, by another party holding sufficient power of attorney.  Art. 97 of the LTC, then, states the requirements of form and content to be observed when filing a constitutional *amparo* appeal, stipulating in paragraph I: Confirm the standing of the appellant. Likewise, Art. 98 of the aforementioned Law states that: The competent Court or Judge, within twenty four hours, shall admit a constitutional *amparo* petition that meets all of the requirements of form and content demanded by the preceding article; otherwise, it will be denied.  The

formal defects may be remedied by the appellant within a period of forty eight hours of being notified, with no further recourse.

Constitutional case law stipulates regarding this that: the formal requirements are set forth in paragraphs I, III and V of Art. 97 of the LTC, which can be cured by the appellant within the stated time period (SC 0245/2004-R dated February 20, among others); however, if the failure to comply with a requirement of form is overlooked and the appeal is admitted despite the noncompliance, this noncompliance shall result in a declaration of inadmissibility.   This, according to SSCC[3] 0038/2005-R, 1730/2004 and 1144/2003-R.

Observation of compliance with the requirements, both of form and of substance, for admission of an *amparo* appeal, now constitutional *amparo* proceeding, is based on the fact that both the *amparo* judge or court and the Constitutional Court depend on that compliance, can compare the parties' standing on a basis of objective criteria as well as the truth of facts claimed and rights injured, in order to, in the end, either grant or deny the *amparo* specifically requested; at the same time, it tends to also guarantee that the parties may, with these clarifications, make their appearance to defend themselves in the proper manner (SC 0365/2005-R dated April 13).

Now then, as to the requirement of form relating to the standing of the appellant, now petitioner, according to the aforementioned constitutional and legal precepts, the petitioner may act in person or through a representative holding sufficient power, which is common when dealing with corporations or groups.  In this regard, Constitutional Court case law has been issued on several opportunities, emphasizing the requirements that must be met in order for the notarial power of attorney attached to the appeal to be considered sufficient for the purpose of admitting for process a petition for constitutional *amparo* filed by a corporation   Thus, in SC 0171/2005-R of February 28, this Court has stated:

… SC 002272004-R dated January 8,  stated for the record as follows: "In the case of corporations, such as an agricultural livestock company () the appellant, who is the one filing the complaint on the company's behalf, must have provided evidence of his capacity as legal representative, attaching the appropriate power of attorney, which must include, without fail, the company's article of incorporation, list of shareholders, registration with the Commerce Registry, legal personality and Regulations. ()'. SC 1823/2003-R of December 5, in turn, which compared the matter of an *amparo* appeal filed on behalf of an Argentine company, stated: '() the Special Power of Attorney submitted by the appellant and appearing on pages 1 to 3, proves () that in his capacity as legal representative of () he is authorized to file this petition for constitutional *amparo*; however, that same document does not include the aforementioned business' articles of incorporation, by-laws, resolution granting legal personality, registration with the appropriate registry and especially when dealing with company established abroad, the aforementioned Power of Attorney does not reflect that it is legally established in Bolivia.  Therefore, the appellant is determined to lack active standing to file the appeal, as he has not properly evidenced his standing, an omission which makes the appeal inadmissible and impedes hearing the merits of the case, which should have been observed by the *Amparo* Court when they considered the appeal filing, in strict compliance with the provisions of Art. 19.II CPE and 97.I LTD.'  This same criteria was used in SC 0994/2004-R of June 29, regarding a power of attorney issued in the Republic of Mexico.

The same Judgment that decided the specific case, which contains situations of fact similar to the matter now being analyzed, regarding the power of attorney submitted in the appeal that was to be determined, emphasized the following: This line of case law must be applied to the issue being

---

[3] Supreme Court Rulings (the double letters indicate the plural form)

analyzed, given that the Power of Attorney granted by Diego Canelos Velasco, on behalf of Seatech International Inc. in favor of the appellant, before the Office of the Notario[4] in the city of Cartagena de Indias-Colombia, formally recorded by court order with the Office of Notario de Fe Pública 054 of La Paz-Bolivia, does not meet the requirements established previous, as it does not include the articles of incorporation of the aforementioned corporation, proof of his legal personality, the bylaws, regulations, list of shareholders and not even whether it is legally established in Bolivia, requirements which must be met in order to establish with certainty the legal existence of the corporation filing the claim, an essential  matter – when dealing with this type of person- in order that it might be considered entitled to rights and invoke a violation of them.  In addition, according to the plaintiff himself, it is a company established and legally domiciled abroad, which does not carry out business in Bolivia, and which the Bolivian State has not, therefore, demonstrated acknowledgement of its legal personality.  Thus, it has no active legal standing to file this appeal, something that is essential for *amparo* to be admitted.  Consequently, the plaintiff not having duly proven his standing, the appeal must be declared inadmissible, without being able to analyze the merits of the claim, in observance of the content of Arts. 19.II of the CPE and 97.1 of the LTC.

As a result, the notion of what should be understood to comprise a sufficient power of attorney, referred to in Arts. 19.11 of the CPEabrg and 129.I of the CPE and according to the aforementioned case law, moves to the observation of the essential requirements that the power of attorney must meet in order to demonstrate representation by an individual who seeks to act on behalf of a corporation: such as the company's articles of incorporation, proof of its legal personality, the list of shareholders, its registration with the appropriate Registry, Bylaws and Regulations. This case law has been otherwise reiterated in numerous rulings, among which we can mention the SSCC 0858/2005-R, 1121/2006-R, 0773/2007-R and more recently, the SC 0137/2010-R dated May 17, case law which is binding pursuant to the content of Art. 44.I of the LTC. Therefore, it is obligatory not only for State agencies, legislators and authorities, but also for this Court.

III.2.2. Analysis of the case at hand

The case law mentioned above applies to the case under review, because a review of the power of attorney attached by the appellant, now plaintiff (pages 17 to 25, and its original on pages 93 to 101), demonstrates that while Ford Motor Company authorizes him to act in defense of the company in the civil proceedings that gave rise to the then appeal (now cause of action), when he could have filed ordinary and extraordinary appeals, including the constitutional appeals established in the Constitutional Court Act (sic); nowhere in that power of attorney is there even a minimum transcription of the documents relating to the incorporation of the company, proof of its legal personality, documents regarding the legal structure of its body of officers, the members of said body, the election of its legal representative, regulations authorizing the delegation of powers, etc.. Instead, it established that powers have been granted by an Acting Secretary and another Secretary, also interim; it certifies that the first is specifically an Acting Secretary and that her authorities, in turn, were delegated to her by the President of the Board. Consequently, the aforementioned power of attorney cannot be considered to be sufficient and a formal requirement has therefore not been observed, wherefore the *Amparo* Court must deny the appeal.  However, given that it was admitted until the Judgment under review was issued, the protection requested should be denied without going into an analysis of the merits of the case submitted.

---

[4] *A Notario in Bolivia is an attorney with a specific jurisdiction and duties, including form, filing and function.*

III.3 The principal of subsidiary application and immediacy in filing the constitutional *amparo* cause of action

The constitutional *amparo* appeal, currently constitutional *amparo* cause of action, established by Art. 128 of the CPE, against illegal or improper acts or omissions by public servants, or by an individual or group of persons, who restrict, suppress or threaten to restrict or suppress the rights acknowledged by the Constitution and law, constitute a means of extraordinary protection that is governed by the principles of subsidiary application and immediacy in seeking the protection.

III.3.1. Regarding the suitability of the means and recourses intended to repair the damage or injury to rights

With regard to exhausting legal means or recourses, whether through judicial channels or administration ones, prior to filing the constitutional *amparo* cause of action, constitutional case law has established that they should be the ones that are suitable and effective; it should be stated, those that are established by law for each particular situation or case.  It is not consistent to turn to a legal means or recourse that one knows in advance will not prove viable, given that especially when dealing with court decisions, the procedures governing different matters establish the specific recourses that apply to a given court order; therefore the holder of the right cannot go astray, seeking or using means or recourses not suitable to stopping the action deemed to be injurious, but rather seeking immediate protection through *amparo*, once the appropriate means through ordinary channels are exhausted.

In this regard, SC 0770/2004-R states that: the principle of subsidiarity does not imply the use of any means or recourse other than those that are suitable. However, using other, unsuitable means or channels to stop the illegal act or improper omission against which a complaint is made does not neutralize the protection of *amparo*, provided those that the law requires have been used; this does not occur when doing otherwise, since the failure to use suitable means voids any possibility of going into the merits of the case, or of granting the protection.

III.3.2. Regarding the six month period, or immediacy, in the request for protection

The principal of immediacy, understood not only as immediate protection but also as the requirement to request such in a prompt and timely manner, without unnecessary delays, i.e., once the right is violated and the ordinary legal channels have been exhausted.  In other words, it is the term for filing this protective cause of action that is currently set forth in Art. 129.I of the CPE, which states: A Constitutional *Amparo* Cause of Action may be filed in a maximum period of six months, calculated from when the alleged violation occurs or from notice of the last administrative or judicial decision.

This validity period makes sense when one takes into account that the constitutional courts cannot wait indefinitely for the holder of a right to request its protection; in its own interests, it must be diligent regarding the respect and validity of its right that are harmed; that is why there is a right and a duty to come seeking the required protection without waiting or any delay whatsoever.  In this regard, the aforementioned SC 0770/2004-R states that: …it is logical, given that it not only responds to the principle of immediacy but also to the principles of *preclusión* and celerity, which depend not only on the actions of the authority but also those of the petitioner, who must be compelled by his or her own interest to follow up on their petition as appropriate; therefore, when they have not been diligent on their own behalf, it cannot be assumed that this court is subject indefinitely to granting the protection.

III.3.3. Regarding the time or starting point of the calculation

As stated in the referenced constitutional law, Art. 129.II of the CPE, it is calculated either from the moment the alleged violation occurs or from when notice of the last administrative or judicial decision is received that is considered injurious and is not subject to challenge, and therefore exhausts the respective channel; or, from when service with notice of a judgment issued in regard to an appeal or mode of challenge that the injured party or petitioner has used for protection of their injured rights.  However, in terms of balance and cohesiveness with the principle of subsidiarity, the calculation must take into account that this cause of action of challenge used in seeking reparation, and prior to seeking *amparo*, must be suitable; that is to say, provided by law and having the possibility of changing the basis of what is illegal or injurious to rights; exempt from this calculation are those means and recourses that are not provided for by law or are considered erroneously, provided the purpose of this protective action is not to repair errors made by the injured party or petitioner, but rather injury done to fundamental rights.

In this sense, this Court already issued a line of reasoning, as in the case of SC 0079/2007-R of February 23, which established in this regard that: when a complaint is filed before agencies that are not competent or through unsuitable means, these cannot interrupt the period of six months in which to seek *amparo*, given that they are not legal mechanisms, they cannot generate a legal consequence capable of hindering prescription of the right to access such recourse; in this sense, only legal and suitable channels stop the clock on the six month term established as the maximum in which to access the recourse of constitutional *amparo*, a criteria that is upheld in SSCC 0252/2007-R, 0646/2007-R, and 0687/2007-R.

Furthermore, it should be noted that when judicial or administrative judgments are challenged through this protective cause of action, based on the understanding set forth in SC 0512/2010-R of July 5, only if the Judgment has been clarified, issued or supplemented will the calculation begin from the notification that gave rise to the petition.

III.3.4. Case Analysis
The substance of the matter for which the petitioner has filed a complaint is that the company that he states he represents, filed an arbitration defense during an ordinary proceeding brought against said company through ordinary civil courts; the arbitration defense was dismissed by the challenged Judge, the judgment was confirmed by the appeals court, which led to the constitutional *amparo* cause of action under review today.

However, upon reviewing the information in the file, it is noted that the judgment rejecting the arbitration defense, issued by Basilio Cruz Chilo, District Judge Seven for Civil Commercial Matters for the Judicial District on Commercial Matters of the Judicial District of Cochabamba, is dated March 29, 2004; in this regard, it must be noted that Art. 12 of the Arbitration and Conciliation Act (LAC) regulates everything regarding the arbitration defense, and establishes that:

1. An arbitration agreement  means that the parties waive the filing of judicial proceedings in regard to matters or conflicts submitted to arbitration.   II.   The judge haring a conflict subject to an arbitration agreement shall refuse to hear the case

at the request of the party against whom litigation is filed. In this case, that party may file an arbitration defense in writing and before the answer.  The defense shall be resolved without major proceedings, through an express judgment. III. Once the  existence of an arbitration agreement with no option to appeal  is on record, the competent court shall declare the arbitration defense to be proven or, addressing only the non-validity or impossibility of enforcing the arbitration agreement, shall dismiss the arbitration defense.  IV.   Regardless of having filed judicial action, arbitration activities can be initiated and pursued, and awards made, while the defense is in process before the judge.

This is precisely the reason that Virginia Rocabado Ayaviri, Maria del Carmen Ponce de Rocha, Judges of the Second Civil Division of the Appellate Court in this same Judicial District, through Hearing Judgment dated May 26, 2006, invalidated the admission by the lower court Judge of the appeal, based on the referenced legal provision from Art. 12.III of the (LAC), because dismissal thereof is not subject to any recourse whatsoever; even citing Supreme Court Ruling 78 of April 11, 2005, which states: when the court verifies the existence of the arbitration agreement, it must declare the arbitration defense to be proven, by means of an explicit ruling not subject to appeal, as per Article 2-III of the aforementioned Special Law [on/for] preferential enforcement, as ordered by Article 5 of the Judicial Organization Act.  Thus, for the above reasons, in the case at hand, it was not proper to file, much less grant, the recourses of appeal or cassation (page 16).  The plaintiff himself acknowledge this matter in his complaint brief, by stating that:  there is no doubt that the appeal recourse is not admissible under the provisions of the aforementioned paragraph II of Art. 12 of Law No. 1770 (sic) (page 28, reverse side).

Therefore, with no need for further argument, having demonstrated and accepted the unsuitability of the appeal and, thereby, the Hearing Judgment of May 26, 2006, notification thereof cannot be taken into account when calculating the six month period; instead, it must be calculated from notification of the Judgment of March 29, 2004, which was in April of that same year, and while the file does not contain the filing of said notification, from pages 9 to 11, the unsuitable appeal of [sic] submitted on April 12, 2004, it more than evident that this *amparo* cause of action has been filed extemporaneously, on December 9, 2006, as appears on pages 27 to 31.  This ratifies the denial of the protection requested, with the clarification that there has been no analysis of the merits of the matter litigated.

Consequently, the matter submitted does not fall within the scope and requirements for constitutional *amparo*, therefore, the Constitutional Rights Court, having declare the then appeal to be inadmissible, has properly certified the procedural events and has administered this protective cause of action correctly.

THEREFORE

The Constitutional Court, by virtue of jurisdiction and competence conferred on it by Arts. 4 and 6 of Law 003 dated December 13, 2010, named the Law on the Need to Transition to New Entities within the Judiciary and Office of the Public Prosecutor; 7(8) and 12.V of the LTC, upon review APPROVE the Judgment dated February 2, 2007, appearing on pages 89 and 90, reverse side, issued by the Third Criminal Court of the Appellate Court of the Judicial District of Cochabamba; and therefore, without going into the merits of the case brought, DENIES the protection requested.

Record, notify and publish in the Constitutional Gazette.

The Chief Judge, Dr. Abigael Burgoa Ordóñez, does not participate due to a legitimate reason.

Signed.   Dr. Juan Lanchipa Ponce
PRESIDENT

Signed.  Dr. Ernesto Félix Mur
JUDGE

Signed.  Dr. Ligia Mónica Velásquez Cataños
JUDGE

Signed.  Dr. Marco Antonio Baldivieso Jinés
JUDGE





SENTENCIA CONSTITUCIONAL 0583/2010-R
Sucre, 12 de Julio de 2010

Expediente: 2007-15412-31-RAC
Distrito: Cochabamba
Magistrado Relator: Dr. Juan Lanchipa Ponce

En revisión la Resolución de 2 de febrero de 2007, cursante de fs. 89 a 90 vta., pronunciada por la Sala Penal Tercera de la Corte Superior del Distrito Judicial de Cochabamba dentro del recurso de amparo constitucional, ahora acción de amparo constitucional interpuesto por Primitivo Gutiérrez Sánchez en representación de Ford Motor Company contra Virginia Rocabado Ayaviri, Maria del Carmen Ponce de Rocha, Vocales de la Sala Civil Segunda de la Corte Superior de Justicia; y, Basilio Cruz Chilo, Juez Séptimo de Partido en lo Civil y Comercial todos del mismo Distrito Judicial, alegando la vulneración de los derechos de la empresa que representa a la seguridad jurídica y a la defensa, citando al efecto los arts. 7 inc. a) y 16.II de la Constitución Política del Estado abrogada (CPEabrg).

I. ANTECEDENTES CON RELEVANCIA JURÍDICA

I.1. Contenido del recurso

I.1.1. Hechos que motivan el recurso

El recurrente en el memorial presentado el 9 de diciembre de 2006, cursante de fs. 27 a 31, manifiesta que el 2 de agosto de 2002, la Sociedad Galindo S.A., interpuso demanda ordinaria por resarcimiento de daños y prejuicios contra la empresa que representa, la que a su vez el 14 de noviembre de 2003, interpuso excepción de arbitraje, que fue desestimada por el Juez ad-quo (sic) por Resolución de 29 de marzo de 2004; contra la que se interpuso recurso de apelación, habiendo la Sala Civil Segunda del Distrito Judicial de Cochabamba, dictado Auto de Vista de 26 de mayo de 2006, anulando el Auto de concesión del recurso de apelación y declarando ejecutoriada la Resolución que desestima la excepción de arbitraje; señalando el inferior que al haber la compañía Ford, terminado unilateralmente el contrato, resulta imposible llevar el reclamo a la vía arbitral en aplicación del art. 12.III de la Ley 1770 de 10 de marzo de 1997, sin tomar en cuenta lo previsto por el art. 11 de la misma Ley sobre la autonomía del convenio arbitral, haciendo referencia al contrato de 1999, denominado Convenio de Ventas y Servicios del Concesionario Importador Global, que establece que a la terminación del contrato y de cualquiera o todos sus anexos se pondrá en marcha el siguiente procedimiento que constituirá un recurso exclusivo para las partes y corresponderá el arbitraje, por lo que la terminación unilateral del contrato no afecta de modo alguno la cláusula arbitral y tampoco implica un acto de imposible de ejecución.

I.1.2. Derechos supuestamente vulnerados

El recurrente estima vulnerados los derechos de la empresa que representa a la seguridad jurídica y a la defensa citando al efecto los arts. 7 inc. a) y 16.II de la CPEabrg.

I.1.3. Autoridades judiciales recurridas y petitorio

Con esos antecedentes interpone recurso de amparo constitucional contra Virginia Rocabado Ayaviri y María del Carmen Ponce de Rocha, Vocales de la Sala Civil Segunda de la Corte Superior; y Basilio Cruz Chilo, Juez Séptimo de Partido en lo Civil y Comercial todos del Distrito Judicial de La Paz, solicitando se declare procedente el recurso y deje sin efecto la declaración de ejecutoria del Auto de 29 de marzo de 2004 y el ad-quo (sic) cumpla el art. 12.III de la Ley 1770, declarando probada la excepción de arbitraje, remitiendo obrados a la autoridad competente.

I.2. Audiencia y resolución del Tribunal de garantías

Efectuada la audiencia publica el 2 de febrero de 2007, conforme consta del acta que cursa de fs. 85 a 88 vlta., con la presencia del recurrente y el tercero interesado y en ausencia de las autoridades recurridas, como el representante del Ministerio Público se produjeron los siguientes actuados:

I.2.1. Ratificación y ampliación del recurso

El recurrente ratifico los términos del recuso planteado y ampliando; señalo que la compañía y el concesionario deben someterse a un periodo de reuniones y si dentro de treinta días no se llega a una conciliación, corresponde acudir al arbitraje ante la autoridad competente que es la Asociación Americana de Arbitraje, por cuando el contrato fue firmado en Estados Unidos, en cuya instancia las partes nombran en forma conjunta un árbitro y si no lo hacen la comisión procede con el correspondiente nombramiento.

I.2.2. Informe de las autoridades recurridas

Las Vocales recurridas, en el informe escrito cursante de fs. 70 a 71, señalaron; 1) El poder acompañado al recurso es insuficiente, pues la fotocopia no está legalizada con el sello de la Fundacion para el Desarrollo Empresarial (FUNDEMPRESA), por lo que no debió ser admitido; y, 2) Ratifican íntegramente lo resuelto en el Auto de Vista de 26 de mayo de 2006, ya que en ningún momento violaron el derecho a la seguridad jurídica, ni a la defensa ya que de lo único que se acusa en el recurso, es haber declarado ejecutoriado el Auto apelado, decisión que se enmarca a las disposiciones procedimentales y al principio de preclusión.

El Juez correcurrido, presento informe escrito, cursante de fs. 72 a 74, en el que indica: a) Galindo S.A. el 2 de agosto de 2002 dedujo proceso ordinario contra Ford Motor Company por resarcimiento de daños y perjuicios, la que citada opuso excepción de arbitraje; b) La que por Auto de 29 de marzo de 2004, desestimó la excepción porque el convenio arbitral esta legislado por el art. 10 y la excepción por el art. 12 ambos, de la Ley 1770, pues la compañía decidió terminar con la vigencia del contrato por decisión unilateral, y sobre los daños reclamados por el concesionario, resulta imposible llevar a la vía arbitral, conforme señala el art. 12.III de la citada Ley, además la Resolución fue pronunciada en aplicación de los arts. 519 y 520 del Código Civil (CC), aplicable supletoriamente por disposición del art. 97 de la Ley 1770; y, c) La ley nacional rige para todos los habitantes, sean nacionales o extranjeros domiciliados, o transeúntes, bajo el principio de territorialidad señalado en los arts. 2, 228 y 229 de la CPEabrg.

I.2.3. Intervención del tercero interesado

Enrique Galindo Huerta, por Galindo S.A. en el memorial cursante de de fs. 75 a 77, indica que la Resolución que desestima la excepción de arbitraje, no admite recurso ulterior y que

desde la notificación a la empresa transcurrieron dos años y nueve meses, cuando el amparo debe ser presentado dentro de los seis meses, por lo que debió ser rechazado in limine. El apoderado no tiene legitimación activa porque no cumplió lo dispuesto en los arts. 809, 811 y 835 del CC y 97.1 de la Ley 1836 de 1 e abril de1998.

I.2.4. Resolución

La Sala Penal Tercera de la Corte Superior del Distrito Judicial de Cochabamba, constituida en Tribunal de Garantías, dictó Resolución de 2 de febrero de 2007, declarando improcedente el recurso, con los siguientes fundamentos: i) La demanda de amparo no cumple los requisitos establecidos por el art. 94 de la Ley del Tribunal Constitucional (LTC), porque no se acreditó de manera suficiente la personería del demandante, concordante con los arts. 809 y 835 del CC, asimismo no se dio cumplimiento al art. 402 del Código de Procedimiento Civil (CPC); ii) La Compañía demandante no adecuo el amparo conforme prescriben los arts. 5, 27, 29, 33 y 165 del Código de Comercio (Ccom), por cuanto no acompaña su matricula de registro de comercio que acredite a su representante legal; iii) El amparo no se encuentra dentro los alcances y previsiones del art. 19 de la CPEabrg y no cumple los requisitos del art. 97 I. y VI de la LTC; y iv) Que además el recurso ha sido interpuesto extemporáneamente, toda vez que el Auto de Vista impugnado ha sido notificado el 9 de junio de 2006, y esta acción tutelar fue presentada el 9 de diciembre del mismo año.

I.3. Trámite procesal en el Tribunal Constitucional

Por Acuerdo Jurisdiccional 001/2010 de 8 de marzo, se señaló el reinicio de las labores jurisdiccionales, a cuya consecuencia se procedió al sorteo de la presente causa el 18 de mayo de 2010, por lo que la Sentencia Constitucional es pronunciada dentro de plazo.

II. CONCLUSIONES

De la atenta revisión y compulsa de los antecedentes que cursan en obrados se establece lo siguiente:

II.1.El 2 de agosto de 2002, Galindo S.A. interpuso juicio ordinario contra Ford Motor Company, sobre resarcimiento de daños y perjuicios radicado en el Juzgado Séptimo de Partido en lo Civil y Comercial del Distrito Judicial de Cochabamba a cargo del Juez recurrido (fs. 34 a 37 vta.).

II.2. En el memorial presentado el 24 de noviembre de 2003, la representante de Ford Motor Comapany interpuso excepción de arbitraje (fs. 38 a 40), la que fue desestimada por el Juez recurrido por Auto de 29 de agosto de 2004, con el fundamento que la nombrada Compañía terminó con la vigencia del contrato por decisión unilateral, por lo que resulta imposible llevar ese reclamo sobre los daños ocasionados a la vía arbitral ante un tribunal arbitral de Michigan Estados Unidos de Norte América, en observancia del art. 12.III de la Ley 1770 (fs. 41 y vta.).

II.3.Apelada la anterior determinación (fs. 45 a 47), la Sala Civil Segunda a cargo de las Vocales co-recurridas por Auto de Vista de 26 de mayo de 2006, anuló el Auto de concesión de alzada de 24 de mayo 2004, con el argumento de que el art. 12.III de la Ley 1770 señala que la desestimación de la excepción de arbitraje no admite recurso alguno, y en consecuencia, declaró ejecutoriada la Resolución de 29 de marzo de 2004 (fs. 48 y vta.), que fue notificada a la empresa representada por el recurrente el 9 de junio de 2006 (fs. 48 vta.).

III. FUNDAMENTOS JURÍDICOS DEL FALLO

El recurrente, ahora accionante denuncia la vulneración de los derechos de la empresa que representa, a la seguridad jurídica·y a la defensa, aduciendo que dentro del proceso ordinario que se sigue contra su representada, ésta interpuso excepción de arbitraje, que fue desestimada por el Juez recurrido, por lo que interpuso recurso de apelación, habiendo las vocales co-recurridas, dictado Auto de Vista por el que anularon el Auto de concesión de la alzada y declararon la ejecutoria de la Resolución que desestima la excepción planteada. Por consiguiente, en revisión de la Resolución de amparo constitucional, corresponde determinar si se debe otorgar o no la tutela solicitada.

III.1.Consideraciones previas. Aplicación de la Constitución Política del Estado y uso de terminología adecuada en la acción de amparo constitucional

De conformidad a lo establecido en el art. 410 de la Constitución Política del Estado vigente (CPE), al ser la Constitución la norma suprema del ordenamiento jurídico boliviano y gozar de primacía frente a cualquier otra disposición normativa, a objeto de cumplir el mandato y las funciones establecidas por los arts. 1 y 7 de la LTC, 4 de la Ley 003, Ley de Necesidad de Transición a los Nuevos Entes del Órgano Judicial y Ministerio Público, mediante la SC 0011/2010-R de 6 de abril, éste Tribunal determinó que toda su actuación será acorde al nuevo orden constitucional en observancia y coherencia con los Tratados y Convenios Internacionales en materia de Derechos Humanos ratificados por el país y que forman parte del bloque de constitucionalidad.

Asimismo, en el orden procesal en lo atinente a la terminología de esta acción tutelar, luego de un análisis normativo a través de la SC 0071/2010-R de 3 de mayo, se unificó criterios y se estableció que para referirse a la persona física o jurídica que interponga esta acción tutelar será 'accionante', y con relación a la autoridad, funcionario, o persona contra quien se dirige esta acción corresponderá el término 'demandado (a)'. De igual manera, en cuanto a la terminología con referencia a la parte dispositiva, en caso de otorgar la tutela se utilizará el término 'conceder' y en caso contraria 'denegar' la tutela.

En los casos en que no sea posible ingresar al análisis de fondo de la problemática planteada, se mantendrá la denegatoria, haciéndose constar tal situación, dado que el accionante puede nuevamente interponer la acción tutelar, siempre y cuando, cumpla con los requisitos de admisibilidad.

Resoluciones que en virtud a los arts. 4 y 44 de la LTC, son de carácter vinculante para todas las autoridades judiciales que actúen como tribunal de garantías constitucionales, como para este Tribunal. (SC 0119/2010-R de 10 de mayo).

III.2.Legitimación activa en la acción de amparo constitucional, en los casos de representación con mandato de personas jurídicas

III.2.1.Marco constitucional, legal y jurisprudencial

El art. 19.II de la CPEabrg, establecía que El recurso de amparo se interpondrá por la persona que se creyere agraviada o por otra a su nombre con poder suficiente... El art. 129.I de la CPE, establece que: la acción de amparo constitucional se interpondrá por la persona que se crea afectada, por otra a su nombre con poder suficiente Por su parte, el art. 97 de la LTC, señala los requisitos de forma y contenido a observar para la presentación del amparo constitucional, prescribiendo en su parágrafo I: Acreditar la personería del recurrente. Asimismo, el art. 98 de la citada Ley prevé: El Tribunal o Juez competente en el plazo de veinticuatro horas admitirá el recurso de amparo constitucional que cumpla con los requisitos de forma y contenido exigidos por el artículo precedente; caso contrario será rechazado. Los

defectos formales podrá subsanar el recurrente en el plazo de cuarenta y ocho horas de su notificación sin ulterior recurso.

Al respecto la jurisprudencia constitucional estableció que: los requisitos formales son los previstos en los parágrafos I, II y V del art. 97 de la LTC, los que podrán ser subsanados por el recurrente en el plazo mencionado (SC 0245/2004-R de 20 de febrero, entre otras); empero, en los casos en que se omita observar el incumplimiento de un requisito de forma y pese a ello se admita el recurso, este defecto dará lugar a que se declare su improcedencia. Así, las SSCC 0038/2005-R; 1730/2004 y 1144/2003-R.

La observancia del cumplimiento de los requisitos tanto de forma como de contenido para la admisión del recurso, ahora acción de amparo constitucional, se sustentan en que de su cumplimiento depende que tanto el juez o tribunal de amparo así como el Tribunal Constitucional, puedan compulsar sobre la base de criterios objetivos, la legitimación de las partes, así como la veracidad de los hechos reclamados y los derechos lesionados, para en definitiva otorgar o negar el amparo expresamente solicitado; a su vez tiende a garantizar también que con tales precisiones puedan estar a derecho las partes para asumir defensa en debida forma (SC 0365/2005-R de 13 de abril).

Ahora bien, sobre el requisito de forma relacionado con la personería del recurrente, hoy accionante, conforme a los preceptos constitucionales y legales anteriormente citados, éste puede actuar por sí o mediante representación a través de poder suficiente, lo que resulta usual tratándose de personas jurídicas o colectivas. Sobre el particular, la jurisprudencia del Tribunal Constitucional se ha pronunciado en reiteradas oportunidades haciendo hincapié en los requisitos que se deben cumplir a los efectos de que el poder notarial que se acompaña al recurso sea considerado suficiente a los efectos de la admisión a trámite de un amparo constitucional promovido por personas jurídicas. Así, este Tribunal en la SC 0171/2005-R de 28 de febrero, ha señalado:

...la SC 0022/2003-R, de 8 de enero, ha dejado sentado lo siguiente: 'En el caso de las personas jurídicas, como es la sociedad agrícola ganadera () el recurrente, que es quien demanda en su representación, debió acreditar su condición de legítimo representante adjuntando el poder correspondiente, en el que debía constar inexcusablemente el acta de constitución de la sociedad, la nómina de socios, su inscripción al registro de Comercio, su personería jurídica y sus Reglamentos.()'. Por su parte, en la SC 1823/2003-R, de 5 de diciembre que compulsaba una problemática relacionada con un recurso de amparo presentado a nombre de una empresa argentina, se señaló: '() el Poder Especial presentado por el recurrente y que cursa de fs. 1 a 3, acredita que () en su condición de representante legal de la () le faculta a interponer el presente amparo constitucional; sin embargo, en el mismo documento no consta la escritura de constitución de la referida sociedad comercial, sus estatutos, la resolución que le confiere personalidad jurídica, su inscripción al registro correspondiente más aún tratándose de una entidad constituida en el extranjero, en el referido Poder tampoco consta que se encuentra legalmente establecida en Bolivia. Consiguientemente, se determina que el recurrente carece de legitimación activa para interponer el recurso al no haber acreditado debidamente su personería, omisión que determina la improcedencia del recurso e impide conocer el fondo de asunto y que debió ser observada por el Tribunal de amparo a tiempo de considerar la presentación del recurso, en estricto cumplimiento de lo dispuesto por el art. 19.II CPE y 97.I LTC.' Este mismo criterio fue asumido en la SC 0994/2004-R, de 29 de junio, relacionada con un poder otorgado en la República de México.

La misma Sentencia resolviendo el caso concreto, mismo que contiene situaciones fácticas similares al asunto que ahora se analiza en relación al poder presentando en el recurso que le toco resolver, hizo énfasis en lo siguiente: Dicha línea jurisprudencial corresponde ser

aplicada a la problemática que se analiza, en vista de que el Poder otorgado por Diego Canelos Velasco, en representación de Seatech International Inc. a favor del recurrente, ante Notaría de la ciudad de Cartagena de Indias-Colombia, protocolizado por orden judicial en la Notaría de Fe Pública 054 de La Paz-Bolivia, no cumple los requisitos precedentemente señalados, puesto que no consta en el mismo el acta de constitución de la indicada sociedad comercial, la acreditación de su personalidad jurídica, estatuto, reglamento, nómina de sus socios y menos que se encuentra legalmente establecida en Bolivia, exigencias que deben cumplirse a los efectos de establecer con certeza la existencia legal de la persona jurídica que demanda, presupuesto indispensable -tratándose de este tipo de personas- para que ella pueda ser considerada titular de derechos e invocar la vulneración a los mismos, siendo además que de acuerdo a lo referido por el propio actor, se trata de una sociedad constituida y con domicilio legal en el extranjero, que no ejerce actos de comercio en Bolivia, no habiéndose demostrado por tanto el reconocimiento de su capacidad jurídica por parte del Estado Boliviano, por lo que no se encuentra legitimada activamente para interponer el presente recurso, condición que es esencial para la admisión del amparo. Consecuentemente, no habiendo el actor acreditado debidamente su personería, el recurso debe ser declarado improcedente, no pudiéndose ingresar al análisis de fondo del asunto, aspecto que el Tribunal de amparo debió tomar en cuenta a tiempo de admitir la demanda, en observancia de lo establecido por los arts. 19.II de la CPE y 97.I de la LTC

Consecuentemente, la noción sobre lo que debe entenderse por poder suficiente al que hacen referencia los arts. 19.II de la CPEabrg y 129.I de la CPE, conforme a la jurisprudencia precedentemente glosada, pasa por la observancia de requisitos imprescindibles que debe contener el poder para demostrar la representación de una persona física que pretenda actuar a nombre de una persona jurídica, como son el acta de constitución de la sociedad, la acreditación de su personalidad jurídica, la nómina de socios, su inscripción en el Registro correspondiente, Estatutos y Reglamentos; jurisprudencia que por lo demás ha sido reiterada en varios fallos, entre los que podemos citar las SSCC 0858/2005-R, 1121/2006-R, 0773/2007-R y más recientemente la SC 0137/2010-R de 17 de mayo, jurisprudencia que tiene carácter vinculante a tenor de lo establecido por el art. 44.I de la LTC, por lo que resulta obligatoria no sólo para los organos del Estado, legisladores y autoridades, sino también para este Tribunal.

III.2.2 Análisis del caso concreto

La jurisprudencia precedentemente glosada es de aplicación al caso que se revisa, por cuanto de la revisión del poder de representación acompañado por el recurrente, ahora accionante (fs. 17 a 25, y su original de fs. 93 a 101) se evidencia que si bien Ford Motor Company le faculta a actuar en defensa de la empresa dentro del proceso civil que ha motivado el entonces recurso, hoy acción, pudiendo al efecto interponer recursos ordinarios y extraordinarios incluyendo los recursos constitucionales establecido en la Ley del Tribunal Constitucional (sic); no cursa en dicho instrumento mínimamente la transcripción de los documentos relativos a la constitución de la compañía, la acreditación de su personalidad jurídica, documentos relativos a la legal conformación de su directorio, miembros que la integran, elección de su representante legal, normas que autoricen delegar facultades, etc; por el contrario, se establece más bien la otorgación de facultades por una Secretaria Suplente y que otro Secretario también suplente, certifica que la primera es precisamente Secretaria Suplente y que a ella le delegaron facultades a su vez delegadas por el Presidente del Directorio, por lo que el aludido poder no puede ser considerado suficiente, habiéndose inobservando en consecuencia un requisito formal, en tal virtud el Tribunal de amparo debió rechazar el recurso, pero dado que fue admitido hasta dictarse la Resolución que se revisa, corresponde denegar la tutela solicitada sin ingresar al análisis de fondo de la problemática planteada.

### III.3. El principio de subsidiariedad y de inmediatez en la interposición de la acción de amparo constitucional

El recurso de amparo constitucional, actualmente acción de amparo constitucional, instituido por el art. 128 de la CPE,  contra los actos u omisiones ilegales o indebidos de los servidores públicos, o de persona individual o colectiva, que restrinjan, supriman, o amenacen restringir o suprimir los derechos reconocidos por la Constitución y la ley; constituye un medio de tutela de carácter extraordinario, que está regido por los principios de subsidiariedad e inmediatez en la interposición de la tutela.

### III.3.1. En cuanto a la idoneidad de los medios y recursos tendientes a reparar el daño o lesión de derechos

En cuanto al agotamiento de los medios o recursos legales sean en la vía judicial o administrativa antes de interponer la acción de amparo constitucional, la jurisprudencia constitucional ha establecido que los mismos deben ser los idóneos y efectivos; vale decir, aquellos que se encuentran establecidos por ley para cada situación o caso en particular, no siendo coherente acudir a un medio o recurso legal que se sabe de antemano resultará inviable, pues especialmente tratándose de decisiones judiciales, los procedimientos que rigen las diferentes materias establecen con precisión los recursos que corresponden a determinada resolución judicial, por lo que el titular del derecho no puede extraviarse acudiendo o utilizando medios o recursos que no son aptos para enervar el acto que estima lesivo, sino que más bien debe buscar una protección inmediata por vía del amparo una vez agotados los medios adecuados en la vía ordinaria.

Al respecto, la SC 0770/2003-R, señaló que: el principio de subsidiariedad no implica la utilización de cualquier medio o recurso sino los idóneos, empero la utilización de otros que no sean los adecuados para hacer cesar el acto ilegal u omisión indebida que se reclama no neutraliza la protección de amparo, siempre que se hubiesen utilizado los requeridos por ley, lo que no sucede cuando ocurre lo contrario, pues la falta de utilización de los medios idóneos anula toda posibilidad de ingresar al fondo de la problemática sino también de otorgar la tutela.

### III.3.2 En cuanto al plazo de los seis meses o inmediatez en la solicitud de tutela

El principio de inmediatez, entendido no sólo como la tutela inmediata, sino también como el requisito de solicitar la misma en forma pronta, oportuna y sin dilaciones innecesarias, es decir, una vez que se opere la vulneración del derecho y se agoten las vías legales ordinarias; en otras palabras, es el plazo para la interposición de esta acción tutelar, que actualmente se encuentra previsto en el art. 129.II de la CPE, que señala: La Acción de Amparo Constitucional podrá interponerse en el plazo máximo de seis meses, computable a partir de la comisión de la vulneración alegada o de notificada la última decisión administrativa o judicial.

Este plazo de caducidad, encuentra sentido cuando se tiene en cuenta que la jurisdicción constitucional no puede aguardar de manera indefinida a que el titular del derecho solicite su protección, pues en su propio interés debe ser diligente en cuanto al respeto y vigencia de sus derechos que sufren menoscabo, por ello tiene el derecho y el deber de acudir sin ningún tipo de espera o dilación en busca de la protección requerida. Al respecto, la ya citada SC 0770/2003-R, señaló que: ...resulta lógico, puesto que responde no sólo al principio de inmediatez sino también a los principios de preclusión y celeridad, los mismos que no sólo dependen de los actos de la autoridad sino también del peticionante, quien debe estar compelido por su propio interés a realizar el seguimiento que corresponda a su solicitud, de modo que cuando no ha sido diligente en propia causa no se puede pretender que esta

jurisdicción esté supeditada en forma indefinida para otorgarle protección.

III.3.3 En cuanto al momento o inicio de dicho cómputo

Como señala la norma constitucional citada, art. 129.II de la CPE, es a partir de la comisión de la vulneración alegada o de notificada la última decisión administrativa o judicial, que se considera lesiva y que es inimpugnable, y por tanto agota la vía respectiva; o desde la notificación con la resolución emergente de un recurso o medio impugnativo que el agraviado y accionante hubiese utilizado para la protección de sus derechos lesionados. No obstante en un plano de equilibrio y coherencia con el principio de subsidiariedad, para dicho cómputo debe tenerse en cuenta que ese acto o medio impugnativo utilizado en la vía reparadora, y previa a la acción de amparo, debe ser idóneo, es decir, previsto por ley, y que tenga la posibilidad de cambiar el fondo de lo que se acusa de ilegal o lesivo de derechos; estando exento de dicho cómputo aquellos medios y recursos no previstos por ley o presentados erróneamente, toda vez que la finalidad de esta acción tutelar no es reparar errores del agraviado o accionante, sino, derechos fundamentales.

En ese sentido, este Tribunal ya generó un razonamiento, como el caso de la SC 0079/2007-R de 23 de febrero, que al respecto estableció que: cuando se reclama ante instancias no competentes o por medios no idóneos, éstos no pueden interrumpir el plazo de seis meses de caducidad del recurso de amparo, ya que al no ser mecanismos legales, no pueden generar una consecuencia jurídica habilitante para impedir la prescripción del derecho a acceder a dicho recurso; en tal sentido, sólo las vías legales e idóneas interrumpen el plazo de seis meses determinado como máximo para acceder al recurso de amparo constitucional, criterio seguido en las SSCC 0252/2007-R, 0646/2007-R y 0687/2007-R.

A mayor abundamiento, cabe señalar que cuando se impugnan resoluciones judiciales o administrativas a través de esta acción tutelar, a partir del entendimiento sentado en las SC 521/2010-R, de 5 de julio, si la resolución ha sido aclarada, enmendada o complementada, sólo en ese caso el plazo se computa desde la notificación de la resolución que dio lugar a dicha solicitud.

A mayor abundamiento cabe señalar que cuando se impugnan resoluciones judiciales o administrativas a travez de esta acción tutelar a partir del entendimiento sentado en la SC 0512/2010-R de 5 de julio, si la Resolución ha sido aclarada, emanada o complementada, solo en ese caso se computa desde la notificación que dio lugar a dicha solicitud.

III.3.4 Análisis del caso
El fondo de la problemática denunciada por el accionante es que la empresa que indica representar, dentro de un proceso ordinario que se sigue en su contra en la justicia ordinaria civil, interpuso excepción de arbitraje, que fue desestimada por el Juez demandado, resolución confirmada por el Tribunal de apelación, motivo por el cual interpone la acción de amparo constitucional que hoy se revisa.

No obstante, de la revisión de los datos del expediente se constata que la resolución que rechazó la excepción de arbitraje pronunciada por Basilio Cruz Chilo, Juez Séptimo de Partido en lo Civil Comercial del Distrito Judicial de Comercial del Distrito Judicial de Cochabamba, es de 29 de marzo de 2004; al respecto es preciso señalar que el art. 12 de la Ley de Arbitraje y Conciliación (LAC), regula lo relacionado a la Excepción de arbitraje, y establece que:

I. El convenio arbitral importa la renuncia de las partes a iniciar proceso judicial sobre las materias o controversias sometidas al arbitraje. II. La autoridad judicial que tome conocimiento de una controversia sujeta a convenio arbitral debe inhibirse de conocer el caso

cuando lo solicite la parte judicialmente demandada. En este caso, dicha parte puede oponer excepción de arbitraje en forma documentada y antes de la contestación. La excepción será resuelta sin mayor trámite, mediante resolución expresa. III.Constatada la existencia del convenio arbitral y sin lugar a recurso alguno, la autoridad judicial competente declarará probada la excepción de arbitraje o, pronunciándose únicamente sobre la nulidad o ejecución imposible del convenio arbitral desestimará la excepción de arbitraje. IV.No obstante haberse entablado acción judicial, se podrá iniciar o proseguir las actuaciones arbitrales y dictar laudo mientras la excepción esté en trámite ante el juez.

Precisamente, por ello es que Virginia Rocabado Ayaviri, María del Carmen Ponce de Rocha, Vocales de la Sala Civil Segunda de la Corte Superior del mismo Distrito Judicial, mediante Auto de Vista de 26 de mayo de 2006, anularon la concesión de apelación por el Juez de instancia, en base a la citada previsión legal del art. 12.III de la (LAC), por cuanto su desestimación no admite recurso alguno; citando para ello, inclusive el Auto Supremo 78 de 11 de abril de 2005, que señala: cuando la autoridad judicial constata la existencia de convenio arbitral, debe declarar probada la excepción de arbitraje mediante resolución expresa que no admite recurso alguno, conforme al art. 12.III de la citada ley especial que es de aplicación preferente por mandato del art. 5 de la Ley de Organización Judicial. Que, por las razones expuestas en el caso presente, no correspondían interponerse y menos concederse los recurso tanto de apelación como de casación (fs. 16). Extremo que el propio accionante lo reconoce en su memorial de demanda al señalar que: Indudablemente, no corresponde el recurso de apelación por disposición del citado párrafo II del art. 12 de la Ley 1770 (sic) (fs. 28 vta.).

En consecuencia, sin necesidad de mayor argumentación, al estar demostrada y aceptada la inidoneidad de la apelación y por ende el Auto de Vista de 26 de mayo de 2006, su notificación no puede ser considerada para el inicio de cómputo de plazo de los seis meses, sino desde la notificación con la Resolución de 29 de marzo de 2004, que fue en el mes de abril del mismo año, y que si bien en el expediente no cursa la diligencia de dicha notificación, al cursar de fs. 9 a 11, la inidónea apelación de presentada el 12 de abril de 2004, queda por demás evidente que esta acción de amparo ha sido presentada extemporáneamente, el 9 de diciembre de 2006, tal cual consta de fs. 27 a 31. Extremo que ratifica la denegatoria de la tutela solicitada con la aclaración que no se ha ingresado al análisis de fondo de la problemática denunciada.

En consecuencia, la situación planteada no se encuentra dentro de los alcances y previsiones del amparo constitucional, por lo que el Tribunal de garantías al haber declarado improcedente al entonces recurso, ha efectuado una adecuada compulsa de los antecedentes procesales y ha dado correcta aplicación a esta acción tutelar.

POR TANTO

El Tribunal Constitucional, en virtud de la jurisdicción y competencia que le confieren los arts. 4 y 6 de la Ley 003 de 13 de diciembre de 2010, denominada Ley de Necesidad de Transición a los Nuevos Entes del Órgano Judicial y Ministerio Público; 7 inc. 8 y 102.V de la LTC, en revisión resuelve APROBAR la Resolución de 2 de febrero de 2007, cursante de fs. 89 a 90 vta., pronunciada por la Sala Penal Tercera de la Corte Superior del Distrito Judicial Cochabamba; y en consecuencia, sin ingresar al análisis de fondo de la problemática planteada, DENIEGA la tutela solicitada.

Regístrese, notifíquese y publíquese en la Gaceta Constitucional.

No interviene el Decano, Dr. Abigael Burgoa Ordóñez por excusa declarada legal.

Fdo. Dr. Juan Lanchipa Ponce
PRESIDENTE

Fdo. Dr. Ernesto Félix Mur
MAGISTRADO

Fdo. Dra. Ligia Mónica Velásquez Castaños
MAGISTRADA

Fdo. Dr. Marco Antonio Baldivieso Jinés
MAGISTRADO



**TRANSLATING SERVICES INC.**

715 S.W. 73RD AVENUE
MIAMI, FLORIDA 33144
TEL 305 373•7874 FAX 381•7874
TOLL FREE: 1 (888) 304•7874
E-MAIL: info@pretran.com

**Certificate of Accuracy**



State of Florida)
County of Miami-Dade)

**Vicente de la Vega**, certified by the Administrative Office of the United States Court and by the Court Interpreters Certification Board of the State of Florida, swears, deposes and states that the attached translation has been performed by a translator fully qualified to translate in the **SPANISH** and **ENGLISH** languages, as engaged to this effect by and on behalf of Precision Translating Services, Inc.

Sworn to and subscribed before me this Tuesday, October 22, 2013 by **Vicente de la Vega**, who is personally known to me.

_____
        **Vicente de la Vega**

My commission expires:

ALICIA A. MUINA
MY COMMISSION # EE 056220
EXPIRES: May 18, 2015
Bonded Thru Notary Public Underwriters

_____
Notary Public State of Florida at Large

**The utmost care has been taken to ensure the accuracy of all translations. Precision Translating Services, Inc. and its employees shall not be liable for any damages due to its own negligence or errors in typing or translation, nor shall it be liable for the negligence of third parties.**