UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:13-cv-23285-DPG

AUTOMOTORES GALINDO, S.A.,

      Plaintiff,

v.

FORD MOTOR COMPANY,

      Defendant.

_____/

## DEFENDANT FORD MOTOR COMPANY'S MOTION
## FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7.1 and 56.1, Defendant, Ford Motor Company ("Ford"), submits this motion for summary judgment and incorporated memorandum of law.

## INTRODUCTION

      This recognition action involves a Bolivian judgment obtained by Plaintiff in violation of an express contractual provision mandating that all disputes between the parties be arbitrated exclusively before the American Arbitration Association in Michigan, under Michigan law. Despite Ford's repeated attempts to enforce the agreement, Bolivian courts over a period of seven years disregarded the parties' forum-selection clause and permitted a local plaintiff to proceed in a forum from which he was contractually barred.

      Ford has asserted two objections to the recognition of the Bolivian judgment pursuant to Florida's Uniform Out-of-Country Foreign Money Judgment Recognition Act ("Florida Recognition Act" or "Uniform Act") – (1) under section 55.605(2)(e), because the maintenance of the Bolivian action "was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court;" and (2) under section 55.605(1)(c), for lack of subject matter jurisdiction in the Bolivian court. [DE 5]. This motion is based only on the first ground.

      As demonstrated below, there are no genuine issues of material fact and Ford is entitled to judgment as a matter of law. Plaintiff's arguments in support of recognition are legally unsound and immaterial.

## STATEMENT OF FACTS

Ford incorporates here by reference the statement of undisputed material facts ("Rule 56.1 Stat.") that it contemporaneously filed under Local Rule 56.1.[1]

## ARGUMENT

### A.      Summary Judgment Standard

Ford recognizes that the Court is well aware of the applicable summary judgment standard.  *See, e.g.*, *United States v. Deverson*, No. 14-61523-Civ, 2014 WL 5463894, at *1 (S.D. Fla. Oct. 27, 2014). This standard is amply met here, as the purported issues raised by Plaintiff in its Response to Ford's Objections to Recognition ("Response") [DE 32] are neither genuine nor material.  They are at best peripheral to the very limited issue in this recognition proceeding.

### B.      Standard for Recognition of Foreign Judgments

"The recognition of foreign judgments in Florida is governed by the Florida Recognition Act, Fla. Stat. §§ 55.601-55.607, a variant of the Uniform Money-Judgments Recognition Act, which Florida adopted in 1994."  *Osorio v. Dole Food Co.*, 665 F. Supp. 2d 1307, 1322 (S.D. Fla. 2009), *aff'd sub nom.*, 635 F.3d 1277 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 1045 (2012); *see also Nadd v. Le Credit Lyonnais, S.A.*, 804 So. 2d 1226, 1228 (Fla. 2001).  "[E]ven though the Florida Recognition Act presumes that foreign judgments are *prima facie* enforceable, the Act is clearly also designed to preclude Florida courts from recognizing foreign judgments in certain prescribed cases where the legislature has determined that enforcement would be unjust or inequitable to domestic defendants."  *Osorio*, 665 F. Supp. 2d at 1323.  To that end, section 55.605 "provides three mandatory and eight discretionary grounds on which a foreign judgment is not entitled to recognition."  *Osorio II*, 635 F.3d at 1278.  The party seeking enforcement has the initial burden of proof that the judgment is final, conclusive, and enforceable where rendered – in this case, Bolivia.  Once met, the burden shifts to defendants to establish one or more grounds for non-recognition under section 55.605.  *See Kramer v. von. Mitschke-Collande*, 5 So. 3d 689, 690 (Fla. 2d DCA 2008); *Israel v. Flick Mortgage Investors, Inc.*, 23 So. 3d 1196, 1197-98 (Fla. 3d DCA 2008).

---

[1] This memorandum of law contains the same terms that are capitalized and defined in the Rule 56.1 Statement.

Ford's objection to recognition is based on two of the grounds enumerated in the Uniform Act – one "mandatory" and one "discretionary."   [DE 5; DE 6].  The mandatory ground is set forth in section 55.605(1)(c), and provides that a "foreign judgment is not conclusive if … [t]he foreign court did not have jurisdiction over the subject matter."  The discretionary ground – and one on which this motion is based – is contained in section 55.605(2)(e), and provides that "a foreign judgment need not be recognized if … [t]he proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court."  Both of these grounds for non-recognition are predicated on the undisputable fact that the Bolivian action was commenced and maintained in direct violation of the forum-selection provision in the Global Importer Dealer Sales and Service Agreement ("GIDS Agreement").

### C.   Courts Are Uniform in Denying Recognition Where the Foreign Judgment Is Obtained in Violation of the Parties' Choice-of-Forum Agreement

Courts across the country that have addressed this issue under the Uniform Act, including this Court, agree that a failure by the foreign court to honor the parties' forum-selection agreement results in automatic non-recognition of the foreign judgment.

*Nicor International Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357 (S.D. Fla. 2003), *reconsideration denied*, 318 F. Supp. 2d 1160 (S.D. Fla. 2004), is particularly instructive.  As in this case, *Nicor* involved an exclusive arbitration clause in the parties' agreement.  The plaintiff commenced a legal action in the Dominican Republic, claiming that the defendant had waived his contractual right to arbitration.  A Dominican appellate court agreed and the case proceeded to a "sentence" of liability against the defendant.  *See* 292 F. Supp. 2d at 1361-63.  Among the issues considered by Judge Marra of this Court was whether the Dominican proceeding was contrary to the parties' agreement, and, if so, whether the Dominican "sentence" ought not to be recognized under the Florida Recognition Act.  After disposing of the issue of the "waiver," the *Nicor* court stated:

> Based upon the foregoing, the Court finds that El Paso/Coastal has met its burden of proving that the proceeding in the Dominican courts was contrary to the binding Arbitration Provision in the parties' PSA, which, as determined by the Sole Arbitrator in the arbitration proceeding, was not waived.[2]  Pursuant to the

---

[2]  *Nicor* also involved a parallel arbitration proceeding commenced by the defendant while the Dominican action was pending.

> Uniform Act, therefore, the "judgment" issued by the Dominical court need not be
> recognized by this Court.

*Id.* at 1371.  This Court therefore granted summary judgment in favor of the defendant.

 *Montebueno Marketing, Inc. v. Del Monte Foods Corp*., No. CV 11-4977 MEJ, 2012 WL
986607 (N.D. Cal. Mar. 22, 2012), *aff'd*, 750 Fed. App'x 675 (9th Cir. 2014), dealt with a
Philippine judgment issued in contravention of the parties' agreement to arbitrate their disputes.
The court, relying on California's version of the Uniform Act, refused recognition.  The
*Montebueno* court stated:

> This part of the [California] UFMJRA provides that the Court may refuse to
> recognize a foreign money judgment if "[t]he proceeding in the foreign court was
> contrary to an agreement between the parties under which the dispute in question
> was to be determined otherwise than by proceedings in that foreign court." Cal.
> Code of Civ. Pro. § 1716(c)(5). That is exactly the case here. As Judge Jenkins
> ruled in 1999, the parties' original contract contained a valid and enforceable
> arbitration clause that required Montebueno and Del Monte to arbitrate their
> dispute in San Francisco.  The proceedings in the Philippines were therefore
> contrary to an agreement between the parties to arbitrate here, and, under Section
> 1716(c)(5), the Court may exercise its discretion and refuse to recognize the
> foreign judgment.

*Id.* at *1 (footnote omitted).  The court thus refused to recognize the Philippine judgment.

 *Tyco Valves & Controls Distribution GMBH v. Tippins, Inc*., No. CIV A 04-1626, 2006
WL 2924814 (W.D. Pa. Oct. 10, 2006), was decided under Pennsylvania's version of the
Uniform Act, which contains a provision identical to section 55.605(2)(e).  *Tyco* dealt with the
question of whether a judgment issued by a German court should be recognized given the
parties' agreement to arbitrate their disputes.  The court answered in the negative, stating:

> Because the German proceeding was contrary to the parties' agreement to
> arbitrate, we decline to enforce it here.  Pursuant to the Pennsylvania UFJRA, we
> need not recognize a foreign judgment if "the proceeding in the foreign court was
> contrary to an agreement between the parties under which the dispute was to be
> settled otherwise than by proceedings in that court."  42 P.S. §§ 22005(5).  As
> such, defendant's motion for summary judgment is granted, and plaintiff's
> complaint seeking enforcement of the German judgment is hereby dismissed.

*Id*. at *7.

 *Diamond Offshore (Bermuda), Ltd. v. Haaksman*, 355 S.W.3d 842 (Tex. App. 2011), was
decided under Texas' version of the Uniform Act, which contains a provision identical to section
55.605(2)(e).  In *Diamond*, the parties' agreement contained an exclusive forum-selection clause

requiring all disputes to be resolved before the courts of Bermuda.  The plaintiffs commenced litigation in the Netherlands instead, obtaining judgments there, which they sought to have recognized by a Texas court.   The issue before the court was thus the same as in *Nicor*, except that the relevant forum-selection clause did not provide for arbitration; instead, it required litigation in a different jurisdiction.  In reversing the lower court's recognition of the Dutch judgments, the appellate court held the forum-selection clause encompassed the claims brought in the Netherlands and, for that reason, the Dutch judgments were not recognized.  *Id.* at 849; *see also Courage Co., LLC v. Chemshare Corp.*, 93 S.W.3d 323, 330-39 (Tex. App. 2002) (refusing recognition of a Japanese court's judgment where the parties had agreed to arbitrate their disputes).

The above authorities demonstrate that U.S. courts deny recognition of foreign judgments when they are rendered contrary to the parties' forum-selection agreements.  Indeed, through its research, Ford has been unable to find a single case in which the court recognized a foreign judgment issued in disregard of the parties' choice of forum.

The underpinning of these decisions is the long-standing policy of federal courts favoring arbitration and honoring the parties' contractual commitments to submit their disputes to arbitration.  *See, e.g.*, *Seaboard Coast Line R.R. Co. v. Trailer Train Co*., 690 F.2d 1343, 1348 (11th Cir. 1982) ("federal policy favor[s] arbitration … [and] requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration"); *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002) ("the Supreme Court has commanded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" (quotations marks and citations omitted)).   State courts hold likewise.  Michigan law – which governs the GIDS Agreement and the interpretation of the forum-selection clause's meaning[3] – maintains a particularly strong policy favoring arbitration.  *See Rembert v. Ryan's Family Steak Houses, Inc*., 596 N.W.2d 208, 212 (Mich. Ct. App. 1999) ("Our Legislature has expressed a strong public policy favoring private voluntary arbitration, and our courts have historically enforced agreements to arbitrate disputes.").

---

[3] *See, e.g.*, *Lanier v. Syncreon Holdings, Ltd*., No. 11-14780, 2012 WL 3475680, at *6 (E.D. Mich. Aug. 14, 2012) (the meaning of a forum-selection clause is a "substantive matter," governed by "the law of the contract"); *Global Link, LLC v. Karamtech Co., Ltd*., No. 06-CV-14938, 2007 WL 1343684, at *2 (E.D. Mich. May 8, 2007).

Courts emphasize that arbitration-selection clauses are to be read and interpreted like all other contractual clauses. "[T]he question of whether a contract's arbitration clause requires arbitration of a given dispute remains a matter of contract interpretation." *Seaboard*, 690 F.2d at 1383. As such, it is governed by the intent of the parties. *Id*. "[T]he parties' intent regarding the finality of arbitration should be ascertained by the usual rules of interpretation and given effect." *Rembert*, 596 N.W.2d at 213. *See also P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) ("The validity [and scope] of a forum selection clause [are] determined under the usual rules governing the enforcement of contracts in general." (citations omitted)); *City of Ferndale v. Florence Cement Co.*, 712 N.W.2d 522, 526 (Mich. Ct. App. 2006) ("An agreement to arbitrate is a contract. The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." (citations omitted)).

**D**.     **The Bolivian Judgment Was Issued in Direct Violation of the Parties'**
          **Agreement to Arbitrate Their Disputes**

The only issue relevant to Ford's claim of non-recognition is whether, in the express language of section 55.605(2)(e), "the proceeding in [Bolivia] was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court." To break it down further, the relevant issues are: (a) whether the dispute that was the subject of the Bolivian litigation was governed by a written agreement between Galindo and Ford; and (b) whether that agreement contained a mandatory provision calling for resolution of all disputes in a forum other than the Bolivian courts. If both questions are answered in the affirmative, then Ford is entitled to judgment of non-recognition as a matter of law.

The following is undisputed: Plaintiff was Ford's authorized dealer in Bolivia, pursuant to the GIDS Agreement executed by the parties in April 1999. [Rule 56.1 Stat. ¶ 1]. The GIDS Agreement contains an exclusive arbitration clause requiring all disputes between Ford and Galindo to be submitted to arbitration before the American Arbitration Association, under UNCITRAL Arbitration Rules, to be conducted in Michigan under the substantive and procedural law of that state. [Rule 56.1 Stat. ¶¶ 7, 8]. Ford terminated the GIDS Agreement in February 2002. [Rule 56.1 Stat. ¶ 9]. Ignoring the mandatory forum-selection clause in the GIDS Agreement, Plaintiff commenced a legal action in Bolivia in August 2002. [Rule 56.1 Stat. ¶ 10]. Despite Ford's repeated objections to the Bolivian courts' jurisdiction to hear the

case (based on the exclusive arbitration clause), Bolivian courts refused to honor the GIDS Agreement's forum-selection clause and ultimately issued a judgment against Ford in the amount of $11,103,852.60. [Rule 56.1 Stat. ¶¶ 13-31].  Thus, the only factual issues that are relevant to this recognition proceeding are uncontested and Ford is entitled to judgment of non-recognition as a matter of law.

While it is unnecessary for this Court to go beyond the four corners of the GIDS Agreement and delve into the decisions of the Bolivian courts in order to deny recognition here, the erroneous reasoning of those decisions is instructive, as it amplifies the very reason behind the inclusion of the choice-of-forum exception in the Uniform Act:  to prevent situations in which a foreign company – having negotiated and agreed to a forum-selection provision in its agreement with a U.S company – elects to disregard that agreement and, as happens not infrequently, finds local courts willing to oblige.

To reiterate, the first instance judge ruled that because Ford had terminated the GIDS Agreement, the arbitration provision contained in it was likewise terminated and could not be enforced by Ford.  [Rule 56.1 Stat. ¶¶ 15-16].  The court reached this conclusion notwithstanding (a) that Bolivian law expressly provides that "*any arbitral agreement included in a main contract shall be considered as an independent agreement from the other provisions contained therein*;"[4] [Rule 56.1 Stat. ¶ 18] (b) that the arbitration clause expressly applied to the "termination" of the GIDS Agreement; [Rule 56.1 Stat. ¶ 7] and (c) that the GIDS Agreement was, by its terms, governed by Michigan, not Bolivian, law.  [Rule 56.1 Stat. ¶¶ 7-8].[5]

---

[4] All emphasis is supplied unless otherwise noted.

[5] For obvious reasons (and consistent with the Bolivian statute disregarded by the Bolivian court) under governing Michigan law, dispute-resolution provisions survive termination of the underlying contract.  *See PFS Invs., Inc. v. Imhoff*, No. 11-10142, 2011 WL 1135538, at *8 (E.D. Mich. Mar. 25, 2011) ("The Court … presumes that the arbitration clause survives the Agreement's termination[;]"  "We presume as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement." (quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204(1991)).  The same holds true in other states.  *See, e.g.*, *Marcotte v. Micros Sys. Inc.*, No. C 14-01372 LB, 2014 WL 4477349, at *9 (N.D. Cal. Sept. 11, 2014) ("Dispute resolution provisions presumptively survive termination of contract."); 13 CORBIN ON CONTRACTS, § 67.2 (rev. ed. 2003 & Supp. 2011).  If a dispute-resolution clause mandating the arbitration of disputes that arise out of the contract's "termination" does not survive such termination, the result would be an absurdity.  *Cf. Certified Restoration Dry Cleaning Network, LLC v. Tenke*

On Ford's first appeal, the court, after two years of deliberation, ruled, without addressing the merits of the case, that the decision of the court below was not appealable as a matter of law.  [Rule 56.1 Stat. ¶ 19].   On Ford's second appeal, the Bolivian Constitutional Court, again without addressing the merits of Ford's argument, rejected the appeal on the grounds that the government official who had legalized the documents that were filed by Ford was merely the official who is the "legal depository" of documents, and not "the officer in charge of the Registry of Commerce," and moreover, that Ford's legal counsel's power of attorney did not expressly authorize him to represent Ford in the Constitutional Appeal.  [Rule 56.1 Stat. ¶¶ 22].   On the final review by the Constitutional Tribunal, that court, yet again without dealing with the merits of Ford's argument, ruled that Ford had failed to submit proof of its legal existence, as well as documents demonstrating the constitution of its board, a list of its board members and proof of the "election of its legal representatives, and Ford's internal rules that authorize the designation of its legal representative."  [Rule 56.1 Stat. ¶ 27].  In sum, and at a minimum, these decisions demonstrate a willingness on the part of the Bolivian courts to accommodate a local plaintiff at the expense of the contractual rights of a foreign defendant.

**E.**     **Plaintiff's Recognition Arguments Are Untenable and Raise No Genuine Issue of Material Fact**

In its Response, Plaintiff makes several arguments in favor of recognition [DE 32].  These arguments: *first*, ignore the Uniform Act, the only statute that governs this recognition proceeding; *second*, are wrong on the law; and, *third*, raise issues that are neither genuine nor material.[6]

**1.**     **Plaintiff Misapplies the Principles of International Comity**

As stated in *Nicor*, 292 F. Supp. 2d at 1364, "[t]he Uniform Act replaces the common law principles for recognizing foreign judgments, but only to the extent of any differences between the Act and the common law."   As the court explained, the fundamental difference between common law comity and the Uniform Act is that a comity analysis consists of only three factors

---

*Corp.*, 511 F.3d 535, 545 (6th Cir. 2007) (under Michigan law, contracts must be construed consistent with common sense and in a manner that avoids absurd results).

[6] Ford does not address the arguments in Plaintiff's Response that go to the issue of the Bolivian court's subject matter jurisdiction.  While these arguments are equally unavailing to Plaintiff, they do not pertain to this motion, which is limited to Ford's objection based on the parties' choice of forum under section 55.605(2)(e).

– fraud, competence of foreign court and the forum's public policy – while the Uniform Act provides for eleven specific grounds for non-recognition, which are contained in sections 55.605(1) and 55.605(2). *See id.* at 1364-71. Thus, under the pre-Uniform Act common law, a failure of the foreign court to honor the parties' agreement to litigate or arbitrate in another forum did not strictly speaking fall within the comity elements (although, courts of course had the discretion to refuse to recognize it as inconsistent with the forum's "public policy"). However, under the Uniform Act, as adopted in Florida and most other states, the fact that the "proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court" *is* a basis for non-recognition of a money judgment. Fla. Stat. § 55.605(2)(e). Because Plaintiff's entire argument is predicated on ignoring the Uniform Act and focusing on inapplicable comity principles it fails at the outset.

To be sure, comity has not been rendered irrelevant by the Uniform Act's enactment. Comity still applies in a multitude of situations. For example, since the Uniform Act applies to foreign *money* judgments only, foreign *non-money* judgments, such as injunctions and declaratory judgments, are subject to the traditional comity analysis. Comity analysis also applies to the so-called abstention doctrine, which involves deference by U.S. courts to foreign courts' rulings on particular issues, such as often arise in the context of parallel proceedings. But when it comes to the issue of recognition of foreign money judgments, in all thirty-four states that have enacted the Uniform Act, the principles of comity are superseded by the statutory language.

Given that Plaintiff misses this basic dichotomy between comity and the Uniform Act, the cases it cites are utterly inapplicable.

*Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298 (11th Cir. 2008), dealt with the issue of abstention, not with recognition of a money judgment. The case involved parallel proceedings between the same parties in the courts of Florida and Belize. Both actions were for declaratory relief. When the Belize court ruled first on a particular issue, which was also in dispute before the Florida court, the latter was faced with the question of whether it should, as a matter of comity, abstain from making its own determination and instead defer to the Belize court's ruling. The Court of Appeals held that abstention was indeed appropriate, particularly given that the "case involves the interpretation of the articles of association of a Belizean

corporation pursuant to Belize law." *Id.* at 1307. *Belize Telecom* thus had nothing to do with the question of recognizing a foreign money judgment under the Uniform Act. This was a basic abstention case. Indeed, the fact that the Belize action was for declaratory relief and *not* money damages automatically took the matter outside the scope of the Uniform Act.

*Nahar v. Nahar*, 656 So. 2d 225 (Fla. 3d DCA 1995), involved a multi-jurisdictional estate dispute, with proceedings in Florida and the Netherlands. Among the issues presented to the Florida court was whether a "Dutch court's order which held that [the decedent] was a domiciliary of Aruba and that his estate was governed by Dutch law," should be afforded comity treatment. *Id.* at 229. The court held that comity should be afforded to the Dutch order. As was the case in *Belize Telecom*, *Nahar* had nothing to do with recognition of a foreign money judgment. The Dutch ruling concerning the decedent's domicile was declaratory, for which a comity analysis was fully warranted.

*Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249 (11th Cir. 2006), like the prior two cases, was not a proceeding to recognize a foreign money judgment. Rather, it involved an action for damages brought in a California bankruptcy court (transferred to the Middle District of Florida by the Multidistrict Litigation Panel), in which the issue was whether the district court should defer to a prior decision of a Korean bankruptcy court which had approved a sale of the assets and liabilities of the plaintiff's Korean parent. As the Court of Appeals put it: "The principle of international comity applied in this case is an abstention doctrine." *Id.* at 1256. Like *Belize Telecom*, *Daewoo Motor* was an abstention case to which a common law comity analysis applied.

Because the abstention doctrine is not remotely implicated in the instant case, Plaintiff's reliance on comity principles is misplaced. This action is governed solely by the Uniform Act.

### 2. Principles of Comity Do Not Apply to the Bolivian Rulings on the Validity of the Arbitration Clause

Relying once again on *Belize Telecom*, *Nahar* and *Daewoo Motor*, Plaintiff argues that the rulings of the several Bolivian courts concerning the parties' choice-of-forum agreement should be given deference under the principles of comity. [DE 32, pp. 10-13].

Apparently recognizing that common law comity does not govern proceedings to recognize foreign money judgments in Florida – or in any other state that has enacted the Uniform Act – Plaintiff offers a novel "solution." Plaintiff states: "The rulings of foreign courts

which are **not themselves money judgments** are entitled to deference in Florida under the doctrine of comity." [DE 32, p. 10]. That is, Plaintiff appears to say that although a foreign money judgment *itself* may not be recognizable under the Uniform Act, the various rulings of the foreign court that led to this otherwise non-recognizable judgment are entitled to comity-based deference. Applied here, this would mean that even while the Bolivian Judgment is not subject to recognition under section 55.605(2)(e) because the Bolivian proceeding "was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court," a ruling by the Bolivian court expressly rejecting that very agreement is entitled to comity. Thus, under Plaintiff's circular theory, a judgment not subject to recognition under section 55.605(2)(e) becomes recognizable under principles of comity.

There is not a single case supporting such a view. Indeed, every court that has dealt with this issue appears to have reached the opposite conclusion. For example, in *Nicor*, 292 F. Supp. 2d at 1362, a Dominican court had ruled that the parties' arbitration agreement was ineffective because the defendant had "renounced" arbitration. Judge Marra had no trouble concluding that the Dominican proceeding was contrary to the parties' agreement and refused to recognize the Dominican judgment under the Uniform Act. *Id*. at 1367. No comity to the Dominican court's ruling was extended. Likewise, in *Courage Co.*, 93 S.W.3d at 338, the Japanese court's ruling rejecting the defendant's jurisdictional defense was afforded no comity treatment, and the appellate court refused recognition of the Japanese judgment under the Uniform Act. *Osorio* also involved an adverse jurisdictional decision by a Nicaraguan court, which decision ultimately led to the money judgment. Judge Huck extended that jurisdictional ruling no comity and held the Nicaraguan judgment to be in violation of the Uniform Act. 665 F. Supp. 2d at 1318. The Eleventh Circuit affirmed. 635 F.3d 1277.

Taken to its logical conclusion, Plaintiff's argument would eviscerate the very purpose of section 55.605(2)(e). If comity is extended to the Bolivian court's ruling negating the parties' exclusive and mandatory forum-selection agreement – an agreement governed by Michigan law that Plaintiff does not dispute signing – section 55.605(2)(e) would have no meaning. It speaks volumes that Plaintiff cannot cite a single case in which a judgment rendered in violation of section 55.605(2)(e) (or its equivalents under the Uniform Act) has been recognized and enforced. Ford is likewise unaware of any such decision.

Because Plaintiff's comity argument is untenable, Plaintiff's discussion of the three comity factors is of no moment.  [DE 32, pp. 11-13].  Whether Ford has had "an opportunity to be heard," whether the Bolivian court had personal jurisdiction over Ford, and whether the public policy of Florida is affected are all proper elements in a comity analysis, but they have no bearing on the non-recognition of the judgment under section 55.605(2)(e).  And most certainly none of them raise genuine issues of material fact warranting a denial of summary judgment.

### 3.   Bolivian Rulings Rejecting the Parties' Agreement to Arbitrate Are Not Entitled to *Res Judicata* Treatment

Plaintiff claims that the Bolivian courts' rulings are *res judicata*.  [DE 32, pp. 13-15].  Plaintiff is equally incorrect on this point.

It is worth reiterating here what the Bolivian courts actually ruled.  The first instance court ruled that because Ford had terminated the GIDS Agreement, the choice-of-forum provision contained in it was likewise terminated and could not be enforced by Ford. [Rule 56.1 Stat. ¶¶ 15-16].  On Ford's first appeal, the court ruled that the decision of the court below was not appealable as a matter of law. [Rule 56.1 Stat. ¶ 19].  On Ford's second appeal, the Bolivian constitutional court ruled that the official who had legalized the documents filed by Ford's was not the officer in charge of the registry of commerce, and that Ford's counsel's power of attorney did not expressly authorize him to represent Ford. [Rule 56.1 Stat. ¶¶ 22-23]. On the final review, the constitutional tribunal court ruled that Ford had failed to submit proof of its legal existence and failed to provide a list of its board members, and proof of the "election of its legal representative."    [Rule 56.1 Stat. ¶¶ 26-27].   None of the courts addressed the merits of Galindo's claim against Ford.

In support of its *res judicata* argument, Plaintiff cites three decisions. In *Marolax Handles-Und Verwaltungsellschaft MbH v. 898 5th Ave. S. Corp.*, No. 2:06-cv-691-FtM-29SPC, 2008 WL 1776996 (M.D. Fla. Apr. 16, 2008), the defendant objected to the recognition of a German judgment on the grounds of lack of personal jurisdiction over him by the German court and also on fraud committed on the German court.  The magistrate's report and recommendation, which was adopted by the district judge, demonstrates that far from treating the German court's ruling concerning personal jurisdiction as *res judicata*, the magistrate conducted a hearing and made his own findings of fact.  As stated by the district court: "The Magistrate Judge found that 898 Fifth Avenue submitted itself to the jurisdiction of the German court by voluntarily

submitting to a German venue and German law." *Id*. at *3. Further, "[t]he Magistrate Judge *found* at least constructive knowledge of the proceedings based on service of Interbuilding, and *found* that Mr. Schache chose not to respond." *Id*. at *4. With respect to defendant's fraud argument, the magistrate did appear to defer, at least in part, to the German court's factual finding that no fraud on it was committed. The case has no application here because Ford is not objecting to the Bolivian judgment on the grounds of fraud or lack personal jurisdiction (both of which have their own separate and well-developed areas of law under the Uniform Act), but on the exclusive choice-of-forum provision, which involves only two issues: Did the parties have a valid forum-selection agreement and was the proceeding in Bolivia contrary to that agreement. *ICC Chemical Corp. v. TLC Indus. (Malaysia) SDN*, 206 F. App'x 68 (2d Cir. 2006), does deal with a choice-of-forum agreement. But the point of that case is that the agreement at issue *did not contain* an alternate forum provision on which the defendant could base his objection to recognition. In *ICC*, the seller initially proposed a purchase agreement that contained a New York arbitration clause. As the court stated: "Of import here, when [the buyer] returned the signed agreement, it altered the arbitration provision as to the choice of law and venue." *Id.* at 69. The signed agreement thus provided for litigation in Singapore. Ultimately, the seller failed to deliver and the buyer sued in Singapore. The Singapore court ruled that, as executed, the agreement *did not contain* an arbitration provision. The Second Circuit chose not to disturb this factual funding, noting that "the ICC does not dispute that the Singapore Court had subject matter jurisdiction to rule on the threshold question of whether ICC and TLC *actually agreed to arbitrate in New York*." *Id.* at 70.

ICC is fundamentally different from this case. *First*, and most important, unlike in *ICC*, it is uncontested here that the GIDS Agreement calls for exclusive arbitration in Michigan under Michigan law, and Plaintiff does not even suggest otherwise. *Second*, unlike the Singapore court in *ICC*, the Bolivian court did not make a factual finding that the GIDS Agreement, as executed, did not call for arbitration in Michigan. Rather, the Bolivian court ruled that the arbitration clause was void under Bolivian law, even thought the GIDS Agreement by its express terms was governed by Michigan law. Thus, unlike in *ICC*, there is no factual finding of the Bolivian court for this Court to defer to even if it were inclined to do so. *Third*, unlike in *ICC*, Ford most certainly did not consent to have the Bolivian court determine the validity and scope of the arbitration clause. That issue is governed solely by Michigan law, the law of the contract. *See,*

*e.g., Lanier v. Syncreon Holdings, Ltd.*, No. 11-14780, 2012 WL 3475680, at *6 (E.D. Mich. Aug. 14, 2012) (the meaning of a forum-selection clause is a "substantive matter," governed by "the law of the contract"); *Global Link, LLC v. Karamtech Co., Ltd.*, No. 06-CV-14938, 2007 WL 1343684, at *2 (E.D. Mich. May 8, 2007).

Finally, Plaintiff relies on *Israel v. Flick Mortgage Investors, Inc.*, 23 So. 3d 1196 Fla. 3d DCA 2008). At issue in that case was the recognition of an Israeli judgment. The judgment debtor argued that service of process on him in the Israeli action was improper. The court, after analyzing the relevant provisions of the Uniform Act, concluded that the judgment debtor did not interpose an objection to recognition that is appropriate under the Uniform Act. The court stated that "an attack on the manner of service of process is not expressly set forth as one of the ten grounds for nonrecognition or nonenforceability that may be asserted under the [Uniform] Act." *Id.* at 1198. The court then held that *even if* the objection to the service of process was proper under the Uniform Act, the judgment debtor had waived this objection by not raising it in the Israeli action. In this regard, the court stated the obvious point that "[g]rounds for nonrecognition [under the Uniform Act] may be waived if a party had the right to assert that ground as an objection of defense in the foreign country but failed to do so." *Id.* at 1199.

*Israel* is thus inapposite. Unlike in that case, here, Ford has asserted an objection that is "expressly set forth [in the Uniform Act] as one of the ten grounds for nonrecognition" – namely that "the proceeding in [Bolivia] was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than proceedings in that court." Fla. Stat. § 55.605(2)(e). Furthermore, it is indisputable that Ford had raised this objection before the Bolivian courts and thus had not "waived" it.

In sum, Plaintiff's *res judicata* argument is as unsupportable as its comity-based argument, and, as with the previous arguments, it raises no genuine issues of material fact warranting denial of summary judgment.

### 4. Ford is Not Collaterally Estopped From Asserting Its Rights Under Section 55.605(2)(e)

Plaintiff's collateral estoppel defense [DE 32, pp. 15-16] is a rehashing of its comity defense. Collateral estoppel is equally inapplicable to an action for recognition of a foreign money judgment under the Uniform Act. Plaintiff does not cite a single case in which a foreign money judgment debtor was deemed collaterally estopped from asserting its objections under the

Uniform Act.  The only case cited by Plaintiff that involved a decision of a foreign court is *King v. Cessna*, No. 03-20482-CIV, 2010 WL 5253526 (S.D. Fla. Sept. 13, 2010).  *King*, however, was not a foreign money judgment recognition action.  Rather, like *Belize Telecom* and *Daewoo Motor*, *King* was an abstention case.  The issue in *King* was whether in an action for damages brought in Florida the court should defer to prior rulings of an Italian court in an earlier action between the same parties for the same damages.  The *King* court correctly analyzed the deference question as one of comity, although it chose to couch its conclusion in the language of collateral estoppel.  But fundamentally, the case is indistinguishable from all other abstention cases to which comity analysis applies as a matter of course.  It has no bearing on this recognition action and raises no genuine issue of material fact.

### 5. Ford Has Not Waived Its Objection Under Section 55.605(2)(e)

Plaintiff's waiver argument [DE 32, pp. 16-18] rests on the proposition that, having been sued in Bolivia in violation of the choice-of-forum agreement, Ford had an obligation to commence arbitration in Michigan or risk waiving its right under section 55.605(2)(e).  Since Ford had no claims of its own to assert under the GIDS Agreement, Plaintiff contention, it would seem, is that it was incumbent on Ford to commence a *defensive* arbitration, seeking a declaration that it was not liable to Plaintiff.   There is no law that supports this.

It is not disputed that arbitration clauses, like all other contractual provisions, can be waived.  The cases cited by Plaintiff stand for the unremarkable proposition that when a party conducts itself in a manner inconsistent with its right to arbitrate, that right under certain circumstances may be deemed waived. These and other such decisions are predicated on the principle that when a party substantially participates in litigation to a point inconsistent with an intent to arbitrate and when such participation results in prejudice to the opposing party, the result will be a waiver of the contractual right to arbitrate.

In *Triplecheck, Inc. v. Creole Yacht Charters Ltd.*, No. 05-21182-CIV, 2006 WL 3507971 (S.D. Fla. Dec. 5, 2006), plaintiff brought an action, participated in it substantively, including conducting substantial discovery and filing a summary judgment motion.  Then, having never before invoked its right to arbitration and after indicating to the court that it was ready to proceed to trial, plaintiff changed its mind and sought to compel arbitration.  The court correctly concluded that plaintiff had waived its right to arbitrate.

In *Garcia v. Wachovia Corp.*, 699 F.3d 1273 (11th Cir. 2012), a class-action defendant, having litigated the case on the merits without invoking its right to arbitrate; having declined two invitations by the court to move to compel arbitration; and having filed dispositive motions without raising the arbitration issue, reversed course after a favorable Supreme Court decision and sought arbitration.  The court held that the arbitration right was waived.

In *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d 1356 (11th Cir. 1995), the court held that an insurer waived its contractual right to compel arbitration with the insured where it had been apprised that significant monetary claims were being pursued, and, in fact, had defended at least one of them, yet never made demand to arbitrate coverage.

As is evident, the common factor in these and most such cases is that a party does not raise the issue of arbitration for a long time while it litigates the merits of the case and then changes its mind.

The facts in this case are starkly different.  Ford's *only* participation in the Bolivian action was to repeatedly and vigorously assert its rights under the forum-selection clause. [Rule 56.1 Stat. ¶¶ 13-24].  Every one of Ford's submissions to the Bolivian courts before which this case was brought sought one type of relief only: recognition of Ford's contractual right not to be sued in any forum other than the one provided for in the GIDS Agreement. [Rule 56.1 Stat. ¶¶ 13, 14, 17, 18, 20, 21].  If ever a party acted consistently with its intent to have claims against it brought solely through arbitration, this is such a case.  The notion that in addition to repeatedly asserting its right not to be sued in Bolivia Ford was also required to commence a defensive arbitration for declaratory relief is wholly unsupportable.

Plaintiff's waiver argument also appears to be based on a letter from Ford to Galindo, dated February 4, 2002, shortly after Ford terminated the GIDS Agreement and seven months prior to the commencement of the Bolivian litigation.  [DE 32, p. 18; DE 32-2, p. 2].  The letter, portions of which are illegible, was a response by Ford to Galindo's complaint about the termination of the GIDS Agreement and its threat of litigation.  The relevant part to which Plaintiff cites reads as follow:  "[illegible] was exception to the comments you made to Mr. Wendell and again I am surprised at your [illegible] use Ford's funds to pay for your debts, this time through the threat of a lawsuit.  I assure you [illegible] Motor Company will vigorously defend our decision and positions in court."  [DE 32-2, p. 2].  This is the slenderest of reeds on

which to hang a waiver argument.  For one thing, Ford did precisely what it said it would do:  it defended itself in court by asserting its rights under the forum-selection clause of the GIDS Agreement.  For another, this does not by any stretch rise to the level of the type of substantial participation in litigation with the resulting prejudice to the other party that would warrant a finding of waiver.  This is so especially given Ford's immediate and consistent assertion of its rights under the forum-selection clause once the Bolivian action was commenced.

**6.     <u>Plaintiff's "Condition Precedent" Argument Is Baseless</u>**

The final argument Plaintiff makes in its Response is that because the parties had not engaged in pre-arbitration negotiations provided for in the forum-selection clause, Ford is barred from asserting the exception to recognition under section 55.605(2)(e).  [DE 32, pp. 18-19]. Plaintiff is incorrect.

Lacking any authority for its argument in the area of foreign-judgment recognition (there is none), Plaintiff cites two decisions that involved applications under the Federal Arbitration Act ("FAA"): (1) *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287 (11th Cir. 2002), to stay litigation pending arbitration; and (2) *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41 (1st Cir. 2003), to compel arbitration.  In both cases, courts held that pre-arbitration mediation was a condition precedent to arbitration and, having not been conducted, arbitration cannot be compelled or litigation stayed under the relevant provisions of the FAA.

*First*, this recognition proceeding is not being brought under the FAA, which has its own specific standards, but under the Uniform Act.  Ford is not seeking to compel arbitration. Indeed, Ford has nothing to arbitrate, as it has no claims against Galindo to assert.  It is Galindo who is asserting claims against Ford.  Nor is Ford seeking to stay litigation in favor of arbitration.

*Second*, Plaintiff is misreading section 55.605(2)(e).  That statute provides for non-recognition of foreign judgments if "[t]he proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled *otherwise* than by proceedings in that court."  The word "otherwise" is critical.  Whether the GIDS Agreement calls (a) for arbitration or, as Plaintiff contends, (b) negotiation/mediation and then arbitration, in either case it is "*otherwise*" *than litigation before the Bolivian courts*.  The point that Plaintiff is missing is that Ford is not objecting to the Bolivian judgment because Plaintiff did not file arbitration proceeding; it is objecting because Plaintiff commenced a Bolivian

litigation.  Put differently, Ford is not enforcing its right to have Galindo's claims against it submitted to arbitration; Ford is enforcing its right not to be sued in Bolivia.

*Third*, the authorities cited by Plaintiff have been superseded by two Supreme Court decisions, most recently by *BG Group PLC v. Republic of Argentina*, 134 S. Ct. 1198 (2014). The issue of whether conditions precedent to arbitration are procedural matters reserved for the arbitrators or substantive matters to be dealt with by courts is one that has generated much case law.  *Kemiron* was decided seven months before the Supreme Court's decision in *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79 (2002).  In *Howsam*, the Court held that procedural questions attendant to arbitration agreements – such as fulfillment of condition precedent – are not for the courts but for the arbitrators.  Quoting the recently enacted Revised Uniform Arbitration Act of 2000 ("RUAA"), the Court stated that an "arbitrator [not the court] shall decide whether a condition precedent to arbitrability has been fulfilled."  537 U.S. at 85.

In *PTA-FLA, Inc., v. ZTE USA, Inc*., No. 3:11-cv-510-J-32JRK, 2011 WL 5024647 (M.D Fla. Oct. 21, 2011), the court discussed *Kemiron* and *HIM Portland*, and explained *Howsam's* effect on these decisions:

> [I]n a more recent Eleventh Circuit decision, *Howsam* is discussed.  In *Klay*, the Eleventh Circuit explained that the Supreme Court [in *Howsam*] laid out the respective responsibilities of courts and arbitrators, absent an agreement to the contrary.  *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1107 (11th Cir. 2004).  It continued by stating that the Supreme Court adopted the approach embodied in the [RUAA] and held that issues of procedural arbitrability, *i.e.*, whether conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.

*Id.* at *3 (quotation marks and some citations omitted).  The *PTA-FLA* court further noted that the First Circuit also followed its decision in *HIM Portland* with *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367 (1st Cir. 2011), which likewise followed the holding of *Howsam* and held that pre-arbitration negotiation requirements are for the arbitrators to address.

The issue came up again before the Supreme Court in *BG Group*, 134 S. Ct. 1198.  The Court put any residual uncertainty to rest:

> [C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration.  *See Howsam, supra,* at 86, 123 S. Ct. 588 ….

> [A condition precedent] determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all.  Cf. 13 R. Lord, Williston on Contracts § 38:7, pp. 435, 437; § 38:4, p. 422 (4th ed. 2013) (a "condition precedent" determines what must happen before "a contractual duty arises" but does not "make the *validity* of the contract depend on its happening").

134 S. Ct. at 1207 (emphasis in the original).  The Court specifically noted that pre-arbitration negotiation requirements fall within the category of conditions precedent to be dealt with by arbitrators, not courts.  *Id*. at 1208.

Thus, to the extent Plaintiff is arguing that the GIDS Agreement contains a condition precedent that has not been fulfilled, this issue is not for the Court but for the arbitrators.  To the extent Plaintiff might be arguing that the arbitration provision is invalid for failure of a condition precedent, this is directly contrary to the holding in *BG Group*.  The issue is, in any case, irrelevant.  The FAA has no bearing on this action.  The express language of section 55.605(2)(e) renders the Bolivian judgment non-recognizable because the GIDS Agreement requires the dispute "to be settled otherwise than by proceedings in [the Bolivian] court."  Accordingly, Plaintiff's final argument similarly raises no genuine issue of material fact.

## CONCLUSION

For the foregoing reasons, Ford is entitled to judgment as a matter of law and its motion for summary judgment should therefore be granted.

Dated: January 14, 2015                    Respectfully submitted,

*/s/ Gary M. Pappas*_____
WENDY F. LUMISH
Florida Bar No.: 334332
Email: wlumish@cfjblaw.com
GARY M. PAPPAS
Florida Bar No.: 705853
Email: gpappas@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
Suite 4200, Miami Tower
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

OLEG RIVKIN (admitted *pro hac vice*)
Email: orivkin@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.

Chrysler Center
405 Lexington Avenue, 29th Floor
New York, New York 10174
Telephone: (212) 785-2577
Facsimile: (212) 785-5203
*Counsel for Defendant Ford Motor Co.*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 14, 2015, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Gary M. Pappas*
Gary M. Pappas
Florida Bar No.: 705853

## <u>SERVICE LIST</u>

**Automotores Galindo, S.A.**
**v.**
**Ford Motor Company**
**CASE No.: 13-CV-23285-DPG**

Michael Diaz, Jr.
Email: mdiaz@diazreus.com
Gary Davidson
Email: gdavidson@diazreus.com
DIAZ REUS & TARG, LLP
Suite 3400, Miami Tower
100 Southeast Second Street
Miami Florida 33131
Telephone (305) 375-9220
Facsimile  (305) 375-8050

*Counsel for Plaintiff*
*Automotores Galindo S.A.*