UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:13-cv-23285-DPG

AUTOMOTORES GALINDO, S.A.,

    Plaintiff,

v.

FORD MOTOR COMPANY,

    Defendant.
_____/

**DEFENDANT FORD MOTOR COMPANY'S
STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendant, Ford Motor Company ("Ford") hereby submits this statement of undisputed material facts in support of its motion for summary judgment.

A.    <u>Agreement Between Ford and Galindo S.A.</u>

1.    On April 15, 1999, Ford and Plaintiff Automotores Galindos, S.A. ("Galindo S.A.") executed the Global Importer Dealer Sales and Service Agreement ("GIDS Agreement"). [DE 5-1, p. 4, ¶ 8; DE 6, pp. 2-3; DE 14-1, pp. 23-27].

2.    According to the GIDS Agreement "the purpose of [the] agreement" was "to establish the Dealer [*i.e.*, Galindo S.A.] as an authorized dealer for the sale and services of Company [*i.e.*, Ford] Products, including Company Vehicles." [DE 6, pp. 2-3; DE 14-1, p. 23].

3.    Paragraphs A and D of the GIDS Agreement provide as follows:

> A. The Company hereby appoints the Dealer as an authorized dealer in Company Products with the right to purchase Company Products from the Company and Company authorized Affiliates for resale to retail customers. While this Agreement is in effect, the Dealer may represent itself to the public as an authorized dealer in such Company Products. The Dealer hereby accepts such appointment and agrees to fulfill its responsibilities as herein provided.

> D. The attached Global Importer Dealer Sales and Services Standard Provisions (Form GIDSA 1A) and its Attachments including the Standards

>   Manual (as hereinafter defined) have been read and agreed to by each party and the Standard Provisions, and any duly executed and delivered supplement, amendment, addendum and/or attachment thereto, are hereby made a part of this Agreement.

[DE 6, p. 3; DE 14-1, pp. 25, 29-51].

4. Paragraph G(i) of the GIDS Agreement provides that "this Agreement shall continue in force and effect from the date of its execution until terminated by either party under the provisions of paragraph 13 of the Standard Provisions."  [DE 6, p.3; DE 14-1, p. 27].

5. Paragraph 13 of the GIDS Standard Provisions sets out grounds for termination of the GIDS Agreement, including grounds based on "Nonperformance by Dealer."  [DE 6, p. 3; DE 14-1, pp. 43-45].

6. Paragraph 20 of the GIDS Standard Provisions contains a general merger clause, as follows:

>   This Agreement terminates and supersedes all other agreements exclusively between the parties concerning the Dealer's business in Company Products (with the exception of the Dealer's unfulfilled orders for any Company Products) and constitutes the entire agreement between the parties with respect to the subject matter hereof.  Each party acknowledges that, except as expressly set forth herein, no representation, understanding or presumption of law or fact has been made or relied upon (a) which has induced the execution of this Agreement or would in any way modify any of its provisions, or (b) with respect to the effectiveness or duration of this Agreement or the sales or profit expectancy of the Dealer's business in Company Products.  The Dealer further acknowledges that it has voluntarily entered into this Agreement without coercion or intimidation or threats from Company, and that each of its provisions is reasonable, fair and equitable.

[DE 6, pp. 3-4; DE 14-1, p. 50].

B.   Exclusive Arbitration and Choice of Law Provisions in the GIDS Agreement

7. Paragraph 14 of the GIDS Standard Provisions is entitled "DISPUTE RESOLUTION PROCESS," and provides, in its entirety, as follows:

>   The Company and the Dealer recognize that disputes may occur which cannot be resolved in the normal course of business.  In the event **any such dispute, claim or controversy** arises between the parties in connection with the breach, implementation, invalidity or termination of this Agreement and any and all Attachments thereto, the following procedure **shall be implemented and shall constitute the exclusive recourse of the parties**:
>   a)   The Company and the Dealer shall hold a meeting promptly, attended by persons with decision-making authority regarding the dispute, to attempt

in good faith to negotiate a resolution of the dispute; provided, however, that no such meeting shall be deemed to vitiate or reduce the obligations and liabilities of the parties hereunder or be deemed a waiver by a party hereto of any remedies to which such party would otherwise be entitled hereunder.

b) If, within thirty (30) days after such meeting, the Company and the Dealer have not succeeded in negotiating a resolution of the dispute, **they agree to submit the dispute to a binding arbitration in** accordance with the United Nations Commission on Trade Law (herein after referred to as "UNCITRAL") Arbitration Rules in effect on the date of the Agreement.

(1) **The appointing authority shall be the American Arbitration Association.**

(2) **The case shall be administered by the American Arbitration Association in accordance with its "Procedures for Cases under the UNCITRAL Arbitration Rules**."

(3) The parties will jointly appoint a mutually acceptable arbitrator, seeking assistance in such regard from the American Arbitration Association if they have been unable to agree upon such appointment within 20 days after commencement of arbitral proceedings.

(4) The costs of arbitration shall be borne by the losing party.

(5) If either party fails to observe the terms of the arbitration award, the other party may apply to have the award enforced in any courts having jurisdiction over the party against which the award has been rendered.

(6) All proceedings in any such arbitration shall be conducted in English and a daily transcript in English of such proceedings shall be prepared.

(7) **Binding arbitration shall take place in the State of Michigan** unless otherwise agreed by the parties in writing. **The substantive and procedural law of the State of Michigan,** without giving regard to its conflict of law rules, shall apply to the proceedings and the parties agree to accept such jurisdiction. Equitable remedies shall be available in any arbitration. Punitive damages shall not be available. This Paragraph 14 is subject to Federal Arbitration Act, 9 U.S.C.A. (United States Code Annotated) § 1 et seq. and judgment upon the award rendered by the Arbitrator, if any, shall be final and binding upon the parties.

> The Company and the Dealer agree that the dispute resolution process outlined in this paragraph 14, which includes binding arbitration, **shall be the exclusive mechanism for resolving any controversy or claim between them arising out of or relating in any way to this Agreement including all attachments hereto, its creation, interpretation, implementation, invalidity or termination.**

(Emphasis added). [DE 6, pp. 4-5; DE 14-1, pp. 45-46].

8. Paragraph 25 of the GIDS Standard Provisions is entitled "APPLICABLE LAW," and provides, in its entirety, as follows:

> The Dealer and the Company intend this Agreement to be governed by and construed in accordance with the law of the State of Michigan, United States of America. The United States Convention on Contracts for the International Sale of Goods is expressly excluded from and shall not apply to this Agreement or transactions hereunder.

[DE 14-1, p. 51].

C. <u>Termination Of The GIDS Agreement</u>

9. On February 1, 2002, Ford terminated the GIDS Agreement in accordance with paragraph 13 of the GIDS Standard Provisions. [DE 5-1, p. 4, ¶ 9; DE 6, p. 5].

D. <u>Commencement Of The Bolivian Action By Galindo S.A.</u>

10. On August 2, 2002, Galindo S.A. filed a civil lawsuit in the City of Cochabamba, Republic of Bolivia, against Ford ("Bolivian Court Action"). [DE 5-1, p. 3, ¶ 3; DE 6, p. 6; DE 14-2, pp. 5-19].

11. In the Bolivian Court Action, Galindo S.A.'s claimed that Ford had fraudulently induced Galindo S.A. to enter into the GIDS Agreement by means of (a) misrepresentations of Galindo S.A.'s risks and obligations under the GIDS Agreement, and (b) failure to timely execute the GIDS Agreement. Galindo S.A. claimed that these "misrepresentations" and the alleged delay rendered impossible Galindo S.A.'s performance under the GIDS Agreement and ultimately led to the termination by Ford of Galindo S.A.'s dealership. [DE 5-1, pp. 4-5, ¶¶ 9-10; DE 6, p. 6; DE 14-2, pp. 5-19].

12. Galindo S.A.'s claim in the Bolivian Court Action was assigned to the Seventh Judge of Civil and Commercial Claims of the Judicial District of Cochabamba ("Seventh Civil Judge"). [DE 5-1, p. 5, ¶ 11; DE 6, p. 7]

E.  Ford's Arbitration Objection to Bolivian Court Action

13. On November 24, 2003, Ford's Bolivian counsel filed an objection to the Seventh Civil Judge's lack of subject matter jurisdiction ("Arbitration Objection"). [DE 5-1, pp. 5-6, ¶¶ 13-16; DE 6, pp. 7-8; DE 14-2, pp. 21-35].

14. The Arbitration Objection was based on the exclusive arbitration provision contained in paragraph 14 of the GIDS Standard Provisions, above. The Arbitration Objection was filed pursuant to article 12 III of the Bolivian Conciliation and Arbitration Law No. 1770, which provides as follows:

> Once the existence of an arbitration agreement is verified, and without possibility of filing any appeal, the judicial authority shall grant the arbitration objection, or, deciding only on the nullity or impossible execution of the arbitral agreement, the judicial authority shall reject the arbitration objection.

[DE 5-1, pp. 5-6, ¶¶ 13-16; DE 14-2, pp. 21-35; DE 14-2, pp. 23-24].

15. On March 29, 2004, the Seventh Civil Judge issued a ruling dismissing Ford's Arbitration Objection. [DE 5-1, p. 6, ¶ 18; DE 6, p. 8; DE 14-2, pp. 37-41].

16. In dismissing the Arbitration Objection, the Seventh Civil Judge ruled as follows:

> Ford Motor Company has unilaterally terminated the validity of the contract; now, in regard to the damages that the dealer [Galindo] claims were caused by this act (the unilateral rupture of the contract), it is impossible to submit this claim for arbitration in an Arbitration Court of the State of Michigan, United States of America, in accordance with the contract.

[DE 14-2, p 38]. In other words, the court ruled that since Ford terminated the GIDS Agreement, the forum selection clause of that agreement was also terminated and was thus unenforceable. [DE 5-1, p. 7 ¶ 19; DE 6, p. 8].

F.  Ford's Appeal of the Arbitration Objection Ruling

17. April 12, 2004, Ford filed an appeal from the Arbitration Objection Ruling to the Second Court of Civil Claims of the Judicial District of Cochabamba ("Appeals Court"). [DE 5-1, p. 7, ¶20; DE 6, p. 8; DE 14-2, pp. 43-53].

18. Ford's appeal was based on Article 11 of the Bolivian Conciliation and Arbitration Law, which provides that *"[e]very arbitration agreement that forms part of a primary contract is considered to be an agreement that is independent of the other stipulations therein."* [DE 5-1, p. 7, ¶ 20; DE 6, p. 8; DE 14-2, p. 45].

19. On May 26, 2006, the Appeals Court ruled (a) that it had no jurisdiction over Ford's appeal; (b) that the ruling remitting the appeal to the Appeals Court was null and void; and (c) that Arbitration Objection Ruling was *res judicata*. [DE 5-1, pp. 7-8, ¶ 21; DE 6, pp. 8-9; DE 14-2, pp. 55-59].

G. Ford's Appeal to the Constitutional Appeals Court

20. On December 9, 2006, Ford filed a constitutional appeal (the "Constitutional Appeal") before the Third Court of Criminal Claims of the Judicial District of Cochabamba (the "Constitutional Appeals Court"). [DE 5-1, p. 8, ¶ 23; DE 6, p. 9; DE 14-2, pp. 61- 79].

21. In the Constitutional Appeal, Ford sought a review and reversal of the Seventh Civil Judge's Arbitration Objection Ruling and of the decision of the Appeals Court. *Id.*

22. On February 2, 2007, the Constitutional Appeals Court rejected Ford's appeal. [DE 5-1, pp. 8-10, ¶ 24; DE 6, pp. 9-10; DE 14-2, pp. 61- 79].

23. The bases given by the Constitutional Appeals Court for rejecting the appeal were as follows:

(a) that Ford had not proven its registration in the Bolivian Registry of Commerce because the seal on the document submitted by Ford which demonstrated Ford's registration was "not authenticated by the officer in charge of the Registry of Commerce," but, instead, by "the officer who is the legal depository of that document;"

(b) that, for the same reason, the power of attorney submitted by Ford's counsel was "not sufficient to evidence [his] legal standing" as Ford's attorney;

(c) that, even if the power of attorney was valid, it only allowed the attorney to act "in defense of [Ford] in the ordinary civil proceedings" filed by" Galindo S.A., and did not "specifically authorize him to act in this constitutional . . . appeal; and

(d) that the copy of the power of attorney of Ford's counsel was defective in that it contained "parts in a foreign language that have not been translated."
[DE 5-1, pp. 8-10, ¶ 24; DE 6, pp. 9-10; DE 14-2, pp. 81-84].

24. The Constitutional Appeals Court did not address the merits of Ford's appeal. *Id.*

H. Review By The Bolivian Constitutional Tribunal

25. The ruling of the Constitutional Appeals Court was forwarded for review to the Bolivian Constitutional Tribunal. [DE 5-1, p. 10, ¶ 25; DE 6, p. 10].

26. On July 12, 2010, the Constitutional Tribunal affirmed the decision of the Constitutional Appeals Court. [DE 5-1, pp. 10-11, ¶ 25; DE 6, p. 10; DE 14-2, pp. 91-111].

27. The Constitutional Tribunal ruled that in filing its Constitutional Appeal Ford has failed to submit "proof of its [Ford's] legal personality, documents regarding the legal structure of its body of offices and members of the said body, the election of its legal representatives, regulations authorizing the delegation of powers, etc." The Constitutional Tribunal ruled that the remedy sought by Ford "should be denied without going into an analysis of the merits of the case." [DE 5-1, pp. 10-11, ¶ 25; DE 6, p. 10; DE 14-2, pp. 91-100]

28. The Constitutional Tribunal also ruled that because the Arbitration Objection Ruling issued by the Seventh Civil Judge was not appealable to the Appeals Court (*i.e.*, through the regular appeals process), the six-month period for filing the Constitutional Appeal began to run not from the ruling of the Appeals Court (May 26, 2006), but from the Arbitration Objection Ruling issued by the Seventh Civil Judge (March 29, 2004). Consequently, because the Appeals Court took more than two years to issue its ruling, the Constitutional Tribunal deemed the Constitutional Appeal as having been filed past the six-month deadline. [DE 5-1, pp. 11-12, ¶¶ 26-28; DE 6, p. 10; DE 14-2, pp. 91-100]

29. With the ruling of the Constitutional Tribunal, Ford had exhausted all of its legal avenues to enforce the arbitration provision of the GIDS Agreement before the Bolivian courts. [DE 5-1, p. 12, ¶ 29; DE 6, p. 10].

## I.     Judgment Against Ford

30. After exhausting its avenues to enforce the arbitration provision in the Bolivian court system, Ford did not submit any opposition to the substantive arguments made by Galindo S.A. in the Bolivian Court Action. [DE 5-1, p. 12, ¶ 29; DE 6, p. 10].

31. In February-April 2012, the Bolivian court entered a judgment against Ford in the total amount of $11,103,852.50. [DE 1-2, pp. 2-32].

Dated: January 14, 2015                              Respectfully submitted,

                                                  */s/ Gary M. Pappas*_____
WENDY F. LUMISH
Florida Bar No.: 334332
Email: wlumish@cfjblaw.com
GARY M. PAPPAS
Florida Bar No.: 705853
Email: gpappas@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
Suite 4200, Miami Tower
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

OLEG RIVKIN (admitted *pro hac vice*)
Email: orivkin@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
Chrysler Center
405 Lexington Avenue, 29th Floor
New York, New York 10174
Telephone (212) 785-2577
Facsimile (212) 785-5203
*Counsel for Defendant Ford Motor Co.*

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on January 14, 2015, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                  */s/ Gary M. Pappas*
                                                  Gary M. Pappas
                                                  Florida Bar No.: 705853

**SERVICE LIST**

**Automotores Galindo, S.A.
v.
Ford Motor Company
CASE No.: 13-CV-23285-DPG**

Michael Diaz, Jr.
Email: mdiaz@diazreus.com
Gary Davidson
Email: gdavidson@diazreus.com
DIAZ REUS & TARG, LLP
Suite 3400, Miami Tower
100 Southeast Second Street
Miami Florida 33131
Telephone (305) 375-9220
Facsimile (305) 375-8050

*Counsel for Plaintiff
Automotores Galindo S.A.*