UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:13-cv-23285-DPG

AUTOMOTORES GALINDO, S.A.,

    Plaintiff,

v.

FORD MOTOR COMPANY,

    Defendant.

_____/

**DEFENDANT FORD MOTOR COMPANY'S REPLY MEMORANDUM**
**OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7.1 and 56.1, Defendant, Ford Motor Company ("Ford"), submits this reply memorandum of law in further support of its motion for summary judgment.

INTRODUCTION

Because both parties have simultaneously moved for summary judgment the motion papers overlap substantially. In fact, Plaintiff's opposition to Ford's motion [DE 69] for the most part restates the arguments made in Plaintiff's own motion [DE 60] (which, in turn, repeated the arguments in Plaintiff's response to Ford's objection [DE 32]). The bulk of these arguments have already been addressed extensively in Ford's opposition to Plaintiff's motion [DE 68], as well as in Plaintiff's moving papers on its own motion. [DE 68]. In light of this overlap and in an effort to avoid repetition as much as is feasible, Ford incorporates herein its prior submissions on the two motions: DE 56; DE 57; DE 67; and DE 68.

Plaintiff's opposition offers little new by way of factual argument or legal authority. Nearly all of the cases cited by Plaintiff in its response have already been covered by Ford in its

prior submissions, as have the argument for the support of which they are offered.  None of these help the Plaintiff.  As demonstrated yet again below, Plaintiff simply cannot escape the overwhelming weight of the authorities which mandate summary judgment in Ford's favor.

## ARGUMENT

Plaintiff emphasizes repeatedly that the granting of objections under section 55.605(2)(e) is discretionary.  As a matter of strict statutory language this is perfectly true.  But, as explained in Ford's response to Plaintiff's motion for summary judgment [DE 68, p. 11], one of the reasons why courts are unanimous is their decisions under this section of the Uniform Act is the long-standing policy of favoring arbitration and honoring the parties' contractual commitments to submit their disputes to arbitration.  [DE 56, pp. 5-6].

The state of the law is aptly summed up in FED. JUD. CTR. INT'L LITIG. GUIDE, Ronald A. Brand, *Recognition and Enforcement of Foreign Judgments* § IV(B)(5) at 23 (Apr. 2012):

> In *The Bremen v. Zapata Offshore Co.*, [407 U.S. 1 (1972)], the U.S. Supreme Court stated clear support for the enforcement of forum-selection clauses in international contracts.  Foreign judgments obtained in an effort to evade jurisdiction in the forum originally agreed to by the parties are likely to be enforced in U.S. courts only in rare circumstances.

To date, no court has encountered (at least not in any reported decision), the type of rare circumstances which would justify recognizing such a foreign judgment.  This recognition proceeding is certainly far from such an exceptional case.  To the contrary, this is a garden-variety case of a foreign plaintiff trying to evade jurisdiction in an agreed-on forum and, as happens not infrequently, finding an accommodating home court willing to assist.

Plaintiff's attempt to distinguish the uniform body of law in this area is specious.  [DE 69, pp. 11-12].  The absence of ambiguity in the case law could not be more manifest.  [DE 56, pp. 3-6].  More troubling still is Plaintiff's persistent citations to cases that do not hold what

Plaintiff claims they do.  Indeed, some of them hold the very opposite of what Plaintiff claims.  One such case is *Ingersoll Milling Machine Co. v. Granger*, 833 F.2d 680 (7th Cir. 1987), which Plaintiff continues to cite for the proposition that the court *may* recognize a foreign judgment issued in violation of the parties forum-selection agreement.  [DE 69, p. 13].  *Ingersoll,* however, stands for no such proposition, for the simple reason, as expressly stated by the court, that *there was no agreement* by the parties in that case to litigate (or arbitrate) their claims in a particular forum.  As stated by the court:

> [Illinois's counterpart to section 55.605(2)(e)] addresses the situation where the parties agree that any litigation pertaining to the contract will be carried out in a particular forum. Thus, for Ingersoll's arguments to have any merit, the agreement between Mr. Granger and Ingersoll would have had to provide that any suit regarding the employment relationship be brought in the courts of Illinois. ***However, the contract has no such provision***.

833 F.2d at 698.  (Emphasis added).  *Ingersoll* is thus not only consistent with, but reinforces the authorities cited by Ford.

### A.      Decision of Bolivian Court is Not *Res Judicata*

Plaintiff's *res judicata* argument does not add anything, including any new case law, to what Plaintiff has already argued in its Objection [DE 32, p. 13-15] and its motion for summary judgment.  [DE 60, pp. 10-11].  The argument has been dealt with comprehensively in Ford's motion for summary judgment [DE 56, pp. 12-14] and Ford's opposition to Plaintiff's motion for summary judgment.  [DE 68, pp. 13-14].  *See also* DE 35, pp. 13-16.

Plaintiff continues to misstate the meaning and import of the three cases on which it relies: *Marolax Handles-Und Verwaltungesellschaft MbH v. 898 5th Ave. S. Corp.*, No. 2:06-cv-691-FtM-29SPC, 2008 WL 1776996 (M.D. Fla. Apr. 16, 2008); *Israel v. Flick Mortgage Investors, Inc.*, 23 So. 3d 1196 (Fla. 3d DCA 2008); and *ICC Chemical Corp. v. TLC Indus. (Malaysia) SDN*, 206 F. App'x 68 (2d Cir. 2006).  These decisions have no application here.

*Marolax* did not deal with an objection based on a forum-selection clause.  There, the objection was, *first*, that the German court did not have personal jurisdiction over the defendant; and, *second*, that the judgment was obtained by fraud committed on the German court.  With respect to the former, the magistrate's report and recommendation, which were adopted by the district judge, demonstrates that far from treating the German court's ruling concerning personal jurisdiction as *res judicata*, the magistrate conducted a hearing and made *his own findings of fact*.  As stated by the district court:  "The Magistrate Judge found that 898 Fifth Avenue submitted itself to the jurisdiction of the German court by voluntarily submitting to a German venue and German law."  2008 WL 1776996 at *3.  Further, "[t]he Magistrate Judge *found* at least constructive knowledge of the proceedings based on service of Interbuilding, and *found* that Mr. Schache chose not to respond."  *Id*. at *4.  No *res judicata* treatment was thus extended by the court to the German court's findings concerning personal jurisdiction.

With respect to the fraud-based objection – predicated on the allegedly false evidence presented to the German court – the magistrate did defer, at least in part, to the German court's factual finding that no fraud on it was committed.[1]  "Fraud on the foreign court," however, is a very different type of an objection to recognition, one with its own distinct standards and its own well-developed body of law.  As stated in FED. JUD. CTR. INT'L LITIG. GUIDE, Ronald A. Brand, *Recognition and Enforcement of Foreign Judgments* § IV(B)(2) at 20-21 (Apr. 2012):

> […] Generally, a foreign judgment can be impeached only for extrinsic fraud, which deprives the aggrieved party of an adequate opportunity to present its case to the court. If a foreign plaintiff withheld from the foreign court material evidence that was favorable to the U.S. defendant, this would be considered extrinsic fraud sufficient to deny recognition.

---

[1]  *See* Magistrate's report and recommendations at *Marolax Handles-Und Verwaltungesellschaft MbH v. 898 5th Ave. S. Corp*., No. 2:06-cv-691-FtM-29SPC, 2007 WL 5117261 (M.D. Fla. Aug. 30, 2007).

> In most cases, *a judgment cannot be impeached for intrinsic fraud*, which involves matters passed upon by the original court, such as the veracity of testimony and the authenticity of documents. If the foreign court has actually considered and ruled upon an allegation of fraud, whether extrinsic or intrinsic, the facts bearing on that issue may not be reexamined by the U.S. court in an enforcement proceeding.

(Citations omitted, emphasis added). The fraud alleged to have been committed on the German court in *Marolax* (false testimony) was precisely the type of intrinsic fraud that cannot serve as a basis for non-recognition. The standards for "fraud on the court" objections – particularly with regard to intrinsic fraud – are thus markedly different from the standards applied to forum-selection-based objections, and have no bearing here.

*Israel v. Flick Mortgage Investors* also did not deal with an objection based on forum-selection. In fact it did not deal with *any* objection recognized by the Uniform Act. This, in fact, was the very point of the court's decision. The *Israel* court stated: "[A]n attack on the manner of service of process is not expressly set forth as one of the ten grounds for nonrecognition or nonenforceability that may be asserted under the [Uniform] Act." 23 So. 3d at 1198. The court then held that *even if* the objection to the service of process was proper under the Uniform Act, the judgment debtor had waived this objection by not raising it in the Israeli action. In this regard, the court stated the obvious point that "[g]rounds for nonrecognition [under the Uniform Act] may be waived if a party had the right to assert that ground as an objection of defense in the foreign country but failed to do so." *Id*. at 1199. It is undisputed that Ford has asserted an objection that is "expressly set forth [in the Uniform Act] as one of the ten grounds for nonrecognition." It is also indisputable that Ford had raised this objection before the Bolivian courts and thus had not "waived" it.

Plaintiff's efforts to equate this case with *ICC Chemical Corp.* are unavailing. As explained in Ford's motion [DE 56, pp. 13-14], that case was predicated on the fact that the

agreement, as executed, *did not* call for arbitration in New York but, instead, for litigation in Singapore, where it was brought. It is uncontested that the agreement here *does* contain an exclusive arbitration clause and moreover is governed by Michigan law.

### B. Collateral Estoppel Does Not Apply

Plaintiff still does not, and cannot, cite a single case in which a foreign money judgment debtor was deemed collaterally estopped from asserting its objection under the Uniform Act. Ford addresses this argument in its motion for summary judgment [DE 56, pp. 14-15] and, more extensively, in its opposition to Plaintiff's motion. [DE 68, pp. 14-16]. The point that Plaintiff persists in missing is that collateral estoppel applies only to a judgment that has *already been recognized*. Until a foreign judgment is recognized – *i.e.*, until it acquires the status of a judgment under U.S. law – it has no preclusive effect whatsoever. *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp.2d 19, 33 (D.D.C. 2007), discussed at DE 68, pp. 15-16.

Plaintiff's continued reliance on *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249 (11th Cir. 2006), is wrong. As previously explained by Ford [DE 56, p. 10; DE 68, p. 16], *Daewoo* is not a judgment recognition case but an "abstention" case, and, moreover, does not at all deal with collateral estoppel.

### C. International Comity Has No Application to This Case

The inapplicability of the common law doctrine of comity to a proceeding to recognize a foreign money judgment is fully explained in Ford's motion for summary judgment. [DE 56, pp. 8-12]. Plaintiff continues to ignore [DE 69, p. 8] the fact that the Uniform Act has supplanted common law comity as a basis for recognition of foreign money judgments. *Nicor International Corp. v. El Paso Corp.*, 292 F.Supp.2d 1357, 1364 (S.D. Fla. 2003). Plaintiff offers no justification for its insistence that the Court disregard the statutory framework of the Uniform

Act – and the case law applying it – in favor of comity principles long superseded by the Uniform Act. There is none.

### D. Ford Had Never Submitted "the Issue of Arbitrability" to the Bolivian Court

Plaintiff's argument that Ford had waived the objection based on the forum-selection clause by "submitting the issue of arbitrability" to the Bolivian court is a repeat of the argument made by Plaintiff in support of its own motion, and is addressed in Ford's response to that motion. [DE 68, pp. 18-19]. Ford did no such "submitting." Rather, Ford filed an objection to the Bolivian court's subject matter jurisdiction based on the forum-selection clause. This was Ford's only option under the Bolivian court's rules. Ford asked the Bolivian court to dismiss the case on the grounds that the parties had an exclusive forum-selection clause calling for arbitration in Michigan. Ford's objection was essentially the equivalent of a Rule 12(b) motion. Bolivian court refused to dismiss, holding that by terminating the GIDS Agreement Ford had nullified the forum-selection clause contained in it. Plaintiff's argument that the filing of Ford's objection constitutes a submission of the issue of arbitrability to the Bolivian court – and thus a waiver of Ford's rights under the Uniform Act – is unsupported by any authority and is illogical. Were this the case, every motion to a foreign court to dismiss the claim pursuant to a forum-selection agreement would preclude a defendant from later objecting to recognition under the Uniform Act. The Uniform Act would then have no meaning.

Plaintiff's reliance on *Doe v. Princess Cruise Lines,* Ltd., 657 F.3d 1204 (11th Cir. 2012), is misplaced, as explained in DE 68, p. 19. That case deals with determinations of arbitrability under the Federal Arbitration Act ("FAA"). It stands for nothing more than that on applications to compel arbitration under the FAA, the court, not the arbitrators, makes the determination of whether the claim is subject to the arbitration agreement, and the party who files a motion to

compel arbitration is bound that determination.  *Doe* has nothing to do with the recognition of foreign judgments.  *Id*.

Plaintiff similarly mis-cites *In re Checking Account Overdraft Litigation MDL No. 2036*, 685 F.3d 1269 (11th Cir. 2012).  This too was an FAA case, not a recognition case, in which the finding of waiver was predicated on the fact that the party seeking arbitration had "litigated its case for over a year without moving the district court to submit the threshold issue of enforceability to the arbitrator."  *Id.* at 1274.  [DE 68, p. 18].

### E. Plaintiff's Argument That Ford Should Have Commenced a Parallel Arbitration is Baseless

Plaintiff continues to assert that it was incumbent on Ford to commence a parallel arbitration in Michigan or to seek an order of a U.S. court to compel arbitration, and that Ford's failure to do so constitutes a waiver of its objection under section 55.605(2)(e).  This is a repeat of Plaintiff's identical argument in its own motion.  It is addressed in Ford's response to that motion.  [DE 68, pp. 20-21].

To reiterate, since Ford had no claims of its own to assert under the GIDS Agreement, Plaintiff's position is that Ford was obligated to commence a *defensive* arbitration, seeking a declaration that it was not liable to Plaintiff.  Plaintiff's argument essentially means that for section 55.605(2)(e) to apply, the defendant – even one who has no affirmative claims of its own to assert – must commence a parallel proceeding in the proper forum, or risk losing his right to object under section 55.605(2)(e).  No court has ever tacked-on such an additional requirement to the plain language of the statute.

Plaintiff's continued reliance on *Fremont Cake & Meal Co. v. Wilson & Co.*, 86 F. Supp. 968 (D. Neb. 1949); *Triplecheck, Inc. v. Creole Yacht Charters Ltd.*, No. 05-21182-CIV, 2006 WL 3507971 (S.D. Fla. Dec. 5, 2006); and *Nicor International Corp. v. El Paso Corp.*, 292 F.

Supp. 2d 1357 (S.D. Fla. 2003), *reconsideration denied*, 318 F. Supp. 2d 1160 (S.D. Fla. 2004), is without basis.  These cases are discussed by Ford extensively in its prior submissions on both motions. [DE 56, pp. 3, 8, 15; DE 68, pp. 10, 15, 18-19].  Like all of the other authorities relied on by Plaintiff, these decisions do not stand for the proposition claimed by Plaintiff.

F.   **Plaintiff's "Condition Precedent" Argument Remains Meritless**

Plaintiff's argument that "Ford did not comply with the parties' dispute resolution clause" [DE 69, pp. 16-17] is a recasting of the argument in its Objection [DE 32, pp. 18-19].  It is dealt with comprehensively in Ford's motion.  [DE 56, pp. 17-19].  Plaintiff ignores all of the authorities cited by Ford, including two Supreme Court decisions, most recently in *BG Group PLC v. Republic of Argentina*, 134 S. Ct. 1198 (2014), which render its argument utterly moot.  Plaintiff offers no authorities of its own.  It merely regurgitates the argument as if Ford had never addressed it.

Remarkably, Plaintiff also attempts to turn the Bolivian court's decision on its head.  Plaintiff offers "a more plausible reading" of the decision, claiming that it was the parties' failure to engage in pre-arbitration negotiations that, in the judge's mind, invalidated the forum-selection clause.  This brings to mind the old saw:  Who are you going to believe – me or your own eyes?  The precise wording of the ruling is as follows:

> Ford Motor Company has unilaterally terminated the validity of the contract; now, in regard to the damages that the dealer [Galindo] claims were caused by this act (the unilateral rupture of the contract), it is impossible to submit this claim for arbitration in an Arbitration Court of the State of Michigan, United States of America, in accordance with the contract.

[DE 57 ¶¶ 15, 16; DE 14-2, p 38].  It cannot seriously be contended that these words mean anything but that in Bolivian judge's view it was Ford's termination of the GIDS Agreement that resulted in the termination of the forum selection clause contained in it.  [DE 57 ¶ 15; DE 5-1, p. 7 ¶ 19; DE 6, p. 8].  The "reading" offered by Plaintiff is not merely less plausible, it is

downright absurd.  Regardless, it is the end result that is ultimately relevant here, not what was in the Bolivian's judge's mind when he denied Ford's objection.  The latter is only relevant to demonstrate the lengths to which the court was willing to go to accommodate the home plaintiff.

## CONCLUSION

For the foregoing reasons, Ford is entitled to judgment as a matter of law and its motion for summary judgment should therefore be granted.

Dated: February  27, 2015                                                     Respectfully submitted,

*/s/ Gary M. Pappas*_____
WENDY F. LUMISH
Florida Bar No.: 334332
Email: wlumish@cfjblaw.com
GARY M. PAPPAS
Florida Bar No.: 705853
Email: gpappas@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
Suite 4200, Miami Tower
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

OLEG RIVKIN (admitted *pro hac vice*)
Email: orivkin@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
Chrysler Center
405 Lexington Avenue, 29th Floor
New York, New York 10174
Telephone (212) 785-2577
Facsimile (212) 785-5203
*Counsel for Defendant Ford Motor Co.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 27, 2015 I electronically filed the foregoing *Defendant, Ford's reply memorandum of law in further support of its motion for summary judgment* with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Gary M. Pappas*
GARY M. PAPPAS

**SERVICE LIST**
**CASE NO.: 1:13-CV-23285-DPG**

Michael Diaz, Jr.
Email: mdiaz@diazreus.com
Gary Davidson
Email: gdavidson@diazreus.com
Paola Sanchez-Torres
Email: psanchez@diazreus.com
Elizabeth Cantu
Email: ecantu@diazreus.com
DIAZ REUS & TARG, LLP
Suite 3400, Miami Tower
100 Southeast Second Street
Miami Florida 33131
Telephone (305) 375-9220
Facsimile  (305) 375-8050
*Counsel for Plaintiff*
*Automotores Galindo S.A.*