**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 13-CV-23285-GAYLES/TURNOFF**

**AUTOMOTORES GALINDO, S.A.,**

                    Plaintiff,

**vs.**

**FORD MOTOR COMPANY,**

                    Defendant.

_____/

**OMNIBUS ORDER ON PARTIES' CROSS MOTIONS**
**FOR SUMMARY JUDGMENT**

**THIS CAUSE** came before the Court upon the Parties' cross Motions for Summary
Judgment. [ECF. No. 18] [ECF. No. 26]. The Court has considered the Motions, the Responses,
the record, and is otherwise advised. For the reasons set forth below, Plaintiff's Motion for
Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is
**GRANTED**.

**I.    BACKGROUND**

Plaintiff Automotores Galindo, S.A. ("Galindo") is a car dealership in Bolivia.
Defendant Ford Motor Company ("Ford") is an international corporation which manufactures
cars. On April 15, 1999, Ford and Galindo executed the Global Importer Dealer Sales and
Service Agreement ("Agreement"). The Agreement established Galindo as an authorized dealer
for the sale and service of Ford products in Bolivia. The Agreement contained an express

exclusive arbitration and forum selection clause stating that all disputes shall be brought to arbitration in Michigan, and that Michigan law shall apply.[1]

Despite the agreed upon arbitration and forum selection clause, Galindo filed a civil lawsuit on August 2, 2002, against Ford in the Civil and Commercial Court of First Instance in Bolivia ("trial court") to recover capital expenditures it made between 1995 and 1999 for what it considered Ford's breach of contract.  Ford, upon being served, filed an arbitration exception in the trial court, pursuant to Article 12 III of Bolivia's Arbitration and Conciliation Law No. 1770 ("Bol. art. 12 of Law 1770"), arguing that the trial court did not have subject matter jurisdiction to hear the dispute because of the arbitration clause and that the case should be dismissed.

Bol. art. 12 of Law 1770 states,

> Once the existence of an arbitration agreement is verified, and without possibility of filing any appeal, the judicial authority shall grant the arbitration objection, or deciding only on the nullity or impossible execution of the arbitral agreement, the judicial authority shall reject the arbitration objection.

Bol. art. 12 of Law 1770; [ECF. No. 14-2, at 23-24].  Despite Bol. art. 12 of Law 1770, the trial court held:

> Ford Motor Company has unilaterally terminated the validity of the contract; now, in regarding to the damages that the dealer [Galindo] claims were caused by this act (the unilateral rupture of the contract), it is impossible to submit this claim for arbitration in an Arbitration Court of the State of Michigan, United States of America, in accordance with the contract.

[ECF No. 14-2 at 38].  Ford appealed the trial court's decision to Bolivia's Second Superior

---

[1] The arbitration agreement states in part: "The Company and the Dealer recognize that disputes may occur which cannot be resolved in the normal course of business. In the event any such dispute, claim or controversy arises between the parties in connection with the breach, implementation, invalidity or termination of this Agreement and any and all Attachments thereto, the following procedure shall be implemented and shall constitute the exclusive recourse of the parties: . . . the Company and the Dealer have not succeeded in negotiating a resolution of the dispute, they agree to submit the dispute to a binding arbitration in accordance with the United Nations Commission on Trade Law (herein after referred to as "UNCITRAL") Arbitration Rules in effect on the date of the Agreement. . . . Binding arbitration shall take place in the State of Michigan unless otherwise agreed by the parties in writing. The substantive and procedural law of the State of Michigan, without giving regard to its conflict of law rules, shall apply to the proceedings and the parties agree to accept such jurisdiction."

Court ("Appeals Court"), which held that the trial court's decision was not appealable. Ford then filed a petition with Bolivia's Third Court of Criminal Claims of the Judicial Circuit of Cochabamba ("Constitutional Appeals Court"). The Constitutional Appeals Court rejected the petition based upon insufficient evidence of Ford's power of attorney. The Constitutional Appeals Court's decision was automatically sent to the Bolivian Constitutional Tribunal for review, which affirmed the Constitutional Appeals Court's decision. While three Bolivian appellate courts reviewed the trial court's ruling, each court affirmed on procedural grounds. The appellate courts never reached the merits of whether the trial court correctly decided the Arbitration Exception.

Following the Constitutional Tribunal's ruling, Ford abandoned the Bolivian proceedings and sought no further relief from the Bolivian courts. Ford has never abandoned nor waived its argument that the parties are bound by the arbitration agreement. Nevertheless, Galindo submitted evidence over the course of three years for the trial court's consideration and assessment of the case. After liability was determined, Galindo then engaged in a two-year proceeding for the determination of its damages. Ultimately, the trial court entered a judgment for Galindo against Ford in the amount of $11,103,852.50. [DE 1-2 at 6].

Galindo filed an action in the Eleventh Judicial Circuit of Florida seeking recognition and enforcement of the Bolivian judgment, pursuant to Florida's Uniform Out-of-Country Foreign Money Judgment Recognition Act ("the Act" and "Florida Recognition Act"). Ford removed the action to federal court. Ford now challenges the enforcement of the Bolivian judgment based on two grounds: (1) the matter should have been arbitrated in Michigan under Michigan law, pursuant to the parties' agreement; and (2) the Bolivian Courts' lack of subject matter jurisdiction.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is proper where the pleadings and supporting materials show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A dispute of fact is genuine if the evidence is such that a rational trier of fact could find for the nonmoving party.  *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The Court must draw all inferences from the evidence in the light most favorable to the nonmoving party and resolve all reasonable doubts in that party's favor.  *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).  The burden of establishing the absence of a genuine issue of material fact rests on the moving party.  *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The moving party meets its burden by informing the Court of the basis for its motion and the particular parts of the record demonstrating the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(a); *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).

After the initial showing has been met, it is incumbent upon the nonmoving party to demonstrate that a finder of fact could reasonably find for the nonmoving party.  *Shiver*, 549 F.3d at 1343.  "[T]he nonmoving party must do 'more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  Thus, if the evidence advanced by the

nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

### B.  <u>Recognition of Foreign Judgment Standard</u>

The standard for whether this Court will recognize a judgment rendered abroad is governed by the Florida Recognition Act.  *Osorio v. Dole Food Co.*, 665 F. Supp. 2d 1307, 1322 (S.D. Fla. 2009), *aff'd sub nom. Osorio v. Dow Chem. Co.*, 635 F.3d 1277 (11th Cir. 2011) (citing 28 U.S.C. § 1652; *Goodwin v. George Fischer Foundry Sys. Inc.*, 769 F.2d 708, 711 (11th Cir.1985)).  "The Florida Recognition Act attempts to guarantee the recognition of Florida judgments in foreign countries by providing reciprocity in Florida for judgments rendered abroad."  *Osorio*, 665 F. Supp. 2d at 1322.  However, even though the Act "presumes that foreign judgments are prima facie enforceable," the Act is also designed to preclude Florida courts from recognizing foreign judgments in certain prescribed cases where the legislature has determined that "enforcement would be unjust or inequitable to domestic defendants."  *Id.*  The Act specifically provides three mandatory and eight discretionary circumstances where a foreign judgment is not entitled to recognition.  *Osorio II*, 635 F.3d at 1278.  The three mandatory circumstances in which a court would not enforce a foreign judgment are set forth in §55.605(1)(a)-(c) of the Act:

> (a) The judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law.
>
> (b) The foreign court did not have personal jurisdiction over the defendant.
>
> (c) The foreign court did not have jurisdiction over the subject matter.

FLA. STAT. §55.605(1)(a)-(c). The eight discretionary circumstances where a court may not

enforce a foreign judgment are set forth in §55.605(2)(a)-(h) of the Act:

> (a) The defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him or her to defend.
>
> (b) The judgment was obtained by fraud.
>
> (c) The cause of action or claim for relief on which the judgment is based is repugnant to the public policy of this state.
>
> (d) The judgment conflicts with another final and conclusive order.
>
> (e) The proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court.
>
> (f) In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.
>
> (g) The foreign jurisdiction where judgment was rendered would not give recognition to a similar judgment rendered in this state.
>
> (h) The cause of action resulted in a defamation judgment obtained in a jurisdiction outside the United States, unless the court sitting in this state before which the matter is brought first determines that the defamation law applied in the foreign court's adjudication provided at least as much protection for freedom of speech and press in that case as would be provided by the United States Constitution and the State Constitution.

FLA. STAT. §55.605(2)(a)-(h).

In this case, Ford asserts that there is one mandatory circumstance and one discretionary

circumstance at issue:  whether the foreign court had jurisdiction over the subject matter,

pursuant to §55.605(1)(c), and whether the proceeding in the foreign court was contrary to an

agreement between the parties under which the dispute in question was to be settled otherwise

than by proceedings in that court,[2] pursuant to §55.605(2)(e).  Under both theories, Ford argues that the Bolivian trial court had no authority to issue a judgment as there was a valid and enforceable arbitration clause requiring arbitration in Michigan.

To the contrary, Galindo argues that the Bolivian courts correctly decided the arbitration issue, and that Ford is precluded from re-arguing the matter.  However, the Act permits such reconsideration prior to enforcement of the foreign judgment. FLA. STAT. §55.605.  For the reasons set forth below, the Court finds that the Bolivian proceedings were contrary to the Agreement between Ford and Galindo which mandated that their disputes be decided in arbitration under Michigan law.

### C.  International Comity, Res Judicata, and Collateral Estoppel

In its motion, Galindo argues that the principles of international comity[3] apply here, and that the Bolivian judgment must be recognized.  However, the Florida Recognition Act replaces the common law principles of comity of recognizing foreign judgments to the extent there are differences between the Act and common law.  *Chabert v. Bacquie*, 694 So.2d 805, 811 (Fla. Dist. Ct. App. 1997).  "The [Florida Recognition Act] replaces the common law principles of comity of recognizing foreign judgments, but only to the extent of any differences between the Act and the common law.  *Id.* Therefore, while comity is inapplicable in this context, it is not Ford's only right of relief.

---

[2] Ford is moving for summary judgment only on the discretionary circumstance, whether the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by a proceeding in that court.  Ford is not moving for summary judgment on its second theory, the mandatory circumstance, whether there is a lack of subject matter jurisdiction.

[3] Common law principles of comity include (1) whether the judgment was rendered via fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what it decent and just. *Turner Entrn't Co. v. Degeto Film*, 25 F.3d 1512, 1519 (11th Cir.1994) (citing *Hilton v. Guyot*, 159 U.S. 113 (1895)).

Galindo also relies on the principles of res judicata and collateral estoppel. Galindo argues that the disputed issues have been fully litigated and determined on the merits by the Bolivian courts, and that this Court is precluded from re-litigating the case. Ordinarily, Galindo would be correct as the usual factors which support the application of res judicata and collateral estoppel are present here.[4] However, those principles do not overcome the clear dictates of the Act and the strong federal policy in favor of enforcing arbitration agreements. *See In Re Arbitration Between Chromalloy Aeroserv*ices v. *Arab Republic of Egypt,* 939 F. Supp. 907, 913–14 (D.D.C. 1996); *see also Nicor International Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357 (S.D. Fla. 2003), *reconsideration denied*, 318 F. Supp. 2d 1160 (S.D. Fla. 2004) ("In light of the strong federal policy in favor of enforcing agreements to arbitrate disputes, this Court refuses, under § 55.605(2)(e) of the Florida Statutes, to recognize, enforce, or give res judicata effect to the Dominican 'judgment.' The Dominican 'judgment' was contrary to the agreement between the parties as to the [sic] where the dispute was to be resolved."). Ordinary res judicata principles are not determinative here because the application of those principles here would nullify the purpose of the Florida Recognition Act. The Act explicitly gives the Court the discretion to determine whether to uphold a foreign judgment based on the merits. *See* FLA. STAT. §55.605.

In support of its position, Galindo relies on *ICC Chemical Corp. v. TCL Indust. (Malaysia) SDN*, 206 F. App'x 68 (2d Cir. 2006). However, the facts of this case are

---

[4] The doctrine of res judicata bars claims that were raised, or could have been raised, in earlier proceedings. For a claim to be barred, the prior litigation must satisfy four elements: (1) there is a final judgment on the merits; (2) a court of competent jurisdiction rendered the decision; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases. *See Ragsdale*, 193 F.3d at 1238; *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). This matter involves the same parties; the same cause of action; there was a previous final judgment on the merits; and the court rendering the judgment believed it to have had competent jurisdiction. Because Ford is not moving for summary judgment on its second theory - the mandatory circumstance in which a court would not enforce a foreign judgment where subject matter jurisdiction is lacking - this Court declines to analyze the jurisdictional capacity of the Bolivian Court under these circumstances.

distinguishable from *ICC*.  In *ICC*, the Second Circuit upheld a decision by the district court granting the defendant's motion to dismiss based on res judicata.  *Id.* at 69.  The *ICC* plaintiff asserted that the foreign judgment should not be enforced based on the same argument Ford puts forth here – the parties' prior agreement to arbitrate.  *Id.*  The plaintiff in *ICC* challenged the foreign court's jurisdiction in the foreign trial court based on the parties' arbitration agreement; however, when the court did not find in its favor, the *ICC* plaintiff fully participated in the proceedings until a final judgment was found against them.  *Id.*  The *ICC* plaintiff did not challenge the foreign court's finding that the arbitration agreement did not apply until bringing the action in the New York court following the conclusion of the foreign action.  *Id.*

Unlike the plaintiff in *ICC*, Ford did not meaningfully participate in any proceedings in the underlying action before the Bolivian trial court, except its continuous assertion that the matter should be heard by an arbitrator based on the parties' agreement.  Despite the unambiguous terms and the broad scope of the parties' arbitration agreement and forum selection clause, the Bolivian court litigated Galindo's claims.  While Ford had limited participation in that trial process, it continuously reasserted its right to arbitration.  Thus, the analysis of *ICC* is inapplicable here.

The Court finds that the facts in *Nicor International Corp.* are more analogous to the facts in this case.  In *Nicor*, the plaintiffs filed a complaint in the Dominican Republic, asserting a breach of contract claim.  *Nicor International Corp.* 292 F. Supp. 2d at 1361.  The defendants unsuccessfully argued to the Dominican Court that the dispute should be decided pursuant to the parties' arbitration agreement.  *Id.*  While the Dominican action was pending, the defendants initiated a successful arbitration action pursuant to the parties' arbitration agreement which conflicted with the Dominican judgment.  The *Nicor* court found that the Dominican proceeding

was contrary to the parties' agreement and that the Dominican "sentence" should not be recognized, pursuant to the Florida Recognition Act.  *Id.* at 1378.  The court concluded that "because the Court has not found that any of the grounds for refusal or denial of recognition or enforcement of the Final Arbitration Award apply, the Court must confirm the Final Arbitration Award."  *Id.*  The *Nicor* court simultaneously determined that it would not enforce the foreign money judgment and confirmed the arbitration award.  *Id.*  While, here, Ford did not bring a simultaneous claim before an arbitration panel, this Court cannot find a legal basis to disregard the parties' arbitration agreement.

Having considered the record, this Court finds that the parties' Agreement contains a clear and unambiguous arbitration clause that is valid on its face.  However, the Bolivian court appears to have denied Ford's motion to enforce arbitration merely because Galindo asserted that Ford violated their contract first.  [ECF No. 14-2, p 38].  However, violation of a contract cannot serve as a valid basis to void an arbitration agreement as a party's breach is an essential issue to be determined in arbitration.  Further, courts have long held that an arbitration clause can stand alone, even when other portions of the contract have been stricken or terminated.  *See generally Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010); *See also Jenkins v. First Am. Cash Advance of Ga.*, 400 F.3d 868, 875 (11th Cir. 2005); *Bess v. Check Express*, 294 F.3d 1298, 1305-06 (11th Cir. 2002).  Because the Bolivian Court proceedings were clearly contrary to the parties' express arbitration agreement, this Court finds that the foreign judgment cannot stand.

III.    **CONCLUSION**

Accordingly, it is

**ORDERED AND ADJUDGED** that Automotores Galindo, S.A.'s Motion for Summary Judgment is **DENIED**, and Ford Motor Company's Motion for Summary Judgment is **GRANTED**. A separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure shall issue separately.  It is further,

**ORDERED AND ADJUDGED** that the case is **CLOSED**. All pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of July, 2015.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:    Counsel of record